UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

IN RE:

|  |  |  |
|---|---|---|
| BK RACING, LLC, | ) | Case No. 18-30241 |
|  | ) | Chapter 11 |
|  | ) |  |
| Debtor. | ) |  |

EMERGENCY MOTION FOR ORDER SHORTENING THE TIME FOR
ASSUMING OR REJECTING LEASE WITH RACE ENGINES PLUS, LLC OR, IN THE
ALTERNATIVE, MOTION FOR RELIEF FROM STAY TO CANCEL LEASE

Race Engines Plus, LLC ("REP"), lessor of personal property to the Debtor and creditor

herein, files this *Emergency Motion for Order Shortening the Time for Assuming Or Rejecting*

*Lease With Race Engines Plus, LLC or, in the Alternative, Motion for Relief From Stay to Cancel*

*Lease*, (the "Motion") pursuant to Rule 9001 of the Bankruptcy Rules of Procedure and Section

365(d)(2) of the Bankruptcy Code.  In support of its Motion, REP shows the Court as follows:

## INTRODUCTION

REP operates an engine building and servicing business that provides fully-functioning,

high-quality engines to be utilized by race teams in NASCAR Monster Energy Cup Series (the

"Cup Series") races.  The Debtor owns and operates a race team that competes in the Cup Series on

a full-time basis.  REP, pursuant to an Engine Lease Agreement dated the 31st day of January, 2017

(the "Lease", a copy of which is attached hereto as "Exhibit A") leases one (1) race-ready primary

engine and one (1) back-up engine; provides engine tuning services; and, other necessary parts for

each of the thirty-six points races in the Cup Series (collectively referred to as "Engines") for a term

extending through the end of the 2019 Cup Series.  The Debtor is obligated to pay REP the

following for the provision of Engines:  a) $100,000 due on February 1, 2018, said sum to be used

by REP to purchase parts and equipment needed to provide the Engines for the upcoming Cup

Series[1]; and b) $35,000 for each points race, said amount to be due and payable no later than the Friday following each points Race[2]. The Cup Series for 2018 began on the date that the petition was filed in this case, Thursday, February 15, 2018, with qualifying for the Daytona 500.

## JURISDICTION

1.      The Debtor filed its voluntary Chapter 11 petition (the "Petition") on February 15, 2018 (the "Petition Date").

2.      This matter is a core proceeding pursuant to 28 U.S.C. § 157 and the Court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157 and 1334.

## FACTUAL BACKGROUND

1.      The Debtor, on the date of the petition in this case, was in possession of one race engine and one back-up engine at the Daytona 500.

2.      However, the engines could only be operated if REP put a code into the engine's computer.

3.      REP entered the appropriate computer code on February 15, 2018 in order to allow the Debtor to participate in qualifying for the Daytona 500.

4.      In exchange for entering the code and activating the engine, REP was promised payment of $50,000 by a non-debtor entity. The funds have been received by REP.

---

[1] The Lease provides that the $100,000 was to be held in the trust account of the attorney for REP with said funds to be disbursed to REP on or after February 1, 2018 (see Lease paragraph 5(c)). However, the Lease was amended by an email from Ron Devine, principal of the Debtor, to Joey Arrington, principal of REP (a copy of which is attached hereto as "Exhibit B"), in which the parties agreed that REP's counsel could release the $100,000 to REP in order to cure the existing default of the Debtor under the Lease. Ron Devine then promised to replace the $100,000 by the end of July, 2017. The funds were never replaced in the trust account of the attorney for REP. (For completeness, the Lease was further amended by a letter agreement between Ron Devine and Joey Arrington dated August 1, 2017 a copy of which is attached hereto as "Exhibit C". The terms of this second amendment are not discussed as they are not germane to the issues herein.)

[2] The Lease in Paragraph 5(c) provides that the Debtor will receive a credit of $10,000 for the first ten points races such that the service fee will be only $25,000 for the first ten races of the year. However, this credit assumed that the Debtor paid the $100,000, which it did not.

5.    The Debtor has defaulted in the performance of its obligations under the Lease in the following particulars:

    a.    The Debtor has failed to pay the $100,000 due on February 1, 2018;

    b.    The Debtor is in default of the payment of the service fees due for 2017 in the sum of $647,084.25.

6.    Notwithstanding the defaults of the Debtor, REP has continued to provide Engines to the Debtor, thus allowing the Debtor to compete in the Daytona 500.

7.    The Cup Series is now in full swing.    After the Daytona race, the next race is scheduled for Atlanta on February 25, 2018.

8.    The Lease in Paragraph 6 requires that an engine used in a race be returned to REP on or before the Tuesday after such race so that the engine can be rebuilt.   Due to the strain placed upon engines during a Cup Series race, they must be fully re-built after each Cup Series race.   In order to provide an engine for the Atlanta race, it will be necessary for REP to begin work on Tuesday, February 20, 2018.

9.    Following the race in Atlanta, the Cup Series goes on a west coast swing through Phoenix, Las Vegas and Fontana, California.   Due to the distances involved, the Debtor will have to depart on Tuesday, February 27 for the west coast trip with three race-ready engines.

## ARGUMENT AND ANALYSIS

**This Court should require the Debtor to immediately assume or reject the Lease.**

Section 365(d)(2) allows the Court to shorten the time period for assumption or rejection of a lease upon the request of a party to the contract.   That section states:

> In a case under chapter 9, 11, 12 or 13 of this title, the trustee may assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor at any time before the confirmation of a plan **but the court, on the request of any party to such contract or lease, may order**

**the trustee to determine within a specified period of time whether to assume or reject such contract or lease.**

REP is a party to the Lease and request that the normal time period be shortened.

When a party seeks to shorten the statutory time to assume or reject, the burden is on the movant to demonstrate cause. *In re Dana Corp. 350 B.R. 144, 147 (S.D.N.Y. 2006.)* In determining whether to shorten the time period for assumption or rejection, the Court has wide discretion based on the particular facts of each case. *Id.* In making its determinations courts have considered the following factors:

1) The importance of the contracts to the debtor's business and reorganization;

2) The debtor's failure or ability to satisfy post-petition obligations;

3) The nature of the interests at stake;

4) The balance of hurt to the litigants and the good to be achieved;

5) Whether the debtor has had sufficient time to appraise its financial situation and the potential value of its assets in formulating a plan;

6) The safeguards afforded the litigants;

7) The damage the non-debtor will suffer beyond the compensation available under the Bankruptcy Code;

8) Whether there is need for judicial determination as to whether an executory contract exists;

9) Whether exclusivity has been terminated;

10) Whether the action to be taken is so in derogation of Congress' scheme that the court may be said to be arbitrary; and

11) The purpose of chapter 11, which is to permit successful rehabilitation of debtors.

*Id. at 147.*

In this case, the Debtor's decision regarding whether or not to assume the Lease should not be a difficult decision, nor should it take a lengthy time period. Without the Lease, the Debtor can't operate. The decision is virtually a foregone conclusion that the Debtor will attempt to assume the Lease. The only possible reason for postponing the decision is to potentially give the Debtor time to "save" the amount required to cure the arrearage. Although case law states that the Debtor should be allowed sufficient time to make a prudent business decision, nowhere does it state that the Debtor can stall the decision just because of its inability to cure the deficiencies.

In *In re Travelot Co., 286 B.R. 462 (Bankr. S.D. Ga. 2002)*, the bankruptcy court granted a motion to shorten the time period to accept or reject an executory contract. In its opinion the Court stated:

> The Contract, as the Debtor has so eloquently argued in the past, is the essence of Debtor's entire business. Whether to assume the Contract is not the typical isolated question faced by many Chapter 11 debtors who are called upon to determine which employment contracts to assume and which to reject, or which leases of shopping center space or rolling stock to assume and which to reject as part of a larger comprehensive Chapter 11 plan. The Contract is the sole purpose for Travelot's existence and for its presence in this Chapter 11 reorganization proceeding.

*Id. at 468.*

### Conclusion

This Debtor does not need more time to determine whether to accept or reject the Lease. The only reason it has for postponing the decision is to try to come up with the amount needed to cure the arrearage and some sort of demonstration that REP will be adequately protected going forward. Delay in the assumption of the Lease will cause great financial harm to REP. Within the next two weeks, REP will be required to provide four engines to the Debtor, one for the Atlanta race and three for the west coast trip. Forcing REP to perform this extensive amount of work under the Lease, preparing the engines without assurance of payment would be beyond the financial ability of

REP and likely cause it to have to close its doors. Therefore, the Debtor should be required to immediately either assume or reject the Lease.

Should the Debtor not assume the Lease, Movant then Movant's interest will not be adequately protected, and it should be allowed relief from the automatic stay pursuant to Section 362(d)(1) to cancel the Lease.

WHEREFORE, Movant prays that the Court:

1.      Enter an order requiring the Debtor to immediately accept or reject the Lease; and,

2.      In the event that the Debtor fails to assume the lease, that Movant be allowed relief from the automatic stay to cancel the Lease.

This the 21st day of February, 2018.

          /s/ A. Burton Shuford
          A. Burton Shuford, NC Bar No. 010035
          Attorney for Race Engines Plus, LLC
          4700 Lebanon Road, Suite A-2
          Mint Hill, NC  28227
          (980) 321-7000
          Email:  bshuford@abshuford.com



## ENGINE LEASE AGREEMENT

This Engine Lease Agreement ("Agreement") is made by and between Race Engines Plus, LLC ("REP") and BK Racing, LLC ("BKR) (collectively, the "Parties") as of the 31 day of January, 2017. BKR owns and operates race teams that compete in NASCAR Monster Energy Cup Series (the "Cup Series") races, and during the Term of this Agreement (as defined below, intends to enter one full time team in all Cup Series races, and from time to time, one or more part time teams in Cup Series races. REP operates an engine building and servicing business that provides fully-functioning, high-quality engines to be utilized by race teams that compete in Cup Series races. The Parties agree as follows:

1.     Term: The Term of this Agreement shall be from the date of full execution of this Agreement through the conclusion of the 2019 Cup Series race season (the "Term").

2.     Full Time BKR Team:

    a.  REP will provide an engine set and engine tuning services for one full time BKR team throughout the Term (the "Full Time Team") for competition in all Cup Series race events (both points and non-points events) during the Term (each, a "Race"). For each Race, REP shall provide BK Racing with the use of one (1) primary engine and one (1) back-up race-ready engine (each, an "Engine", collectively, the "Engines"). REP (or its affiliates in Martinsville, Virginia) shall provide the Full Time Team with requisite carburetors, manifolds, Engine hardware and engine spare parts as necessary, including cylinder blocks and crankshafts. REP will provide header specifications and supplier information for such headers' repairs and for any additional sets of headers BKR elects to purchase. BKR will supply its own engine oil based on specifications provided by REP and will return all unused racing fuel to REP for use in the dyno. In addition, BKR shall have unfettered, universal access at all times during the Term to REP's engine shop and employees and BKR shall have access to the REP chassis dyno. The Engines shall be made available for BKR's use at REP's engine shop in Concord, North Carolina at least seven (7) days prior to a scheduled Race;

    b.  In return for REP's duties and obligations as outlined in Section 2(a) above, BKR shall pay REP service fees of $35,000 per each points Race (which is expected to be a total of thirty-six (36) points Races per year). Each payment of service fees shall be due and payable no later than the Friday following each points Race;

    c.  At no additional charge, and due to the relatively light wear and tear on the Engines, REP shall provide Engines and Engine Services to BKR pursuant to the Full Time Team for all non-points events during the Term in which the Full Time Team is entered, which is expected to include the Duels (associated with the Daytona 500), and all All-star events; and

1

    d. In the event of engine failure at or prior to any Race, such as during a pre-Race practice, REP shall utilize its best efforts to provide a replacement Engine.

3.     <u>Part Time BKR Teams</u>:

    a. BKR intends to field a second race team entry in various Races throughout the Term, and shall enter a part time team in at least fourteen (14) Races per race season during the Term (the "Part Time Teams"). REP will provide an engine set and engine tuning services for all Part Time Teams entered for competition in all such Cup Series points and non-points Races during the Term. For each such Race, REP shall provide BKR with the use of one (1) primary Engine, and if more than one Part Time Team is entered in any Race, one (1) back-up race-ready Engine. REP (or its affiliates in Martinsville, Virginia) shall provide the Part Time Team with requisite carburetors, manifolds, Engine hardware and engine spare parts as necessary, including cylinder blocks and crankshafts. REP will provide header specifications and supplier information for such headers' repairs and for any additional sets of headers BKR elects to purchase. In addition, BKR shall have unfettered, universal access at all times during the Term to REP's engine shop and employees and BKR shall have access to the REP chassis dyno. The Engines shall be made available for BKR's use at REP's engine shop in Concord, North Carolina seven (7) days prior to a scheduled Race. BKR shall provide at least three (3) weeks' written notice to REP of BKR's intent to field one or more Part Time Teams at any given Race;

    b. In return for REP's duties and obligations as outlined immediately above, BKR shall pay REP service fees of $27,500 for each Race in which the Part Time Team qualifies for the Race, and $5,000 per Race for each Race, up to three total, in which the Part Time Team attempts to, but fails to qualify for the Race. After three failed qualification attempts, $27,500 is owed per race regardless of whether or not the Part Time Team qualifies. The service fees shall be due and payable no later than the Friday following the Race;

    c. BKR shall attempt to qualify a Part Time Team in at least fourteen (14) Races per year during the Term. If it becomes mathematically evident that the Part Time Team cannot attempt to qualify a car in more than 14 races (for example, if there are 10 races left in the season and BKR has only attempted to qualify 4 times in that year), then BKR shall pay the $27,500 service fee each week regardless of whether or not it attempts to qualify;

    d. In the event of engine failure at or prior to any Race, such as during a pre-Race practice, REP shall utilize its best efforts to provide a replacement Engine; and

    e. In the event BKR enters a second Part Time Team in any Race, in return for REP's duties and obligations as outlined immediately above, REP shall pay REP service fees of $10,000 for each Race in which a Second Part Time Team qualifies for the Race, and $5,000 per Race for each Race in which a Second Part

Time Team attempts to, but fails to qualify for the Race. The service fees shall be due and payable no later than the Friday following the Race.

4.    <u>Delivery of BKR Engines and Engine Parts</u>: Pursuant to an Amended Arbitration Award entered with respect to the case captioned "BK Racing, LLC vs. Race Engines Plus, LLC, et al.," bearing Cabarrus County Civil Case No. 14-CVS- 3618 (the "Litigation"), on December 27, 2016, REP delivered to BKR engines and engine parts that are owned by BKR (the "BKR Engine Parts"). In order to facilitate REP's ability to meet its duties and obligations under this Agreement, upon full execution of this Agreement, BKR shall deliver the BKR Engine Parts back to REP, along with a written list and photographs of all items delivered. REP may utilize all such BKR Engine Parts throughout the Term of this Agreement. Immediately upon termination of this Agreement for any reason other than BKR's uncured material breach, REP shall return (or make available for pick-up) all BKR Engine Parts.

5.    <u>Prepayment of Service Fees</u>.

a. In conjunction with the full execution of this Agreement, BKR shall deliver to counsel for REP the sum of $300,000 (the "Prepayment Amount");

b. Of the Prepayment Amount, $200,000 may be immediately transferred to REP, and shall be utilized by REP to purchase parts and equipment necessary to provide the Engine Services during the 2017 Race Season, as required by this Agreement. BKR shall thereafter be entitled to a credit of $20,000 per Race towards the amounts owed for Engine Services related to the Full Time Race Team for the first ten points Races of the 2017 season (such that for the first ten points Races of the 2017 season, the amount owed for the Full Time Team shall be $15,000 per Race);

c. Of the Prepayment Ament, the remaining $100,000 shall remain in the trust account of counsel for REP, and so long as this Agreement has not been terminated by either party, shall be disbursed to REP on or after February 1, 2018, in order for REP to purchase parts and equipment necessary to provide the Engine Services during the 2018 Race Season, as required by this Agreement. BKR shall be entitled to a credit of $10,000 per Race towards the amounts owed for Engine Services related to the Full Time Race Team for the first ten points Races of the 2018 season (such that for the first ten points Races of the 2018 season, the amount owed for the Full Time Team shall be $25,000 per Race);

d. In the event this Agreement is terminated prior to February 1, 2018 and there is a dispute between the parties regarding such termination, the remaining $100,000 shall remain in the trust account of counsel for REP until such time as the parties have reached a written agreement as to how those funds should be disbursed, or a final order of a court of competent jurisdiction directs how those full shall be disbursed; and

3

e. If BKR, for any reason other than due to REP's material breach of this Agreement, does not continue with this Agreement in 2018, REP may retain the remaining $100,000, and credit the Judgment (defined below) by $100,000.

6.    Return of Engines: Additional Work: Each used Engine will be delivered to REP on or before the Tuesday after each Race. The Engines will be rebuilt after each use. REP will perform normal maintenance on the Engines and replace parts on the Engines as necessary. The Engines may be torn down or otherwise modified only by REP employees. From time to time BKR may request additional materials and/or labor in connection with this Agreement but not specifically addressed by this Agreement. Any such work must be confirmed in writing by BKR and REP prior to the work materials and/or labor being supplied, and after completion will be billed at rates that must be agreed upon, in writing, prior to the materials or labor being provided.

7.    Warranty of Fitness for a Particular Purpose: REP represents and warrants that the Engines and related services, shall (a) configure and customize the Engines and parts using its knowledge and skills in a manner that is specific to each Race and Race track on which BKR will race, (b) customize and configure as deemed necessary by REP all necessary internal parts such as crankshafts and camshafts and external parts such as carburetors and headers, (c) manage the Engines, parts and adjustments during all testing, building, rebuilding and conduct maintenance and research and development, (d) the Engines and related services shall be of similar quality as other engines utilized in the Cup Series, and (e) the Engines and related services shall be constructed and performed in a good and workmanlike manner, and the Engines built to all then-existing NASCAR Cup Series specifications and other applicable rules and regulations. Notwithstanding the foregoing, isolated Engine failures which are not the result of the engine construction shall not be deemed a material breach of this Agreement.

8.    Driver Negligence: Engine Damage: If after a loss of water or oil pressure, or excessive temperature readings in excess of 270 degrees (as reflected by the gauges and confirmed by the racecar's ECU) for an extended period of time (i.e., not a short spike in engine temperature), the driver of the race car continues to operate the car causing Engine failure, BKR will be responsible for the cost to repair said Engine failure. Otherwise, BKR shall not owe REP any additional amounts for any Engine failure or damage.

9.    Restrictions on Engine Usage: The Engines may not be used in competition or testing except in the presence of REP employee Tony Cola (or one or more substitute REP employees to be agreed upon in advance, in writing, by BKR and REP), who shall have complete control of Engine tuning and general care of the Engines while in the possession of BKR; it being understood and agreed that such REP employee control applies solely to the Engines and no other aspect of BKR's operations or competition. It is the responsibility of REP to provide Tony Cola (or such other agreed-upon substitute employee) to BKR for every Race, if applicable, and the Engines shall not be used without an REP employee present. REP understands that if its employee(s) is unable to make it to a given Race or event, best efforts will be made by BKR to share available REP employees and failing that, follow REP instructions on caring for the Engines. To assist REP in its obligations pursuant to this Agreement, BKR shall timely pay all expenses, including but not limited to travel costs, hard cards, and credentials

4

associated with the engine tuners that REP provides to BKR. In other words, REP will not front tuner expenses.

10.     Termination with Cause:  This Agreement may only be terminated in the event of a party's material breach of this Agreement, which the breaching party fails to cure within five (5) days of written notice of such material breach.   This Agreement may not be terminated without cause.  In the event that REP properly terminates this Agreement due to BKR's uncured material breach, then REP may retain the BKR Engine Parts and shall credit the Judgment by the amount of $100,000.

11.     Judgement Collection and Cancellation.  Judgement was entered in the Litigation against BKR on or about January 3, 2017, in the amount of $1,462,548 (the "Judgment").  So long as this Agreement remains in effect, REP shall take no action whatsoever to collect upon the Judgment, including, but not limited to engaging in any post-judgment proceedings or discovery.  Furthermore, the Judgment shall be reduced and credited by REP as follows:

   a.  The Judgment shall be credited $300,000, and reduced accordingly to the amount of $1,162,648, upon payment of the Prepayment Amount;

   b.  The Judgment shall be credited an additional $262,648 upon full completion of the first year of this Agreement, and reduced accordingly to the amount of $900,000.  Alternatively, at any time after payment of the Prepayment Amount, BKR may pay REP $900,000 in return for REP cancelling the Judgment and at BKR's election, this Agreement being terminated;

   c.  The Judgment shall be credited an additional $300,000 upon full completion of the second year of this Agreement, and reduced accordingly to the amount of $600,000.  Alternatively, at any time during 2018, BKR may pay REP $600,000 in return for REP cancelling the Judgment and at BKR's election, this Agreement being terminated; and

   d.  The Judgment shall be cancelled of record, with no further amounts paid by BKR, upon full completion of the third year of this Agreement.  Alternatively, at any time during 2019, BKR may pay REP $300,000 in return for REP cancelling the Judgment, and at BKR's election, this Agreement being terminated.

12.     Confidentiality.  The terms of this Agreement shall be strictly confidential, and shared only with the owners, officers, and directors of each party, along with their respective accountants and attorneys, or as otherwise required by applicable law.

13.     Joint Statement to the Media.  The existence of the Judgment has been reported in the media.  To dispel any concerns that the parties' business present or future business partners have regarding the existence of the Judgment or the parties' past disputes, upon full execution of this Agreement, the parties agree to issue a joint press release stating as follows:  "While BK Racing and Race Engines Plus regret the circumstances which led to their previous disagreements, they have worked through those disputes and entered into a multi-year agreement

5

for BK Racing's Cup Series entries to be powered by high quality motors built by Race Engines Plus."

14.    Major Changes to Engines.  BKR is informed and believes that there is a moratorium on NASCAR mandating any major changes to its engine specifications during the Term of this Agreement.  However, in the event NASCAR mandates changes to Engine specifications during the Term of this Agreement, REP shall be responsible for all associated costs up to $100,000.  In the event such costs exceed $100,000, REP and BKR shall mutually agree upon a third party to review all costs and expenses associated with compliance with the new engine specifications, and shall allocate such costs and expenses in an equitable manner.

15.    Applicable Law and Jurisdiction.    THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH THE INTERNAL LAWS AND JUDICIAL DECISIONS OF THE STATE OF NORTH CAROLINA WITHOUT REGARD TO CONFLICT OF LAW PROVISIONS THEREOF. ANY LITIGATION, ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT SHALL BE INSTITUTED AND MAINTAINED EXCLUSIVELY IN ANY STATE COURT IN THE STATE OF NORTH CAROLINA, MECKLENBURG COUNTY. EACH PARTY WAIVES ANY OBJECTION WHICH IT MIGHT HAVE NOW OR HEREAFTER TO THAT EXCLUSIVE VENUE FOR ANY LITIGATION, ACTION OR PROCEEDING, SUBMITS TO THE SOLE AND EXCLUSIVE JURISDICTION OF SUCH COURTS AND WAIVES ANY CLAIM OR DEFENSE OF INCONVENIENT FORUM. EACH PARTY CONSENTS TO SERVICE OR PROCESS BY REGISTERED MAIL, RETURN RECEIPT REQUESTED, AT SUCH PARTY'S ADDRESS AS PROVIDED HEREIN (AND UPDATED IN WRITING FROM TIME TO TIME).

16.    Assignment.  This Agreement may not be assigned by either party hereto without the prior written consent of the other party.

17.    Advice of Counsel, Misc.  Each party hereto acknowledges that such party and its counsel have drafted and reviewed this Agreement and that they agree the normal rule of construction that any ambiguities are to be resolved against the drafter shall not be employed in the interpretation of this Agreement. Each provision of this Agreement shall be severable from every other provision of this Agreement for the purpose of determining the legal enforceability of any provision hereof, and the unenforceability of any provision hereof, and the unenforceability of one or more provisions of this Agreement in one jurisdiction shall not have the effect of rendering such provision or provisions unenforceable in any other jurisdiction. Failure of any party hereto to enforce any of its rights under this Agreement shall not be treated as a waiver of those rights.  The failure of any party to assert any rights under this Agreement shall not preclude any party from enforcing, nor shall such failure be interpreted to prejudice the enforcement of the party's rights.  Notices and communications may be given by FedEx (or nationally-recognized carrier), U.S. Mail or electronic mail to the addresses of the Parties set forth below.  Any and all notices shall be effective upon receipt or refusal to accept delivery.

18.    Attorneys' Fees Upon Breach.  Pursuant to N.C.G.S. § 6-21.6, the prevailing party in any litigation that arises from or relates to this Agreement shall be entitled to recover its

6

reasonable attorneys' fees associated with such litigation. This specifically includes, but is not limited to any disputes or litigation arising from the $100,000 placed into REP's attorneys' trust account pursuant to Section 5.

19.     <u>Warranty of Charters.</u>  BKR promises and warrants to own and maintain one or more NASCAR charters for the entire period of this Agreement.  In the event BKR no longer owns any NASCAR charter, this Agreement becomes null and void. **Furthermore, BKR, through its President Ron Devine, swears that this Agreement is not being used to foster a putative sale or lease of all of BKR's NASCAR charters.**

20.     <u>Exclusivity.</u>  Unless this Agreement has been terminated by BKR for REP's uncured material breach, REP shall be the exclusive engine provider for BKR or any other associated teams, affiliates, subsidiaries, assigns, purchasers, etc. for the entire Term. BKR agrees not to utilize any other engine builders for the Term. Nor may BKR build its own engines. Notwithstanding the above, in the event Toyota Racing Development utilizes the BKR chartered race car with a TRD motor for any given race during the Term, that will not constitute a violation of this exclusivity provision. In that event, BKR shall remain responsible to pay for all Engine services required by this Agreement, notwithstanding the fact that REP will not be required to deliver or service an Engine for that applicable race.

21.     <u>Entire Agreement</u>.   This Agreement incorporates all prior discussions and negotiations and represents the full understanding and agreement of the parties with respect to all matters set forth herein.

22.     <u>Effective Date</u>:  This Agreement shall become effective upon execution in full, payment of the Prepayment Amount, and delivery of the BK Engine Parts.

**[SIGNATURES ON FOLLOWING PAGE]**

7

RACE ENGINES PLUS, LLC, a North Carolina limited liability company

By: _____ (SEAL)        Date: 1-31-2017
Joey K. Arrington, President

Notice Address:        Race Engines Plus, LLC
                       c/o its President, Joey Arrington
                       7100 Weddington Road
                       Concord, North Carolina 28027
                       Email: joey@arengines.com

                       With a copy to:

                       Derek P. Adler
                       DeVore, Acton & Stafford, P.A.
                       438 Queens Road
                       Charlotte, North Carolina 28207
                       Email: dadler@devact.com

BK RACING, LLC, a North Carolina limited liability company

By: _____ (SEAL)        Date: 1/31/2017
Ron Devine, President

Notice Address:        BK Racing, LLC
                       c/o Ron Devine, President
                       6320 Augusta Drive, 14th Floor
                       Springfield, VA 22150

                       With a copy to:

                       Adam L. Ross
                       James, McElroy & Diehl, P.A.
                       600 South College Street, Suite 3000
                       Charlotte, North Carolina 28202
                       Email: aross@jmdlaw.com

8

EXHIBIT

B

**Derek Adler**

| | |
|---|---|
| **From:** | Joey Arrington <joey@arengines.com> |
| **Sent:** | Friday, May 19, 2017 11:12 AM |
| **To:** | 'Ron Devine'; 'Adam L. Ross' |
| **Cc:** | Derek Adler; 'Nancy O' |
| **Subject:** | RE: amendment to Engine Lease Agreement |

This confirms REP agreement to the Engine Lease Agreement. If the $100,000.00 of trust funds is not replenished to my attorneys trust account by July 31, 2017 , then that will be deemed  material breach of the lease. This amendment does not affect any other provisions of the agreement.

**From:** Ron Devine [mailto:rdevine@arfoods.com]
**Sent:** Friday, May 19, 2017 10:46 AM
**To:** Joey Arrington; Adam L. Ross
**Cc:** dadler@devact.com; Nancy O
**Subject:** Fwd: amendment to Engine Lease Agreement


Sent from my iPad



Joey –



Reference is made to the January 31, 2017 Engine Lease Agreement between Race Engines Plus and BK Racing (the "Agreement").  This email is to confirm the terms of an amendment to that Agreement pursuant to our discussion yesterday.  Your attorney is hereby authorized to immediately release to REP the $100,000 which is in his trust account pursuant to Section 5(c) of the Agreement, which funds shall cure BKR's existing default under the Agreement.  BKR shall replenish the $100,000 of trust funds in your attorneys' trust account by the end of July 2017.  Please respond to confirm your agreement to these amended terms.



Best,



Ron

1





August 1, 2017

Joey Arrington
via fax # 704-795-1099

The agreement between Ron Devine/BK Racing, and
Joey Arrington/Race Engines Plus remains in effect.

The agreement goes from 7-20-2017 thru 12-01-2019. This is a one-time
only exception to the agreement of February, 2017. A Triad engine can be
used at Indy 7-23-2017 regardless of results. REP will be the only engine
supplier for BKR regardless of engine brand thru 12-01-2019.

Ron Devine promises to have engine bill caught up in 45 days, starting with
$45,000 wire on 7-21-2017 and a check to deposit 7-25-2017, both of which
have occurred.


Ronald C. Devine                          Joey Arrington
BK Racing                                 Race Engines Plus


**BK Racing, LLC**
6320 Augusta Drive, Suite 1400 ● Springfield, VA  22150
703-912-9000

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

IN RE:

|  |  |  |
|---|---|---|
|  | ) | Case No. 18-30241 |
| BK RACING, LLC, | ) | Chapter 11 |
|  | ) |  |
| Debtor. | ) |  |

## NOTICE OF EMERGENCY MOTION TO REQUEST THAT THE COURT SHORTEN THE DEADLINE FOR ASSUMING OR REJECTNG THE LEASE WITH RACE ENGINES PLUS, LLC OR, IN THE ALTERNATIVE, MOTION FOR RELIEF FROM STAY TO CANCEL LEASE AND NOTICE OF HEARING

Race Engines Plus, LLC, by and through the undersigned counsel, has filed an emergency motion with the Court as described above. A copy of said motion is attached hereto.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)**

Pursuant to shortened notice, a hearing will be held to consider this Motion on **February 23, 2018 at 11:00 AM** at the Cleveland County Courthouse, 100 Justice Place, Shelby, North Carolina., pursuant to court order shortening notice. No further notice of this hearing will be given.

**All interested parties may attend and be heard. If you do not oppose the Motion you do not have to attend.**

If you or your attorney do not take these steps, the Court may decide that you do not oppose the relief sought in the Motion and may enter an order granting the requested relief.

This the 21st day of February, 2018.

/s/ A. Burton Shuford
A. Burton Shuford, NC Bar No. 010035
Attorney for Race Engines Plus, LLC
4700 Lebanon Road, Suite A-2
Mint Hill, NC  28227
(980) 321-7000
Email:  bshuford@abshuford.com

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

IN RE:

|  |  |  |
|---|---|---|
| BK RACING, LLC, | ) | Case No. 18-30241 |
|  | ) | Chapter 11 |
|  | ) |  |
| Debtor. | ) |  |

CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the *EMERGENCY MOTION TO REQUEST THAT THE COURT SHORTEN THE DEADLINE FOR ASSUMING OR REJECTNG THE LEASE WITH RACE ENGINES PLUS, LLC OR, IN THE ALTERNATIVE, MOTION FOR RELIEF FROM STAY TO CANCEL LEASE AND NOTICE OF HEARING* by either Electronic Case Filing, Email or by depositing copies of same in the exclusive care and custody of the United States Postal Service, with proper postage thereto affixed, addressed to the parties listed below as well as on the attached Exhibit A:

Shelley K. Abel, US Bankruptcy Administrator          Via Electronic Case Filing
James H. Henderson, Counsel for the Debtor            Via Electronic Case Filing

BK Racing, LLC                                       David M. Schilli
6780 Hudspeth Road                                   Robinson, Bradshaw & Hinson, P.A.
Harrisburg, NC 28075                                 101 North Tryon Street, Suite 1900
                                                     Charlotte, NC  28246-1900
                                                     dschilli@rbh.com


Jonathan T. Edwards                                  Annemarie D. Cleary
Alston & Bird LLP                                    Eckert Seamans Cherin Mellott
One Atlantic Center                                  SunTrust Center
1201 West Peachtree St.                              919 East Main Street #1300
Atlanta, Georgia 30309                               Richmond, VA  23219
jonathan.edwards@alston.com                          acleary@eckertseamans.com

This the 21st day of February, 2018.

                                    /s/ A. Burton Shuford
                                    A. Burton Shuford, NC Bar No. 010035
                                    Attorney for Race Engines Plus, LLC
                                    4700 Lebanon Road, Suite A-2
                                    Mint Hill, NC  28227
                                    (980) 321-7000
                                    Email:  bshuford@abshuford.com

Label Matrix for local noticing
0419-3
Case 18-30241
Western District of North Carolina
Charlotte
Wed Feb 21 14:30:26 EST 2018

BK Racing, LLC
6780 Hudspeth Road
Harrisburg, NC 28075-5006

Champion Tire & Wheel, Inc.
c/o Andrew T. Houston
Moon Wright & Houston, PLLC
121 W. Trade Street
Suite 1950
Charlotte, NC 28202-1176

U.S. Bankruptcy Administrator Office
402 W. Trade Street
Suite 200
Charlotte, NC 28202-1673

Union Bank & Trust
101 North Tryon Street
Suite 1900
Charlotte, NC 28246-0103

Charlotte Division
401 West Trade Street
Charlotte, NC 28202-1633

Airtight Facilitech
1338 Hundred Oaks Drive Ste C
Charlotte, NC 28217-4067

Amanda R. Pickens
Robinson Bradshaw & Hinson PA
101 N Tryon Street Ste 1900
Charlotte, NC 28246-0106

Annemarie DiNardo Cleary
Eckert Seamans Cherin & Mellott LLC
919 East Main Street Ste 1300
Richmond, VA 23219-4624

Bluewater Partners LLC
150 Kevin Drive
Troutman, NC 28166-8683

Bluewater Partners LLC
c/o David P Parker PLLC
242 East Broad Street
Statesville, NC 28677-5325

Bob Jeffrey
Jeff Co
6411 Bay Harbor Lane
Indianapolis, IN 46254-4515

Bordeaux Dyno Cams
22247 Andrew Jackson Hwy
Delco, NC 28436

Cabarrus County Tax Collector
Courthouse Box 707
Concord, NC 28025

Champion Air LLC
c/o Dale Earnhardt Inc
1675 Dale Earnhardt Blvd
Highway 3
Mooresville, NC 28115-8330

Champion Tire & Wheel
11106 Treynorth Drive
Cornelius, NC 28031-8190

City of Charlotte
PO Box 1316
Charlotte, NC 28201-1316

Cometic Gasket
8090 Auburn Road
Concord, OH 44077-9600

Components USA
PO Box 13254
Newark, NJ 07101-3254

ConSeaAir LLC
3157 Heirloom Rose Place
Oviedo, FL 32766-6727

Douglas S Fritz
9610 Rayneridge Drive
Huntersville, NC 28078-7668

Duke Energy
PO Box 470515
Charlotte, NC 28247-0515

Employment Security Commission of NC
PO Box 26504
Raleigh, NC 27611-6504

Enterprise Holdings Inc
PO Box 840173
Kansas City, MO 64184-0173

Enviro-Master
PO Box 12350
Charlotte, NC 28220-2350

Foxboro Financial Services LLC
c/o Michael C Diseveria
16200 Bellingham Drive
Germantown, MD 20874-3240

Front Row Motorsports
2670 Peachtree Rd
Statesville, NC 28625-8252

Gray Gaulding
154 Heathrow Lane
Statesville, NC 28677-8554

Gray Gaulding Racing Inc
154 Heathrow Lance
Statesville, NC 28677-8554

Harraka Racing Equipment
143 Village View Drive Ste 312
Mooresville, NC 28117-0040

Internal Revenue Service
8405 Greensboro Dr Ste 700
Mc Lean, VA 22102-5108

Internal Revenue Service
Centralized Insolvency Operations
PO Box 7346
Philadelphia, PA 19101-7346

Internal Revenue Service
P.O. Box 7317
Philadelphia, PA 19101-7317

Iowa City Capital Partners LC
2310 Lake Ridge Place NE
North Liberty, IA 52317-9366

James McElroy & Diehl P A
c/o Adam L Ross
525 N Tryon Street Ste 700
Charlotte, NC 28202-0202

L A M Z Enterprises LLC
c/o Wayne M D Press
8665 Bay Colony Drive #703
Naples, FL 34108-6767

MCI Racing LC
c/o Anthony Marlow
2937 Sierra Ct SW
Iowa City, IA 52240-8503

MCI Racing LP
c/o Anthony Marlow
7780 Office Plaza Drive S #100
West Des Moines, IA 50266-2337

Mike Wheeler
40231 Browns Creek Place
Leesburg, VA 20175-8804

Moroso Performance
80 Carter Drive
Guilford, CT 06437-2125

NASCAR Broadcasting LLC
Attn:  General Counsel
One Daytona Boulevard
Daytona Beach, FL 32114-1252

NASCAR Digital Media LLC
Attn: General Counsel
One Daytona Boulevard
Daytona Beach, FL 32114-1252

NASCAR Event Management Inc
Attn: General Counsel
One Daytona Boulevard
Daytona Beach, FL 32114-1252

NASCAR Media Group LLC
Attn: General Counsel
One Daytona Boulevard
Daytona Beach, FL 32114-1252

NASCAR Media Ventures LLC
Attn: General Counsel
One Daytona Boulevard
Daytona Beach, FL 32114-1252

NASCAR Productions LLC
Attn: General Counsel
One Daytona Boulevard
Daytona Beach, FL 32114-1252

NC Department of Revenue
Bankruptcy Unit
PO Box 1168
Raleigh, NC 27602-1168

NC Department of Revenue
PO Box 25000
Raleigh, NC 27640-0002

Nelson Mullins
PO Box 11070
Columbia, SC 29211-1070

North Carolina Department of Revenue
Bankruptcy Unit
P.O. Box 1168
Raleigh, NC 27602-1168

Precision Products
PO Box 1229
Arden, NC 28704-1229

RJ Waste & Recovery Inc
9925 Metromont Ind. Blvd
Charlotte, NC 28269-7609

Race Engines Plus LLC
7100 Weddington Road
Concord, NC 28027-3412

Robert A Muckenfuss
McGuireWoods
201 N Tryon Street Ste 3000
Charlotte, NC 28202-2146

Ron Devine
6320 Augusta Drive Ste 1400
Raleigh, NC 27615

Ron Ingalls
Ingalls Refinery LLC
210 Senior Circle
Lompoc, CA 93436-1491

Signals Seals & Fasteners
PO Box 1135
Mooresville, NC 28115-1135

Simpson Performance Products
328 FM306
New Braunfels, TX 78130-2556

Sport Venture Group LLC
PO Box 2330
Mount Pleasant, SC 29465-2330

Sterling Foundation Management LLC
12030 Sunrise Valley Drive Ste 450
Reston, VA 20191-3400

The Lynch Racing Co
Division of Sport Venture Group LLC
PO Box 2330
Mount Pleasant, SC 29465-2330

TriStar Motorsports
330 Aviation Drive
Statesville, NC 28677-2509

Triad Racing Technologies
235 Raceway Drive
Mooresville, NC 28117-6510

Troy J Stafford
DeVore Acton & Stafford
438 Queens Road
Charlotte, NC 28207-1422

U.S. Securities Exchange
Office of Reorganization
950 East Paces Ferry Road, N.E.
Suite 900
Atlanta, GA 30326-1382

Union Bank & Trust
c/o David M. Schilli
Robinson Bradshaw & Hinson P A
101 N Tryon Street Ste 1900
Charlotte, NC 28246-0106

United States Attorney
227 West Trade Street Suite 1700
Charlotte, NC 28202-1675

Virginia Racers Group LLC
c/o Brenda S Devine
6320 Augusta Road Flr 15
Springfield, VA 22150-2523

Watson Electric Co Inc
PO Box 467
Huntersville, NC 28070-0467

Winberg Crankshafts
333 W 48th Avenue
Denver, CO 80216-1803

Winberg Precision
2190 S Jason Street
Denver, CO 80223-4005

Windstream
PO Box 9001908
Louisville, KY 40290-1908

Windstream
PO Box 9001950
Louisville, KY 40290-1950

Yeley Racing Corp
8124 Parkton Gate Drive
Huntersville, NC 28078-4843

James H. Henderson
JAMES H. HENDERSON, P.C.
1201 Harding Place
Charlotte, NC 28204-2826

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

(d)Internal Revenue Service
Cincinnati, OH 45999-0039

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)NASCAR Event Management, Inc.

(u)National Association for Stock Car Auto Ra

(u)Race Engines Plus, LLC

(u)Panki Racing Systems UK Ltd
Industriestra Be West 4
Kapfenberg
A-8605

End of Label Matrix
Mailable recipients    74
Bypassed recipients     4
Total                  78