IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
(Charlotte Division)

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| **BK RACING, LLC,** ) | Case No. 18-30241 |
| ) | |
| Debtor. ) | |

### EMERGENCY MOTION TO COMPEL DEBTOR'S ASSUMPTION OR REJECTION OF AN EXECUTORY CONTRACT, OR ALTERNATIVELY, FOR RELIEF FROM THE AUTOMATIC STAY TO TERMINATE CONTRACT

Champion Tire & Wheel, Inc. ("Champion"), moves the Court for entry of an order compelling BK Racing, LLC (the "Debtor") to assume or reject a service agreement and contract between Champion and the Debtor, or alternatively granting Champion relief from the automatic stay to terminate the contract. In support of this motion (the "Motion"), Champion respectfully represents the following:

### JURISDICTION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue of this case and of the Motion is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicates for the relief requested herein are 11 U.S.C. §§ 105(a) and 365, as well as Bankruptcy Rule 6006. The statutory predicates for the alternative relief requested herein are 11 U.S.C. §§ 105(a) and 362, and Bankruptcy Rule 4001(a).

### BACKGROUND

2. Champion and the Debtor are parties to a service agreement and contract dated February 9, 2016 (the "Contract"). Champion attaches a complete and accurate copy of the Contract hereto as **Exhibit A** and incorporates the Contract herein by reference.

3. The Contract provides that Champion will provide the Debtor with certain services related to the Debtor's competition in the NASCAR Sprint Cup Series (the "SCS") for the 2016 through 2018 race seasons. These services include, among others, providing the Debtor with race wheels and tires for use at all SCS events; transporting, unloading, and loading of all race wheels, tires, and liners at tracks hosting SCS events; dismounting and disposing of tires from race wheels; wheel rating services; transporting, unloading, and loading pit box and other miscellaneous equipment at tracks; and providing the Debtor with nitrogen bottles at each track.

4. The terms of the Contract allow the Debtor to pay Champion for these services in quarterly installments due on the first days of February, April, July, and October of each year during the life of the Contract. The Debtor also repays fuel costs incurred by Champion in the transportation of equipment to SCS races through these quarterly installments.

5. On February 15, 2018, (the "Petition Date"), the Debtor filed its petition for relief under chapter 11 of the Bankruptcy Code. The Debtor continues in possession of its properties and the management of its business as a debtor in possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code. The Court has not yet appointed a trustee or examiner in this chapter 11 case.

6. Prior to filing its bankruptcy, the Debtor failed to pay Champion all of the required quarterly installment payments for 2017. In its bankruptcy petition, the Debtor listed Champion among its twenty largest creditors, showing an unpaid pre-petition trade debt to Champion of $94,999.00. [Doc. 1].

7. The 2018 SCS season commenced contemporaneously with the Debtor's bankruptcy filing with races held at the Daytona International Speedway ("Daytona"). Consistent

with the provisions of the Contract, Champion provided the Debtor with wheels and tires and transported equipment to Daytona shortly before the Petition Date.

8.  Following the Daytona race, the SCS schedule continues with events in Atlanta on February 25, before moving to the West Coast with events in Las Vegas on March 4, Phoenix on March 11, and Fontana, California on March 17. The remainder of the SCS season continues at tracks located throughout the United States before concluding in November 2018. Pursuant to the Contract, Champion would be required to transport the Debtor's equipment and provide the Debtor with wheels and tires at all of these scheduled events.

9.  As of the filing of the Motion, the Debtor has not filed a motion to use cash collateral and does not have the authority to use cash collateral. Moreover, Champion is informed that the Debtor's secured lenders do not consent to the Debtor's use of cash collateral.

## RELIEF REQUESTED

10. Champion requests the entry of an order pursuant to 11 U.S.C. § 365(d)(2) and Bankruptcy Rule 6006(b) compelling the Debtor to assume the Contract. In the alternative, Champion requests the entry of an order pursuant to 11 U.S.C. § 362(d) and Bankruptcy Rule 4001 granting Champion relief from the stay to terminate the Contract.

## BASIS FOR RELIEF REQUESTED

11. Section 365 of the Bankruptcy Code governs the rejection of any executory contract or unexpired lease. A debtor in possession may, subject to Court approval, assume or reject any executory contract or unexpired lease of the debtor. 11 U.S.C. § 365(a). In a case brought under chapter 11, a debtor may generally assume or reject such executory contracts "at any time before the confirmation of a plan . . . ." 11 U.S.C. § 365(d)(2).

12. Upon the request of a party to an executory contract, however, the Court may specify a shorter time within which a debtor may act to assume or reject an executory contract. *Id*. Courts faced with such requests have discretion to determine what constitutes a reasonable time within which the debtor must assume or reject the contract. *In re Teligent, Inc.*, 268 B.R. 723, 739 (Bankr. S.D.N.Y. 2001). Courts make such determinations "on a case-by-case basis in light of the broad purposes of the entire Bankruptcy Code." *Id*. Factors on which such a determination might be based include:

> the damage that the non-debtor will suffer beyond the compensation available under the Bankruptcy Code, the importance of the contract to the debtor's business and reorganization, whether the debtor has had sufficient time to appraise its financial situation and the potential value of its assets in formulating a plan, and whether exclusivity has terminated.

*Id*.; *accord In re Adelphia Communs. Corp.*, 291 B.R. 283, 292-93 (Bankr. S.D.N.Y. 2003) (listing similar factors).

13. Alternatively, a party to an executory contract, even a contract for personal services, must seek relief from the automatic stay prior to terminating the contract. *Bonneville Power Admin. v. Mirant Corp. (In re Mirant Corp.)*, 440 F.3d 238, 252-53 (5th Cir. 2006) ("Even when § 365(e)(2)(A) will ultimately permit a nondebtor party to terminate an executory contract by virtue of the combined effect of § 365(e)(2)(A), applicable law, and an ipso facto clause, the nondebtor party must seek relief from the stay before the bankruptcy court under § 362(d).").

14. Section 362(d) of the Bankruptcy Code allows the Court to grant relief from the automatic stay for cause. 11 U.S.C. § 362(d)(1). In determining whether granting relief from the stay is appropriate, courts "must balance potential prejudice to the bankruptcy debtor's estate against the hardships that will be incurred by the person seeking relief from the automatic stay if

relief is denied." *Robbins v. Robbins (In re Robbins)*, 964 F.2d 342, 345 (4th Cir. 1992). Relief from the automatic stay is at the discretion of the bankruptcy judge and is reviewable only for an abuse of discretion. *Id.*

15. In this case, the Court should require the Debtor to accept or reject the Contract immediately. The terms of the Contract obligate Champion to transport the Debtor's race equipment to events held throughout the country over the course of the coming year. To fulfill this obligation, Champion must incur ever-mounting fuel and payroll expenses, without sufficient assurance of repayment. Requiring Champion to continue its performance without such assurances of compensation denies Champion the ability to mitigate its damages. Indeed, forcing Champion to continue to perform under the Contract in light of the Debtor's current situation necessitates that Champion's damages will continue to grow precipitously in the near term.

16. Alternatively, Champion's mounting claims against the Debtor's estate from performing its obligations under the Contract are cause for the Court to grant Champion relief from the automatic stay to terminate the Contract with the Debtor.

**NOTICE**

Notice of this Motion has been provided to (a) the United States Bankruptcy Administrator for the Western District of North Carolina; (b) the Debtor; and (c) all parties requesting notice pursuant to Bankruptcy Rule 2002.

WHEREFORE, Champion respectfully requests that the Court grant the relief requested herein and such further relief as is just and proper.

Dated: Charlotte, North Carolina
February 21, 2018

                              **MOON WRIGHT & HOUSTON, PLLC**

By:     */s/Andrew T. Houston*
      Andrew T. Houston (NC Bar No. 36208)
      Caleb Brown (NC Bar No. 41131)
      121 West Trade Street, Suite 1950
      Charlotte, North Carolina 28202
      Telephone: (704) 944-6560
      *Counsel for Champion Tire & Wheel, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that copies of the foregoing *Motion to Compel Debtor's Assumption or Rejection of an Executory Contract, or Alternatively, for Relief from the Automatic Stay to Terminate Contract* were served by electronic notification on those parties registered with the United States Bankruptcy Court, Western District of North Carolina ECF system to receive notices for this case on February 21, 2018.

Dated: Charlotte, North Carolina
       February 21, 2018

        **MOON WRIGHT & HOUSTON, PLLC**

        */s/ Andrew T. Houston*
        Andrew T. Houston (NC Bar No. 36208)
        Caleb Brown (NC Bar No. 41131)
        121 W. Trade Street, Suite 1950
        Charlotte, North Carolina 28202
        Telephone: (704) 944-6560
        *Counsel for Champion Tire & Wheel, Inc.*