

FILED & JUDGMENT ENTERED
Steven T. Salata

March 8 2018

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

J. Craig Whitley
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

IN RE:

BK RACING, LLC

    Debtor.

CASE NO. 18-30241

CHAPTER 11

**INTERIM ORDER (A) AUTHORIZING LIMITED USE OF CASH COLLATERAL AND PAYMENT OF CERTAIN PRE-PETITION WAGES AND PAYROLL TAXES, (B) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED CREDITORS, (C) PARTIALLY DETERMINING THE EMERGENCY MOTION OF RACE ENGINES PLUS, LLC FOR ORDER SHORTENING THE TIME FOR ASSUMING OR REJECTING LEASE WITH RACE ENGINES PLUS, LLC OR, IN THE ALTERNATIVE, MOTION FOR RELIEF FROM STAY TO CANCEL LEASE, AND (D) CONTINUING HEARING ON EMERGENCY MOTION OF CHAMPION TIRE & WHEEL, INC. TO COMPEL DEBTOR'S ASSUMPTION OR REJECTION OF AN EXECUTORY CONTRACT, OR ALTERNATIVELY, FOR RELIEF FROM THE AUTOMATIC STAY TO TERMINATE CONTRACT**

This matter came before the Court on (A) Debtor BK Racing, LLC's (the "Debtor") Emergency Motions for Order Authorizing I) the Use of Cash Collateral Pursuant to Sections 361 and 363 of the Bankruptcy Code; II) the Payment of Pre-petition Payroll and Payroll Taxes filed on February 23, 2018 [D.E. 28] (the "Debtor's Motions"), (B) the Emergency Motion of Race Engines Plus, LLC ("REP") for Order Shortening the Time for Assuming or Rejecting Lease with Race Engines Plus, LLC or, in the Alternative, Motion for Relief from Stay to Cancel Lease filed on February 21, 2018 [D.E. 17] (the "REP Motion"), and (C) the Emergency Motion

10651777

of Champion Tire & Wheel, Inc. ("Champion") to Compel Debtor's Assumption or Rejection of an Executory Contract, or Alternatively, for Relief from the Automatic Stay to Terminate Contract filed on February 21, 2018 [D.E. 25] (the "Champion Motion"). These motions described above (collectively, the "Motions") came before the Court for interim hearings on February 23, 2018 and February 27, 2018 (each, an "Interim Hearing" and, collectively, the "Interim Hearings") on limited and expedited notice to interested parties via ECF noticing.

Based on a review of the Court file, the submissions of the parties, and the arguments of counsel, the Court finds and concludes as follows:

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue of this case and the Motions in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. These matters are core proceedings pursuant to 28 U.S.C. §§ 157(b)(2).

2. The Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in this Court on February 15, 2018 (the "Petition Date"). The Debtor continues in possession of its properties and the management of its business as a debtor-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108.

3. As of the Interim Hearings, no creditors committee had been appointed in this case.

4. Union Bank & Trust ("UBT") alleges that before the Petition Date, it loaned more than $12,000,000 to Ronald C. Devine ("Devine") and certain of his related entities. UBT alleges that Devine owns directly or indirectly through certain of his affiliates approximately 75% of the Debtor. UBT's loans to Devine and certain of his related entities (collectively, the "Loans") were evidenced by certain promissory notes (collectively, the "Notes"), true and correct copies of which were attached as Exhibit A to the Objection of Union Bank & Trust to Debtor's

Emergency Motions for Order Authorizing I) the Use of Cash Collateral pursuant to Sections 361 and 363 of the Bankruptcy Code; II) the Payment of Pre-Petition Payroll and Payroll Taxes filed on February 26, 2018 [D.E. 32] ("UBT's Cash Collateral Objection").

5. UBT alleges that before the Petition Date, the Debtor guaranteed the obligations under the Loans pursuant to written guaranties executed by the Debtor in favor of UBT (collectively, the "Guaranties"), true and correct copies of which were attached as Exhibit B to UBT's Cash Collateral Objection.

6. UBT alleges that before the Petition Date, the Debtor executed written security agreements in favor of UBT (collectively, the "Security Agreements," and together with the Notes and Guaranties, the "Loan Documents"), true and correct copies of which were attached as Exhibit C to UBT's Cash Collateral Objection. UBT alleges that pursuant to those Security Agreements, the Debtor granted to UBT a first-priority security interest in all of its assets, whether then existing or thereafter acquired by the Debtor, and in "all products and produce" and "all proceeds . . . from the sale . . . or other disposition" of any of the collateral (as more particularly described in the Security Agreements, the "Collateral").

7. UBT alleges that it caused to be filed and properly recorded in the Office of the North Carolina Secretary of State a UCC1 financing statement and a UCC3 financing statement evidencing and perfecting its liens on the Collateral, true and correct copies of which were attached as Exhibit D to UBT's Cash Collateral Objection.

8. UBT claims an interest in, among other things, all of the Debtor's cash, the Debtor's income and revenues from whatever source either paid or to be paid to the Debtor, and the proceeds, products, offspring or profits thereof within the meaning of Bankruptcy Code §§ 363 and 552(b). The Debtor contends that certain other creditors of the Debtor, including the

10651777

Internal Revenue Service, Ronald G. Ingalls and Virginia Racers Group, LLC (collectively with UBT, the "Secured Creditors" and any one of them, singly, a "Secured Creditor"), may also have an interest in such cash, income and revenues, and the proceeds, products, offspring or profits thereof.

9. Notice of the Motions and the Interim Hearings was provided to all interested parties in accordance with Federal Rule of Bankruptcy Procedure 4001(b)(1)(C).

10. Under Federal Rule of Bankruptcy Procedure 4001(b)(2), the Court is permitted to conduct a preliminary hearing on the Debtor's Motions to the extent they seek authority to use cash collateral, but the Court may authorize the use of only the amount of cash collateral as is necessary to avoid immediate and irreparable harm to the Debtor's estate pending a final hearing.

11. The Debtor's use of its cash, revenues and income from whatever source, whether paid or to be paid to the Debtor, and the proceeds, products, offspring or profits thereof, to the extent that they constitute "cash collateral" under Bankruptcy Code § 363 (referred to in this Interim Order as "Cash Collateral," although not expressly determined to be cash collateral within the meaning of Bankruptcy Code § 363 at this time) on a preliminary and interim basis in accordance with the terms and conditions set forth herein, as well as the payment of certain pre-petition payroll and payroll taxes, appears to be in the best interest of the estate and its creditors and is necessary to avoid immediate and irreparable harm to the Debtor's estate pending the Continued Hearing (as defined below).

12. At the February 23, 2018 Interim Hearing, the Debtor tendered the weekly budget attached hereto as Exhibit A (the "Budget").

**February 23, 2018 Interim Hearing**

10651777

Based on the record and the arguments of counsel at the Interim Hearing on February 23, 2018, **IT IS ORDERED, ADJUDGED and DECREED that:**

A.      The Debtor is authorized to pay the pre-petition wages and all social security tax, Medicare, unemployment insurance and any other associated taxes which are required by law, all as shown on Exhibit B attached hereto, as requested in the Debtor's Motions (collectively, the "Pre-petition Wages") .

B.      Subject to the terms and conditions set forth herein, the Debtor may use Cash Collateral to pay the Pre-petition Wages and may further use Cash Collateral during the period beginning February 23, 2018, and continuing through and including February 26, 2018, in the ordinary course of its business for the payment of (1) the sum of $35,000.00 to REP for the services to be rendered to the Debtor for the Monster Energy NASCAR Cup Series Race at the Atlanta Motor Speedway (the "Atlanta REP Payment") described in the engine lease agreement attached to the REP Motion,[1] and (2) the sum of $11,304 to Champion for the three (3) Monster Energy NASCAR Cup Series Races at the Las Vegas Motor Speedway, the ISM Raceway in Phoenix, Arizona, and the Auto Club Speedway in Fontana, California (the "Champion Payment"); provided, that if Devine, or some other person or entity other than the Debtor, makes any such payment on the Debtor's behalf or makes a loan to the Debtor, without this Court's authority, to enable the Debtor to make such payment, the Debtor is not herein authorized to use

---

[1] At the February 23, 2018 Interim Hearing, the Debtor represented to the Court that REP had received $50,000 following the Petition Date (as defined in this Order) in connection with the engine lease agreement between the Debtor and REP. At that hearing, with REP's consent, UBT reserved the right to assert that REP should not be entitled to payment of any other Cash Collateral until the $50,000 payment received by REP had been credited against the post-petition payments under the engine lease agreement. At the February 27, 2018 Interim Hearing, REP agreed to apply the $50,000 payment to the Debtor's post-petition obligations under the engine lease agreement, which will be set forth in a separate Order of this Court.

Cash Collateral in connection with such payment or to use Cash Collateral to pay Devine, or such other person or entity, in connection with any such loan or such payment so made.

  C. As adequate protection for the Secured Creditors' claimed interests in Cash Collateral, to the extent the Debtor used such Cash Collateral between February 23, 2018 and February 26, 2018, and the value of the Secured Creditors' claimed interest in their respective collateral was diminished as a result of such use, the Secured Creditors are granted valid, attached, choate, enforceable, perfected and continuing security interests in, and liens upon all post-petition assets of the Debtor of the same character and type (collectively, the "Post-Petition Collateral"), to the same extent and validity as the liens and encumbrances of the Secured Creditors on the Debtor's assets pre-petition. The Secured Creditors' claimed security interests in, and liens upon, the Post-Petition Collateral shall have the same validity as existed between the Secured Creditors, the Debtor and all other creditors or claimants against the Debtor's estate on the Petition Date. With respect to the post-petition liens and security interests granted by this Order, the Secured Creditors may, but need not, take such steps as are reasonably necessary to perfect the same, and all filed financing statements or other documents listing Debtor as borrower and each of the Secured Creditors as a secured party shall be deemed to have been filed and the post-petition liens and security interests granted herein shall be deemed to have been perfected on the Petition Date, subject to the provisions of paragraph O below.

  D. In addition to the adequate protection provided in the preceding paragraph and as a condition to using any Cash Collateral pursuant to this Order, the Debtor shall also:

    1. Immediately, but on or before the February 27, 2018 Interim Hearing, deliver to the trust account of its counsel, The Henderson Law Firm (the "Trust Account"), all revenue, other income and Cash Collateral arising from the NASCAR races in Daytona held February 15 – 18, 2018, other than the sum of $100,000 which the Debtor is permitted to deposit and retain in a segregated debtor in possession account (the "Cash Collateral Account") to use in accordance with the authority

granted by the Court at the February 23, 2018 Interim Hearing, with The Henderson Law Firm to (a) deliver evidence of its receipt thereof in accordance with paragraph L below and (b) retain such funds in the Trust Account pending further order of the Court or agreement of the Secured Creditors;

2. Employ a recognized payroll service, by March 12, 2018, that will process future payroll; and

3. Provide proof to the Internal Revenue Service that it has either paid the required pre-petition payroll taxes or that they are escrowed in a segregated bank account, with such proof to be served with the reports contemplated herein.

E. At the February 23, 2018 Interim Hearing, the Debtor requested authority to use Cash Collateral to pay (1) the Pre-Petition Wages, and (2) $60,000 of other expenses set forth on the Budget for the Monster Energy NASCAR Cup Series Race at the Atlanta Motor Speedway, including the Atlanta REP Payment and the Champion Payment. Subject to the provision of adequate protection set forth in the two preceding paragraphs, UBT consented to the Debtor's use of Cash Collateral only to pay the Pre-Petition Wages, the Atlanta REP Payment, and Champion Payment. The Debtor did not specify how the remaining funds from the $60,000 (after the Atlanta REP Payment and Champion Payment were paid) would be allocated among the other expenses set forth on the Budget, and UBT did not consent to the Debtor's use of those remaining funds (such remaining funds, collectively, the "Disputed Funds"). At the February 27, 2018 Interim Hearing, the Debtor and UBT advised the Court of their disagreement about whether the Court authorized at the February 23, 2018 Interim Hearing, over UBT's objection, the Debtor's use of the Disputed Funds, but the Debtor advised the Court at the February 27, 2018 Interim Hearing that it had spent the Disputed Funds. The Court will reserve ruling on the parties' disagreement about the Disputed Funds until later in this case and enters this Interim Order without prejudice to the claims, rights, and defenses that the Debtor, UBT and/or any other party in interest may have regarding the Debtor's use of the Disputed Funds, and such claims, rights and defenses are expressly reserved.

7

10651777

**February 27, 2018 Interim Hearing**

Based on the record and the arguments of counsel at the Interim Hearing on February 27, 2018 (including the acknowledgement by the Debtor that it had not transferred any funds to the Trust Account as ordered at the February 23, 2018 Interim Hearing),[2] **IT IS FURTHER ORDERED, ADJUDGED and DECREED that:**

F. Subject to the terms and conditions herein, the Debtor may use Cash Collateral during the period beginning February 27, 2018, and continuing through and including March 22, 2018, in the ordinary course of its business for the payment of those business expenses specifically described in the Budget not to exceed the limit for each week for each business expense category listed on the Budget, taking into account Cash Collateral used to make the Atlanta REP Payment and Champion Payment as authorized at the February 23, 2018 Interim Hearing; provided, that if Devine, or some other person or entity other than the Debtor, makes any such payment on the Debtor's behalf or makes a loan to the Debtor, without this Court's authority, to enable the Debtor to make such payment, the Debtor is not herein authorized to use Cash Collateral in connection with such payment or to use Cash Collateral to pay Devine, or such other person or entity, in connection with any such loan or such payment so made.

G. The Debtor shall deposit all cash collateral into the Cash Collateral Account and shall not use, sell, transfer or expend, directly or indirectly, any Cash Collateral, except as authorized in this Interim Order.

H. The Debtor's authority to use Cash Collateral in accordance with the terms and conditions set forth herein shall terminate on the earlier to occur of: (1) the Debtor's failure to comply with any of the terms and conditions set forth herein, and (2) at 11:59 p.m. on March 22,

---

[2] Notwithstanding the relief granted in this Interim Order, UBT reserves all of its arguments, rights and remedies with respect to the Debtor's failure to deposit funds into the Trust Account as ordered at the February 23, 2018 Interim Hearing.

8

10651777

2018, unless the Court authorizes the further use of Cash Collateral at the Continued Hearing on the Debtor's Motions or unless the Secured Creditors otherwise consent in writing. Even if authorization to use cash collateral terminates or expires, the adequate protection and liens provided in this Interim Order will continue to be effective unless or until otherwise modified by the Court.

    I.    As adequate protection for the Secured Creditors' claimed interests in Cash Collateral, to the extent the Debtor uses such Cash Collateral on and after February 23, 2018 (in accordance with the terms and conditions set forth herein), and the value of the Secured Creditors' claimed interest in their respective collateral is diminished as a result of such use, the Secured Creditors are granted valid, attached, choate, enforceable, perfected and continuing security interests in, and liens upon all the Post-Petition Collateral, to the same extent and validity as the liens and encumbrances of the Secured Creditors on the Debtor's assets pre-petition. The Secured Creditors' security interests in, and liens upon, the Post-Petition Collateral shall have the same validity as existed between the Secured Creditors, the Debtor and all other creditors or claimants against the Debtor's estate on the Petition Date. With respect to the post-petition liens and security interests granted by this Order, this Order is sufficient and conclusive evidence of the priority and validity of such security interests and liens, including replacement liens, upon the Post-Petition Collateral without the necessity of filing, recording, or serving any financing statements or other documents which may otherwise be required under federal or state law in any jurisdiction or the taking of any action to validate or perfect the security interests and liens granted to secured creditor, but the Secured Creditors may, but need not, take such steps as are reasonably necessary to perfect the same, and all filed financing statements or other documents listing Debtor as borrower and each of the Secured Creditors as a secured party shall

10651777

be deemed to have been filed and the post-petition liens and security interests granted herein shall be deemed to have been perfected on the Petition Date, subject to the provisions of paragraph O below.

J.      As additional adequate protection for the Secured Creditors' claimed interests in Cash Collateral, to the extent the Debtor uses such Cash Collateral on and after February 23, 2018 (in accordance with the terms and conditions set forth herein), each Secured Creditor is granted a super-priority claim under Bankruptcy Code § 507(b) to the extent the adequate protection granted in paragraphs C and I proves to be inadequate.

K.      In addition to the adequate protection provided above and as a condition to using any Cash Collateral pursuant to this Order, the Debtor shall also:

1. Deliver in accordance with paragraph L below:

    i. A detailed budget by week for each of the then-remaining weeks in the 2018 Monster Energy NASCAR Cup Series race season, to be delivered by 12:00 Noon prevailing Charlotte time on March 7, 2018;

    ii. A detailed weekly budget in form reasonably acceptable to UBT setting forth a line item for each category of income or revenue (*e.g.*, prize money, sponsorship and each other category of income) and for each category of expenses (*e.g.*, payroll, payroll-related taxes, other payroll-related expenses, driver payment, payments for the pit crew, engine lease, tire purchase, fuel for the race team operated by the Debtor, fuel for the haulers of the Debtor's equipment, rental of pit equipment, hotels, rental cars, airfare, per diem, meals, other travel-related expenses, advertising, competition entry fees, other NASCAR credential-related expenses, insurance, equipment rent, real property rent and any other expenses) to be delivered by 12:00 Noon prevailing Charlotte time each Wednesday for the week beginning at 12:00 a.m. on the immediately preceding Monday and ending at 11:59 p.m. the following Sunday (with the first such weekly budget to be delivered by 12:00 Noon prevailing Charlotte time on March 7, 2018);

    iii. A detailed report for the previous week in a form consistent with the weekly budget set forth above reflecting (i) actual income, revenues and expenses, (ii) budgeted income, revenues and expenses and (iii) the amount of variance for each category set forth thereon, to be delivered by 12:00 Noon prevailing Charlotte time each Wednesday (with the first such

10651777

report to be delivered by 12:00 Noon prevailing Charlotte time on March 14, 2018);

iv. A detailed cumulative report for the post-petition time period in a form consistent with the weekly budget set forth in paragraph K(1)(ii) above reflecting (i) actual income, revenues and expenses, (ii) budgeted income, revenues and expenses and (iii) the amount of variance for each category set forth thereon, to be delivered by 12:00 Noon prevailing Charlotte time each Wednesday (with the first such report to be delivered by 12:00 Noon prevailing Charlotte time on March 7, 2018);

v. A detailed weekly cash receipts report reflecting prize money, other NASCAR payments, sponsorship funds, other income by category, loan proceeds received by or paid on behalf of the Debtor and capital contributions to the Debtor, to be delivered by 12:00 Noon prevailing Charlotte time each Wednesday for the week beginning at 12:00 a.m. the immediately preceding Monday and ending at 11:59 p.m. the following Sunday (with the first such weekly report to be delivered by 12:00 Noon prevailing Charlotte time on March 7, 2018);

vi. A detailed weekly cash disbursements report reflecting all cash disbursed by or on behalf of the Debtor reflecting the different categories of expenses included in the weekly budget described in paragraph K(1)(ii) above, to be delivered by 12:00 Noon prevailing Charlotte time each Wednesday for the week beginning at 12:00 a.m. the immediately preceding Monday and ending at 11:59 p.m. the following Sunday (with the first such weekly report to be delivered by 12:00 Noon prevailing Charlotte time on March 7, 2018);

vii. A report (or print-out from the bank at which the Debtor has its debtor in possession accounts) showing all transactions with respect to such account(s), to be delivered by 12:00 Noon prevailing Charlotte time each Wednesday for the preceding week beginning at 12:00 a.m. the immediately preceding Monday and ending at 11:59 p.m. the following Sunday (with the first such report to be delivered by 12:00 Noon prevailing Charlotte time on March 7, 2018);

viii. A copy of each written sponsorship or partnership agreement between the Debtor and any of its sponsors or partners existing as of February 28, 2018, to be delivered by 12:00 Noon prevailing Charlotte time on March 7, 2018;

ix. If the Debtor does not have or has not entered into any written sponsorship or partnership agreement as described in paragraph K(1)(viii) above, a writing certified by an officer of the Debtor containing information relating to each sponsorship or partnership in sufficient detail to enable UBT to determine the name of the sponsor or partner, the consideration

11

received or to be received by the Debtor, the timing of such consideration and the term of such agreement and any documents or written communications evidencing such agreement, to be delivered by 12:00 Noon prevailing Charlotte time on March 7, 2018;

x. If the Debtor enters into any sponsorship or partnership agreement after February 28, 2018, a copy of each written sponsorship or partnership agreement or a writing more particularly set forth in paragraph K(1)(ix) above, to be delivered by 12:00 Noon prevailing Charlotte time on the third (3rd) business day after the date of such sponsorship or partnership agreement;

xi. A copy of the Debtor's actual historical financial information for 2017 at least as detailed in form and substance as the financial information provided by the Debtor to UBT for 2015 and 2016, certified by an officer of the Debtor, to be delivered by 12:00 Noon prevailing Charlotte time on March 12, 2018;

xii. A detailed income statement/profit and loss statement (on an accrual basis) for 2017 at least as detailed in form and substance as the financial information provided by the Debtor to UBT for 2015 and 2016, certified by an officer of the Debtor, to be delivered by 12:00 Noon prevailing Charlotte time on March 12, 2018;

xiii. A detailed balance sheet as of December 31, 2016 and December 31, 2017, at least as detailed in form and substance as the financial information provided by the Debtor to UBT for 2015, certified by an officer of the Debtor, to be delivered by 12:00 Noon prevailing Charlotte time on March 12, 2018;

xiv. A copy of its income tax returns for 2015, 2016, and 2017, if completed, to be delivered by 12:00 Noon prevailing Charlotte time on March 12, 2018;

2. Immediately, but in no event after 2:00 p.m. prevailing Charlotte time on March 8, 2018, deliver by wire or electronic funds transfer into the Trust Account no less than the sum of $358,000 constituting the cash received by the Debtor on February 23, 2018, arising from the NASCAR races in Daytona held February 15 – 18, 2018, with The Henderson Law Firm to (a) deliver evidence of its receipt thereof in accordance with paragraph L below and (b) retain such funds in the Trust Account pending further order of the Court or agreement of the Secured Creditors. To the extent some or all of these funds have been dissipated, the Debtor is ordered to turn over the remaining funds and provide an accounting of what was spent.[3]

---

[3] Following the hearings, the parties reached an impasse on the language of the proposed order. In relaying the disposition to the Court, it became apparent that the parties were not of the same

12

10651777

3. On or before 5:00 p.m. prevailing Charlotte time each Monday after entry of this Interim Order, deliver by wire or electronic funds transfer to the Trust Account all income and revenues received each preceding week, other than funds necessary to pay, when due, the expenses reflected on the Budget in accordance with the authority granted by the Court, and (a) deliver evidence of its receipt thereof in accordance with paragraph L below and (b) retain such funds in the Trust Account pending further order of the Court or agreement of the Secured Creditors; and

4. Allow UBT to conduct a physical inventory of all of the Debtor's "hard assets" (*e.g.*, the Debtor's race cars, haulers, tractors, race car components, equipment) at a mutually convenient time no later than March 19, 2018.

L.　The Debtor shall serve the reports and other documentation required in paragraphs D(3) and K(1) - (3) above by electronic mail on the following parties in interest: (1) the United States Bankruptcy Administrator for the Western District of North Carolina (the "Bankruptcy Administrator"), (2) Deborah Harris, Bankruptcy Specialist, IRS; (3) James Sullivan, Assistant U.S. Attorney, (4) David M. Schilli and Annemarie DiNardo Cleary, counsel for UBT, and (5) any other Secured Creditor requesting delivery thereof.

M.　This Interim Order is without prejudice to the rights of a Secured Creditor or other creditors to seek additional adequate protection or other relief available under the Bankruptcy Code or other applicable law or the applicable Loan Documents. Nothing contained herein shall be construed or interpreted as consent by any Secured Creditor to entry of a further interim or final order authorizing the use of Cash Collateral, and entry of this Interim Order is without prejudice to the rights of any Secured Creditor to challenge or otherwise contest entry of any subsequent order authorizing the use of Cash Collateral.

N.　This Interim Order is also entered without prejudice to: (a) the claims, rights, and defenses that the Debtor and/or any other party in interest may have to challenge the nature,

---

understanding of the terms of the undersigned's bench order. As a result, some of the cash received from the race in Daytona may have been spent without either the consent of UBT or prior authorization from the Court.

validity, priority or extent of the claim and/or liens asserted by a Secured Creditor; and (b) any and all claims, rights, and defenses a Secured Creditor may assert in any action to challenge the nature, validity, priority or extent of the liens it may assert.

O.      The automatic stay of Bankruptcy Code § 362(a) is hereby modified, terminated, and vacated as to each Secured Creditor to the extent necessary and appropriate to effectuate the provisions of this Order, including, without limitation, to allow each Secured Creditor in its discretion to evidence and perfect its security interest in and lien upon the Post-Petition Collateral (although it is specifically agreed that no filing or recordation is necessary in order for each Secured Creditor to have a duly perfected security interest in and lien upon the Post-Petition Collateral).

P.      Except as expressly modified herein, all terms, conditions and covenants of the Loan Documents shall remain in full force and effect, and nothing herein shall constitute a waiver or forgiveness by UBT of existing defaults by the Debtor under the terms of the Loan Documents.

Q.      This Order does not necessarily constitute adequate protection of the Secured Creditors' purported interest in the Cash Collateral, and the Secured Creditors expressly reserve their respective rights under Bankruptcy Code §§ 361, 362, and 363.

R.      Other than as set forth in paragraphs B and F above, the Court will enter a separate Order determining the remainder of the REP Motion.

S.      Pursuant to Rule 4001(b) of the Federal Rules of Bankruptcy Procedure, a final hearing on the use of Cash Collateral, and a continued hearing on the Champion Motion, shall be held on March 22, 2018, at 2:00 p.m. (the "<u>Continued Hearing</u>"), in Courtroom 1-4 of the United States Bankruptcy Court, Charles R. Jonas Federal Building, 401 West Trade Street, Charlotte,

14

10651777

North Carolina 28202; <u>provided</u>, <u>however</u>, a party may request an expedited hearing before the Continued Hearing to pursue its remedies and seek relief based on the Debtor's failure to comply with the terms and conditions of this Order.

      T.     The Debtor is directed to serve a copy of this Order upon: (a) the Bankruptcy Administrator, (b) the Debtor's twenty (20) largest unsecured creditors, (c) the Secured Creditors, and (d) those parties requesting notice pursuant to Bankruptcy Rule 2002 immediately after its entry and shall file a certificate of service specifying the manner and method of service.

This Order has been signed electronically.  The     United States Bankruptcy Court
judge's signature and court's seal appear at the top of
the Order.

10651777