**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Charlotte Division**

| | |
|---|---|
| In re: | Case Number:  18-30241 |
| **BK Racing, LLC**, | Chapter 11 |
| Debtor. | |

**TRUSTEE'S AMENDED MOTION FOR ORDER (I) APPROVING BIDDING AND SALE PROCEDURES IN CONNECTION WITH THE SALE OF CHARTER AND RELATED ASSETS, (II) APPROVING AGREEMENT WITH STALKING HORSE BIDDER, (III) SCHEDULING COMPETITIVE SALE AND SALE APPROVAL HEARING, AND (IV) APPROVING SALE FREE AND CLEAR OF LIENS TO GOOD FAITH PURCHASER**

Matthew W. Smith, the duly-appointed chapter 11 trustee ("Trustee") for BK Racing, LLC (the "Debtor"), through counsel, hereby files this *Trustee's Amended Motion for Order (I) Approving Bidding and Sale Procedures in Connection with the Sale of Charter and Related Assets, (II) Approving Agreement with Stalking Horse Bidder, (III) Scheduling Competitive Sale and Sale Approval Hearing, and (IV) Approving Sale Free and Clear of Liens to Good Faith Purchaser* (this "Motion") and respectfully shows the Court the following in support:

## I.  JURISDICTION AND PROCEDURAL BACKGROUND

### A.  PROCEDURAL BACKGROUND

1. On February 15, 2018 (the "Petition Date"), the Debtor filed for relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Code"), initiating the above-referenced bankruptcy case (this "Case").

2. The Court appointed the Trustee as the Debtor's chapter 11 trustee pursuant to a written Order entered on March 30, 2018 (D.E. 87).

**B.      JURISDICTION**

3.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M), and (O).  Venue properly lies in this judicial district pursuant to 28 U.S.C. § 1409(a).  The statutory predicate for the relief requested herein is § 363 of the Code.

**II.      FACTUAL BACKGROUND**

**A.      THE DEBTOR'S OPERATIONS AND ASSETS**

4.      The Debtor is in the business of operating a NASCAR-chartered, Monster Energy cup series ("Cup Series") race team.

5.      The Debtor's right and license to participate in NASCAR-chartered events is authorized and otherwise governed by that certain *NASCAR Cup Series Charter Member Agreement* entered into by and between NASCAR Event Management, Inc. and related entities (collectively, "NASCAR"), Ronald C. Devine (as the "Control Person")[1] ("Devine"), and the Debtor (as the "Team Owner"), which is assigned charter member agreement number 32 (the "Charter").

6.      The Charter generally requires the Debtor to conduct a first-class operation of a stock car racing team and to otherwise participate in the Cup Series.

7.      In order to meet these Charter obligations and others, the Debtor owns substantial tangible assets, including those certain titled motor vehicles and those certain items of equipment and other fixed assets identified on Schedule B.47.1 (the "Titled Vehicles") and Schedule B.50 (the "Tangible Assets") attached to the Debtor's Schedule A/B filed in this Case (D.E. 122 at 12–36), respectively (the "Tangible Assets").

---

[1]      The Charter further identifies Ryan DuBois as the "Substitute Control Person" and "Designated Team Representative."  On April 12, 2018, the Trustee sent written notice to NASCAR to designate the Trustee as the Debtor's "Designated Team Representative" and "Control Person."

8.      In addition to the foregoing, the Debtor owns certain items of equipment and other assets subject to liens in favor of Champion Tire & Wheel, Inc., including two pit boxes, one tire buggy, one cook cart, the Debtor's tire inventory, and the Debtor's wheel inventory (the "Champion Assets").

9.      The Debtor's property interests further include, without limitation, various rights to payment, causes of action, and intellectual property rights.

## B.      THE DEBTOR'S LIABILITIES

10.     Union Bank & Trust ("UBT") filed two proofs of claim in this Case (claim numbers 8 and 9), asserting claims totaling $9,475,708.52 that UBT alleges are secured by substantially all of the Debtor's assets, including, without limitation, the Charter and the Tangible Assets.

11.     Additional allegedly secured claims have been filed in this Case by the Internal Revenue Service (the "IRS") (claim numbers 2, 12, and 15) and Ron Ingalls (claim number 31).

12.     Furthermore, Virginia Racers Group, LLC—which, on information and belief, is an entity owned and operated by Devine and is otherwise a Debtor "insider" within the meaning of the Code—filed a UCC Financing Statement naming the Debtor as "DEBTOR" on December 19, 2016.

## C.      MARKETING EFFORTS

13.     From the time of the Trustee's appointment until approximately mid- to late-May, the Trustee was primarily focused on operating the race team, as well as on investigating, familiarizing himself with, and stabilizing the Debtor's financial affairs and operations. Notwithstanding, during that transition period, the Trustee had several communications with various parties interested in purchasing the Debtor's Charter and other assets.

3

14.    In recent weeks, the Trustee has more actively marketed the Debtor's Charter and ~~Tangible~~ substantially all remaining a~~A~~ssets (the "Race Team Assets") for sale as a going concern in an effort to maximize value for all creditors.

15.    The Trustee has communicated with more than twenty-five (25) separate parties interested in acquiring the ~~Charter and Tangible~~Race Team Assets.

16.    During a hearing before the Court in this Case on June 12, 2018, counsel for the Trustee announced that the Trustee was actively marketing the ~~Debtor's Charter and Tangible~~Race Team Assets for sale as a going concern.  Within a matter of hours, ESPN and Yahoo! Sports reported such announcement to the general public.[2]

17.    Given the media attention received by this Case, coupled with the fact that the Cup Series is an extremely close-knit industry, the Trustee believes that the vast majority of the universe of likely bidders in this Case have already surfaced and made their intentions known to the Trustee.

18.    The Trustee is informed and believes that transactions regarding the transfer of race teams most commonly are reached in September of any given year, and that he would maximize the value for the estate by conducting a sale in this Case prior to September.

### D.    STALKING HORSE BID

~~19.    The Trustee has narrowed down the pool of 25+ possible purchasers to a handful of bidders who could potentially act as the Stalking Horse for this sale (the "Stalking Horse").~~

~~20.    At the time of filing this Motion, the Trustee has not selected which of these possible purchasers will act as the Stalking Horse.  In fact, within the past couple weeks, new~~

---

[2]    See articles posted at https://sports.yahoo.com/bk-racing-sold-satisfy-creditors-145008734.html and http://www.espn.com/espn/now?nowId=1-23769873.

~~parties who could potentially serve as the Stalking Horse have come forward to express interest and make bids, and the Trustee is in the process of evaluating these bids.~~

~~21.   Although the Stalking Horse has not been selected, the Trustee believes this Motion should be filed immediately to start the sale process early enough to take advantage of better market conditions for selling race teams (*i.e.*, prior to September).~~

~~22.~~19.   The Trustee has received a Stalking Horse bid from MBR LLC (the "Stalking Horse"), a copy of which is attached to this Motion as Exhibit A (the "Stalking Horse Bid")~~The Trustee contemplates that, next week, the Stalking Horse and the Trustee will execute an *Asset Purchase Agreement*, which the Trustee will annex to this Motion as Exhibit A at that time (the "Stalking Horse Bid").~~

~~23.~~20.   The Stalking Horse Bid generally provides as follows~~At a minimum, the Stalking Horse Bid will provide as follows~~:

   (a)   the initial purchase price for ~~Stalking Horse shall close on the purchase of~~ the ~~Charter and certain of the Tangible Assets (collectively, the "~~Race Team Assets~~")~~ shall be $1,800,000.00 (the "Initial Bid Price") with no financing contingencies;

   ~~(a)~~(b)   if the Stalking Horse is the winning bid at the competitive sale or if no qualified bids are received, then the Stalking Horse shall close on the purchase of the Race Team Assets as soon as possible after entry of an order approving the sale, but not later than three (3) business ~~ten (10)~~ days~~,~~ after such~~entry of an~~ order has become a final order~~approving the sale, unless such order has been stayed pending appeal~~ (the "Closing");

   (c)   the Stalking Horse shall offer employment to all of the Debtor's current employees ~~make every effort to hire all employees working for the Debtor~~ at the time of Closing and shall pay a retention bonus of up to $2,000 per employee (not to exceed $50,000 in the aggregate) to each employee who remains employed through the completion of the 2018 Cup Series season, and $350,000 of the Purchase Price shall be designated for payment of priority wage claims~~, but shall not be contractually obligated to do so~~;

   (d)   after the Closing, the Stalking Horse shall reimburse the Debtor for any revenue actually received by the Stalking Horse resulting from any

sponsorship agreement that is (i) developed and otherwise secured by the Trustee and (ii) consented to by the Stalking Horse;

(e)   if the Stalking Horse is not the winning bidder at the competitive sale, then the Trustee shall pay the Stalking Horse a break-up fee in the amount of $100,000.00 (the "Break-Up Fee") contemporaneously with the closing;

(b)(f)      any Qualified Bid (defined below) must propose a purchase price that exceeds the Initial Bid Price by at least $300,000.00; and

(c)(g)      the Stalking Horse shall make a good faith deposit in an amount equal to ten percent (10%) of the Initial Bid Price~~total consideration to be paid by the Stalking Horse at Closing~~.

~~24.~~21.   The Stalking Horse is neither ~~None of the potential stalking horse bidders is~~ an "insider" of the Debtor within the meaning of § 101(31) of the Code nor otherwise affiliated or related to the Debtor.

~~25.~~22.   The Trustee believes that the Stalking Horse Bid will compel potential purchasers to come forward and otherwise generate additional interest in the Race Team Assets reasonably likely to facilitate an effective competitive sale of such assets.  The Stalking Horse Bid promotes competitive bidding and establishes a reasonable floor for the competitive sale of the Race Team Assets, which thereby substantially increases the likelihood that the ultimate sale price will reflect the true value of those assets.

## E.      BIDDING AND SALE PROCEDURES

26.23.  In order to obtain the highest and otherwise best bid for the Race Team Assets

and to facilitate an orderly and effective competitive sale, the Trustee proposes the following

bidding and sale procedures (the "Bidding and Sale Procedures").[3]

(a)  The Trustee shall have a marketing period following entry of an order
     approving this Motion and ending on August 13, 2018 (the "Bid
     Deadline") to solicit additional offers for the Race Team Assets.

(b)  Any person(s) or entity(ies) wishing to participate in the Competitive Sale
     (defined below) process shall deliver as soon as reasonably possible a
     properly and validly executed *Confidentiality and Non-Disclosure
     Agreement* in the form attached as Exhibit B (an "NDA") to:  Matthew W.
     Smith, BK Racing Trustee, 212 S. Tryon St., Ste. 1050, Charlotte, NC
     28202, matt@finleygroup.com.

(c)  Immediately upon receipt of an NDA, the Trustee shall endeavor to
     determine whether an interested purchaser qualifies to participate in the
     Competitive Sale (a "Qualified Bidder").   The Trustee shall retain
     complete discretion to determine whether an interested person or entity is
     a Qualified Bidder.  At a minimum, a Qualified Bidder will have the
     following characteristics:

     (i)    the financial wherewithal to consummate the proposed
            transaction, including the willingness to provide detailed
            financial information to the Trustee to verify such financial
            wherewithal; and

     (ii)   the ability to qualify as a "NASCAR-Approved Bidder"
            (defined below).

(d)  Once the Trustee is satisfied that an interested purchaser otherwise
     qualifies as a Qualified Bidder, the Trustee shall provide information to,
     and otherwise confer with, NASCAR to determine whether the interested
     purchaser has the ability to satisfy (i) all of the "Team Owner" duties and
     obligations and any other requirements of the Charter and (ii) any and all
     ownership structure requirements, affiliation limitations, and other
     NASCAR-implemented rules relating to qualified team owners appearing
     in the NASCAR Rule Book or otherwise (a "NASCAR-Approved

---

[3]        The Trustee contemplates filing a motion pursuant to § 365 of the Code seeking to assume any executory
contract(s) that the winning bidder wishes to undertake in connection with its purchase, together with proposed cure
amounts for any such contracts.  The Trustee further contemplates that the aforementioned § 365 motion would also
set forth certain procedures for resolving disputes as to the proper cure amount(s) that will be deemed part of the
Bidding and Sale Procedures.

Bidder").  NASCAR shall retain complete discretion to determine whether an interested person or entity is a NASCAR-Approved Bidder.  In the event an otherwise Qualified Bidder becomes a "Prohibited Person" within the meaning of the Charter or otherwise loses the bidder's status as a NASCAR-Approved Bidder at any time during this process, then such bidder shall immediately cease being a Qualified Bidder and shall be disqualified from participating in the Competitive Sale.

(e)   The Trustee shall endeavor to notify any person or entity who has delivered an NDA regarding whether or not the person or entity has been approved as a Qualified Bidder within one (1) business day following the date upon which both the Trustee and NASCAR have approved such person or entity as a Qualified Bidder and NASCAR-Approved Bidder, respectively.

(f)   If a Qualified Bid (defined below) is received on or before the Bid Deadline, then the Trustee shall conduct a competitive sale of the Race Team Assets (the "Competitive Sale") pursuant to these Bidding and Sale Procedures on Monday, August 20, 2018, at 9:30 A.M. in the offices of Grier Furr & Crisp, PA located at 101 North Tryon Street, Suite 1240, Charlotte, North Carolina, or in such other location as the Trustee designates upon advance written notice to holders of Qualified Bids (the "Sale Location").

(g)   In order to attend the Competitive Sale, a Qualified Bidder must deliver, on or before the Bid Deadline, (i) an executed *Asset Purchase Agreement* in a form substantially similar to that appearing as attached Exhibit C (an "APA") and (ii) either a version of the executed APA marked to show the changes against the APA attached as Exhibit C or an electronic version in Word of the executed APA to:  Matthew W. Smith, BK Racing Trustee, 212 S. Tryon St., Ste. 1050, Charlotte, NC 28202, matt@finleygroup.com.

(h)   The Trustee shall retain complete discretion to determine whether any APA submitted qualifies ~~as~~ a Qualified Bidder to participate in the Competitive Sale (a "Qualified Bid").  At a minimum, a Qualified Bid must have the following characteristics, unless otherwise ordered by the Court:

(i)   is timely submitted on or before the Bid Deadline;

(ii)   proposes a purchase price that exceeds the total consideration to be paid by the Stalking Horse at Closing by at least $~~50,000.00~~300,000.00;

(iii)   makes adequate representations and warranties regarding the Qualified Bidder's affiliation or relationship with the Debtor, any insider(s) of the Debtor, or any creditor(s) of the Debtor;

(iv)       requires the Qualified Bidder to make a good faith deposit in an amount equal to ten percent (10%) of the total consideration to be paid for the assets to be purchased by the Qualified Bidder;

(v)       warrants that it is not subject to any additional due diligence, any financing contingency(ies), or any further board or similar corporate approval;

(vi)       provides that it is irrevocable by the Qualified Bidder until three (3) days after a Court order approving a sale of the assets pursuant to which the Qualified Bidder does not hold the "Winning Bid" or "Back-Up Bid" (each defined below);

(vii)       commits to a closing on the purchase as soon as possible after entry of an order approving the sale, but not later than three (3) business days after such order has become a final order (the "Closing") within ten (10) days of entry of an order approving the sale, unless such order has been stayed pending appeal;

(viii)       agrees acknowledges that the sale is "as-is, where-is" with no warranties express or implied by the Trustee, other than a warranty that the Trustee has done nothing to impair title and will defend title against the lawful claims of all persons claiming by, under, or through the Trustee; and

(ix)       represents and warrants to the Trustee that the Qualified Bidder (A) has relied solely upon the Qualified Bidder's own independent review, investigation, and/or inspection of the assets in making the bid and (B) did not rely upon any written or oral statements, representations, promises, warranties, or guarantees whatsoever, whether express, implied, by operation of law or otherwise, by the Trustee regarding the assets:

(x)       includes no breakup fee, expense reimbursement, or similar payment obligation burdening the Trustee;

(xi)       must be on substantially similar terms as, or better terms than, the APA and must provide for the purchase of all of the Race Team Assets; and

(ix)(xii)       must allocate the proposed purchase price among the Charter, Tangible Assets, Titled Vehicles, and Champion Assets.

(i)    The Stalking Horse Bid is automatically deemed to be a Qualified Bid presented by a Qualified Bidder, and the Stalking Horse shall be entitled to credit bid the Breakup Fee at the Competitive Sale.

(j)    All due diligence shall be completed prior to the Bid Deadline, such that all bids at the Competitive Sale will be free of all contingencies other than the Court's approval of the sale free and clear of liens, with any liens transferring to the sale proceeds.  Subject to execution of the NDA, the Trustee shall provide potential bidders with any and all documents requested prior to the Bid Deadline that are in the Trustee's possession or are readily available to the Trustee.  The Trustee shall not be obligated to furnish access to any information of any kind whatsoever regarding the Race Team Assets after the Bid Deadline.

(k)    After a Qualified Bidder submits an APA, the Trustee may, in the Trustee's complete discretion, communicate with the Qualified Bidder and request any additional information deemed necessary to evaluate whether the bid should be accepted as a Qualified Bid.

(l)    The Trustee will send, on or before August 16, 2018, a written Competitive Sale invitation to all Qualified Bidders who have submitted a Qualified Bid.  The Trustee shall disclose all Qualified Bids to the Stalking Horse.

(m)    If no Qualified Bids other than the Stalking Horse Bid are received, then the Trustee will seek Court approval of the sale to the Stalking Horse pursuant to § 363 of the Code at a hearing prior to August 21, 2018, subject to the Court's availability.

(n)    If any additional Qualified Bids are received, then the Trustee shall conduct the Competitive Sale on August 20, 2018 at the Sale Location.

(o)    Except as otherwise provided herein, only Qualified Bidders submitting Qualified Bids and the Stalking Horse are eligible to participate in and attend the Competitive Sale.  All Qualified Bidders wishing to bid at the Competitive Sale shall appear and participate at the Competitive Sale— either in person or telephonically—through a duly authorized representative.  On or before August 17, 2018, all holders of Qualified Bids shall notify the Trustee in writing of the name and relationship to the Qualified Bidder of any representative who will appear at the Competitive Sale on the Qualified Bidder's behalf and a certification that the identified representative(s) will have the full authority to bid at the Competitive Sale on behalf of the Qualified Bidder, *provided, however*, that the Trustee will have the ability to exclude any identified representative that the Trustee reasonably believes would be disruptive to the Competitive Sale process.

(p) Other than Qualified Bidders and their representatives, the only parties permitted to attend the Competitive Sale are UBT and UBT's counsel, NASCAR and NASCAR's counsel, the IRS and the IRS's counsel, and the Trustee and the Trustee's counsel.

(q) Prior to the Competitive Sale, the Trustee shall, after consulting with UBT and the IRS, select the Qualified Bid that, in the Trustee's complete discretion, reflects the highest or otherwise best value for the Race Team Assets as the Competitive Sale's opening bid. The Trustee shall then commence the Competitive Sale by announcing the opening bid. Thereafter, Competitive Sale participants may submit bids that are higher and better than a prior bid in increments of at least $50,000.00 until the Trustee selects a successful bid; *provided, however*, that the Trustee shall retain complete discretion to adjust the overbid increments upward or downward during the Competitive Sale.

(r) The Trustee may adjourn the Competitive Sale and/or adopt supplemental Competitive Sale rules or procedures in order to facilitate a more effective Competitive Sale.

(s) After consultation with UBT and the IRS, the Trustee shall select the successful bid (the "Winning Bid") and a back-up bid (the "Back-Up Bid") during the Competitive Sale and conclude the Competitive Sale by announcing the Winning Bid, and the holder thereof (the "Winning Bidder"), and a Back-Up Bid, and the holder thereof (the "Back-Up Bidder").

(t) Subject to the Court's availability, the Court will conduct a hearing to consider whether to approve the sale pursuant to § 363 of the Code on Tuesday, August 21, 2018, at 9:30 A.M. in Bankruptcy Courtroom 1-4 in the United States Courthouse, 401 West Trade Street, Charlotte, North Carolina, unless the Competitive Sale has been adjourned to a later date and time. Any objections to the sale of the Race Team Assets other than any objection based on the Winning Bid amount or based on any other conduct of the Competitive Sale shall be filed with the Court on or before August 13, 2018.

(u) If the Court approves a sale based on the Winning Bid, then the holder of the Winning Bidder shall close on the purchase no later than three (3) business days following the sale order becoming a final, non-appealable order, with the understanding that the Winning Bidder and the Trustee shall make all reasonable efforts, but not be required, to consummate the sale on or before the tenth (10th) day following within ten (10) days of entry of an order approving the sale, unless such order has been stayed pending appeal. If the holder of the Winning Bidder fails to consummate the purchase, then the holder of the Back-Up Bidder shall close on the purchase within no later than twenty (20) days of after entry of an order

11

approving the sale~~, unless such order has been stayed pending appeal~~ becoming a final, non-appealable order.

(u)(v)    Whichever of the Winning Bidder and Back-Up Bidder actually completes the purchase of the Race Team Assets shall have sixty (60) days following the Closing to notify the Trustee of any executory contracts such purchaser wishes to assume in connection with the purchase, and the Trustee shall take all actions reasonably necessary to assume and assign said contracts pursuant to § 365 of the Code.

~~27.~~24.  The Trustee expressly reserves the right to determine whether any bid is a Qualified Bid and whether any Qualified Bid is the Winning Bid or a Back-Up Bid.  The Trustee expressly reserves the right to seek all available damages from the ~~holder of the~~ Winning Bidder or the ~~holder of the~~ Back-Up Bidder if such bidder wrongfully fails to consummate the purchase pursuant to these Bidding and Sale Procedures, except as otherwise agreed by the Trustee.

25.     The Trustee proposes to transfer assets free and clear of all liens, with any liens transferring to the sale proceeds, pursuant to § 363(f) of the Code, to the same extent, validity, and priority as existing as of the date of the sale pending further order of the Court.  The Trustee has conferred with UBT and the IRS and believes that neither UBT nor the IRS has any objection to these Bidding and Sale Procedures, including, without limitation, the proposal to transfer the assets free and clear of all liens; *provided, however*, that any liens transfer to the sale proceeds, to the same extent, validity, and priority as existing as of the date of the sale pending further order of the Court.

**F.     ASSUMPTION AND ASSIGNMENT OF CHARTER**

26.     As an integral part of the sale contemplated in this Motion, the Trustee seeks to assume the Charter pursuant to § 365 of the Code and assign the Charter to the Winning Bidder or Back-Up Bidder.  As far as the Trustee is aware, the Debtor is not in default of the Charter, and there is no cure payment that NASCAR is requiring in order for the Trustee to assume and assign the Charter.

28.27.  The Trustee proposes to establish a deadline of August 13, 2018 for any objections to the Trustee's assumption of the Charter pursuant to § 365.  This deadline shall be without prejudice to NASCAR's ability to challenge—at any time—any portion of sale contemplated in this Motion for failing to comply with the Charter, the Cup Series Rule Book, or any other documents related to the Charter, Cup Series, or relationship between NASCAR and the Debtor.

### FG.    PROPOSED NOTICE PROCEDURE

29.28.  Upon entry of an order approving this Motion, the Trustee proposes to serve notice of the Bidding and Sale Procedures in the form appearing as Exhibit D, attached hereto and incorporated herein by reference (the "Sale Notice"), as follows:

(a)    upon the Bankruptcy Administrator and those parties requesting notice via ECF pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") via ECF;

(b)    upon the creditor mailing matrix in this Case via U.S. mail, postage prepaid;

(c)    upon any party interested in purchasing the assets for whom the Trustee has a valid electronic mail address by electronic mail only.

30.29.  In addition to the foregoing, the Trustee is serving a copy of this Motion on the Stalking Horse.

### III.    RELIEF REQUESTED

31.30.  Through this Motion, the Trustee seeks entry of an order by the Court: (a) approving the Stalking Horse Bid; (b) approving the Bidding and Sale Procedures; (c) approving the form and manner of the Sale Notice; (d) authorizing the Trustee to engage in any and all conduct necessary or appropriate to carry out the Bidding and Sale Procedures; (e) scheduling the Competitive Sale for 9:30 A.M. on August 20, 2018 at the Sale Location; (f) scheduling the sale approvala hearing to hear any objections to the sale proposed herein or to

determine if the sale should be approved for August 21, 2018 at 9:30 A.M. (or such other date or time amenable to the Court), whereby the Court will consider whether to authorize the sale of the Race Team Assets free and clear of all liens, with any liens transferring to the proceeds of the sale to the same extent, validity, and priority as existing as of the date of the sale pending further order of the Court; and (g) authorizing the Trustee to sell the Race Team Assets free and clear of all liens, with any liens transferring to the proceeds of the sale to the same extent, validity, and priority as existing as of the date of the sale pending further order of the Court; (h) authorizing the Trustee to assume the Charter; (i) establishing the amount of the cure payment due NASCAR for assumption of the Charter to be $0.00 or some other appropriate amount; (j) establishing August 13, 2018 as the deadline to object the proposed assumption of the Charter and/or cure amount; and (k) authorizing the Trustee to pay any required cure payment to NASCAR.

## IV.     BASIS FOR RELIEF REQUESTED

32.31.  Section 363(b) of the Code provides that a trustee, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Bankruptcy Rule 2002 requires twenty-one (21) days' notice for a motion to sell property other than in the ordinary course of business and that such a notice "include the time and place of any public sale, the terms and conditions of any private sale and the time fixed for filing objections."  FED. R. BANKR. P. 2002(a)(2) & (c)(1).

33.32.  Section 363(f) of the Code provides that a sale pursuant to § 363(b) may be accomplished free and clear of any interest in the subject property an entity if, *inter alia*, (a) such entity consents, (b) such interest is in bona fide dispute, or (c) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.  11 U.S.C. § 363(f)(2), (4), & (5).

34.33.  Section 363(m) of the Code provides that the "reversal or modification on appeal of an authorization under subsection (b) . . . does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal."  11 U.S.C. § 363(m).

35.34.  Bankruptcy Rule 6004(f)(1) authorizes sales of property of the bankruptcy estate outside of the ordinary course of business to be by private sale or by public auction.  FED. R. BANKR. P. 6004(f)(1).

36.35.  Courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore are appropriate in the context of bankruptcy sales.  *See, e.g.*, *In re Financial News Network, Inc.*, 126 B.R. 152, 156 (S.D.N.Y. 1991) (recognizing that "considerable authority" exists in favor of invoking "court-imposed rules for the disposition of assets . . . to provide an adequate basis for comparison of offers, and to provide for a fair and efficient resolution of bankrupt estates").

37.36.  Pursuant to § 365 of the Code, a trustee may, subject to court approval, assume or reject an executory contract or unexpired lease.  *See* 11 U.S.C. § 365(a).  However, a trustee may not assume an executory contract or unexpired lease after default without curing said default.  *See* 11 U.S.C. § 365(b).  The decision as to whether to assume or reject an executory contract or unexpired lease is a matter that falls within the trustee's business judgment.  *See Nat'l Labor Relations Board v. Bildisco (In re Bildisco)*, 682 F.2d 72, 79 (3d Cir. 1982) (*aff'd, Nat'l Labor Relations Board v. Bildisco and Bildisco*, 465 U.S. 513 (1984)).  Pursuant the business judgment standard, the court shall approve a trustee's business decision unless the decision is the product

of bad faith or gross abuse of discretion.  *See Lubrizol Enters. Inc. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043 (4th Cir. 1985) (cert. denied, 475 U.S. 1057 (1986)).

## V.    ARGUMENT

37.    In the opinion of the Trustee, the terms appearing in the Stalking Horse Bid, including the proposed Bbreak-up fFee of $100,000.00 and $300,000.00 initial overbid amount (inclusive of the Breakup Fee), form a reasonable basis upon which to construct an efficient process to sell the Race Team Assets.

38.    In particular, the proposed break-up fee provides the assurance that, in the event the Stalking Horse Bid is outbid at an auction, it will be able to recover the out-of-pocket costs which it incurs in its due diligence investigation.

38.39.    In chapter 11 cases, the use of stalking horses and break-up fees encourages broad participation in a bankruptcy sale while recognizing the risks inherent in participating in such a sale.

39.40.    The Trustee has determined that the sale of the Race Team Assets pursuant to the Bidding and Sale Procedures and otherwise in accordance with this Motion will ensure a fair and reasonable process that is likely to yield the maximum value for the Race Team Assets.

40.    In addition, through this Motion, the Trustee is not necessarily seeking to sell all of the Tangible Assets, although Qualified Bidders are encouraged to submit a bid as to all of the Tangible Assets.  Any Tangible Assets not sold through this Motion will be sold pursuant to a separate, future motion filed with the Court.

41.    Although the Bidding and Sale Procedures reflect a relatively expedited sale process, there are several reasons to get to closing on the sale of the Race Team Assets on the timetable described in this Motion, including, without limitation:  industry norms of closing on like deals in the Fall and the resulting increased pool of potential purchasers if the competitive sale process is conducted in late summer; the Debtor's particularly tight cash position; and

uncertainty among the Debtor's employees and other parties with whom the Debtor transacts business.

42.     Although the open marketing period proposed in the Bidding and Sale Procedures is somewhat abbreviated, the Trustee believes that the period of time proposed herein is more than sufficient, considering (a) Trustee's marketing efforts to date, (b) the media attention received by this Case, including articles specifically about the Trustee's sale efforts, (c) the close-knit industry within which word travels fast, and (d) that more than 25 interested parties have already contacted the Trustee expressing interest in the Race Team Assets.

43.     For these and other reasons, the Trustee believes that the expedited Bidding and Sale Procedures will allow the Trustee to maximize the realizable value of the Race Team Assets for the benefit of the Debtor's bankruptcy estate.  Throughout the process, the Trustee will continue to engage with interested parties and attempt to attract additional interested parties that could meaningfully participate in the Competitive Sale.

44.     The Trustee submits that the form and manner of the Sale Notice fully comply with Bankruptcy Rule 2002 and are otherwise reasonably calculated to provide timely and adequate notice of the proposed sale of the Race Team Assets to the Debtor's creditors and all other parties-in-interest that are entitled to notice in this case, as well as to parties known to the Trustee to be interested in purchasing the Race Team Assets.

45.     To the best of the Trustee's knowledge, each of the potential stalking horse bidders is:  (a) not an "insider" of the Debtor or the Trustee within the meaning of § 101(31) of the Code or otherwise affiliated or related to the Debtor or the Trustee; and (b) otherwise qualifies as a buyer in good faith under § 363(m) of the Code and, as such, is entitled to the protections afforded thereby.

45.46.  In the business judgment of the Trustee, the cure and assumption of the Charter is in the best interests of the Debtor's creditors and other parties in interest in this Case.  Therefore, immediate entry of an order authorizing the Trustee to cure any default and assume the Charter is both appropriate and necessary in this Case.

**WHEREFORE**, the Trustee prays that the Court will enter an Order:

1)    Granting this Motion;

2)    Approving the Stalking Horse Bid, including the $100,000.00 Bbreak-up Ffee included in the Stalking Horse Bid;

3)    Approving the Bidding and Sale Procedures;

4)    Approving the form and manner of the Sale Notice;

5)    Authorizing the Trustee to engage in any and all conduct necessary or appropriate to carry out the Bidding and Sale Procedures;

6)    Scheduling the Competitive Sale for 9:30 A.M. on August 20, 2018 at the Sale Location;

7)    Scheduling the sale approval a hearing on any objections to the proposed sale or to determine if the sale should be approved for August 21, 2018 at 9:30 A.M. or such other date or time amenable to the Court, whereby the Court will consider whether to authorize the sale of the Race Team Assets free and clear of all liens, with any liens transferring to the proceeds of the sale to the same extent, validity, and priority as existing as of the date of the sale pending further order of the Court;

8)    Authorizing the Trustee to sell the Race Team Assets free and clear of all liens, with any liens transferring to the proceeds of the sale to the same extent, validity, and priority as existing as of the date of the sale pending further order of the Court;

9)    Finding that the holder of the Winning Bid and Back-Up Bid to be a good faith purchaser within the meaning of § 363(m) of the Code and granting such holders all of the protections provided thereby;

10)    Authorizing the Trustee to assume the Charter;

11)    Establishing the amount of the cure payment due NASCAR for assumption of the Charter to be $0.00 or some other appropriate amount;

12)     Establishing August 13, 2018 as the deadline to object the proposed assumption of the Charter and/or cure amount;

9)13)   Authorizing the Trustee to pay any required cure payment to NASCAR; and

10)14)  Granting such other relief as is just and proper.

This is the ~~13th~~ 20th day of July, 2018.

 */s/ Michael L. Martinez*
A. Cotten Wright (N.C. Bar No 28162)
Michael L. Martinez (N.C. Bar No. 39885)
Grier Furr & Crisp, PA
101 North Tryon Street, Suite 1240
Charlotte, NC 28246
Phone:  704/375.3720; Fax:  704/332.0215
Email:  mmartinez@grierlaw.com

*Attorneys for Matthew W. Smith, Trustee*

## **EXHIBIT A**

[THE STALKING HORSE BID]

## **EXHIBIT B**

[THE NDA]

## EXHIBIT C

[THE FORM APA]

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### Charlotte Division

In re:

**BK Racing, LLC**,

                        Debtor.

Case Number:  18-30241

Chapter 11

### SALE NOTICE

On July ▉, 2018, the U.S. Bankruptcy Court for the Western District of North Carolina (the "Court") granted the *Trustee's Amended Motion for Order (I) Approving Bidding and Sale Procedures in Connection with the Sale of Charter and Related Assets, (II) Approving Agreement with Stalking Horse Bidder, (III) Scheduling Competitive Sale and Sale Approval Hearing, and (IV) Approving Sale Free and Clear of Liens to Good Faith Purchaser* (the "Motion") and entered an order in the above-captioned bankruptcy case approving the Bidding and Sale Procedures proposed by Matthew W. Smith, the duly-appointed chapter 11 trustee ("Trustee") for BK Racing, LLC (the "Debtor"), which relate to the sale of the Debtor's NASCAR Charter agreement and related assets.   The Bidding and Sale Procedures are as follows:

**ASSETS TO BE SOLD**:  The Trustee seeks to sell all of the Debtor's right, title, and interest in and to that certain *NASCAR Cup Series Charter Member Agreement* entered into by and between NASCAR Event Management, Inc. and related entities ("NASCAR"), Ronald C. Devine (as the "Control Person"), and the Debtor (as the "Team Owner"), which is assigned charter member agreement number 32 (the "Charter") and all or a portion of the Debtor's titled motor vehicles, equipment, and other fixed assets (collectively, with the Charter, the "Race Team Assets").

**BID DEADLINE**:  Any person(s) or entity(ies) wishing to participate in the competitive sale of the Race Team Assets (the "Competitive Sale") shall:  (1) immediately deliver a properly and validly executed *Confidentiality and Non-Disclosure Agreement* in the form attached hereto (an "NDA") to:  Matthew W. Smith, BK Racing Trustee, 212 S. Tryon St., Ste. 1050, Charlotte, NC 28202, matt@finleygroup.com; and, if determined by the Trustee and NASCAR to be a "Qualified Bidder," then (2) deliver, **on or before August 13, 2018** (the "Bid Deadline"), (a) an executed *Asset Purchase Agreement* in a form substantially similar to the form attached hereto (an "APA") and (b) either a version of the executed APA marked to show the changes against the attached APA or an electronic version is in Word of the executed APA to:  Matthew W. Smith, BK Racing Trustee, 212 S. Tryon St., Ste. 1050, Charlotte, NC 28202,  matt@finleygroup.com.

**REQUIREMENTS FOR A QUALIFIED BIDDER**:  Immediately upon receipt of an NDA, the Trustee shall endeavor to determine whether an interested purchaser qualifies to participate in the Competitive Sale (a "Qualified Bidder").   The Trustee shall retain complete discretion to determine whether an interested person or entity is a Qualified Bidder.   At a minimum, a Qualified Bidder will have the following characteristics:   (1) the financial wherewithal to consummate the proposed transaction, including the willingness to provide detailed financial

information to the Trustee to verify such financial wherewithal; and (2) the ability to qualify as a "NASCAR-Approved Bidder" (defined below).

Once the Trustee is satisfied that an interested purchaser otherwise qualifies as a Qualified Bidder, the Trustee shall confer with NASCAR to determine whether the interested purchaser has the ability to satisfy (i) all of the "Team Owner" duties and obligations and any other requirements of the Charter and (ii) any and all ownership structure requirements, affiliation limitations, and other NASCAR-implemented rules relating to qualified team owners appearing in the NASCAR Rule Book or otherwise (a "NASCAR-Approved Bidder").  NASCAR shall retain complete discretion to determine whether an interested person or entity is a NASCAR-Approved Bidder.  In the event an otherwise Qualified Bidder becomes a "Prohibited Person" within the meaning of the Charter or otherwise loses the bidder's status as a NASCAR-Approved Bidder at any time during this process, then such bidder shall immediately cease being a Qualified Bidder and shall be disqualified from participating in the Competitive Sale.

The Trustee shall endeavor to notify any person or entity who has delivered an NDA regarding whether the person or entity has been approved as a Qualified Bidder within one (1) business day following both the Trustee and NASCAR have approved such person or entity as a Qualified Bidder and NASCAR-Approved Bidder, respectively.

**REQUIREMENTS FOR A QUALIFIED BID**:  The Trustee shall retain complete discretion to determine whether an APA received qualifies ~~as~~ a Qualified Bidder to participate in the Competitive Sale (a "Qualified Bid").  At a minimum, a Qualified Bid must have the following characteristics, unless otherwise ordered by the Court.

(1) A Qualified Bid must be timely submitted on or before the Bid Deadline.

(2) A Qualified Bid proposes a purchase price that exceeds the total consideration to be paid by the Stalking Horse at Closing by at least $~~50~~300,000.00.

(3) A Qualified Bid makes adequate representations and warranties regarding the Qualified Bidder's affiliation or relationship with the Debtor, any insider(s) of the Debtor, or any creditor(s) of the Debtor.

(4) A Qualified Bid requires the Qualified Bidder to make a good faith deposit in an amount equal to ten percent (10%) of the total consideration to be paid for the assets to be purchased by the Qualified Bidder.

(5) A Qualified Bid warrants that it is not subject to any additional due diligence, any financing contingency(ies), or any further board or similar corporate approval.

(6) A Qualified Bid provides that it is irrevocable by the Qualified Bidder unless and until three (3) days after a Court order approving a sale of the assets pursuant to which the Qualified Bidder does not hold the "Winning Bid" or "Back-Up Bid" (each defined below).

(7) A Qualified Bid commits to a closing on the purchase as soon as possible after entry of an order approving the sale, but not later than three (3) business days after such order has become a final order (the "Closing")~~as soon as possible, but not later than~~

2

~~ten (10) days, after entry of an order approving the sale, unless such order has been stayed pending appeal~~.

(8) A Qualified Bid ~~agrees~~ acknowledges that the sale is "as-is, where-is" with no warranties express or implied by the Trustee, other than a warranty that the Trustee has done nothing to impair title and will defend title against the lawful claims of all persons claiming by, under, or through the Trustee.

(9) A Qualified Bid represents and warrants to the Trustee that the Qualified Bidder (A) has relied solely upon the Qualified Bidder's own independent review, investigation, and/or inspection of the assets in making the bid and (B) did not rely upon any written or oral statements, representations, promises, warranties, or guarantees whatsoever, whether express, implied, by operation of law or otherwise, by the Trustee regarding the assets.

(10)       A Qualified Bid includes no breakup fee, expense reimbursement, or similar payment obligation burdening the Trustee.

(11)       A Qualified Bid must be on substantially similar terms as, or better terms than, the APA and must provide for the purchase of all of the Race Team Assets,.

~~(9)~~(12)       A Qualified Bid must allocate the proposed purchase price among the Charter, Tangible Assets, Titled Vehicles, and Champion Assets (as defined in the Motion).

**DUE DILIGENCE**:  All due diligence must be completed by any Qualified Bidders on or before the Bid Deadline, such that all bids at the Competitive Sale will be **free of all contingencies** other than the Court's approval of the sale free and clear of liens, with any liens transferring to the sale proceeds.  Subject to the Qualified Bidder's execution of the NDA, the Trustee shall provide Qualified Bidders with any documents requested prior to the Bid Deadline that are in the Trustee's possession or are readily available to the Trustee.  The Trustee shall not be obligated to furnish access to any information of any kind regarding the assets after the Bid Deadline.

**SELECTION OF QUALIFIED BIDS**:  After a Qualified Bidder submits an APA, the Trustee may, in the Trustee's complete discretion, communicate with the Qualified Bidder and request any additional information deemed necessary to evaluate whether the bid should be accepted as a Qualified Bid.  The Trustee will send, on or before August 16, 2018, a written Competitive Sale invitation to all Qualified Bidders submitting Qualified Bids.

**DESIGNATION OF COMPETITIVE SALE PARTICIPANTS**:  All Qualified Bidders wishing to bid at the Competitive Sale shall appear and participate at the Competitive Sale—either in person or telephonically—through a duly authorized representative.  On or before August 17, 2018, all holders of Qualified Bids shall notify the Trustee in writing of the name and relationship to the Qualified Bidder of any representative who will appear at the Competitive Sale on the Qualified Bidder's behalf and a certification that the identified representative(s) will have the full authority to bid at the Competitive Sale on behalf of the Qualified Bidder, *provided, however*, that the Trustee will have the ability to exclude any identified representative that the Trustee reasonably believes would be disruptive to the Competitive Sale process.

**LOCATION OF COMPETITIVE SALE**:  If any Qualified Bids (other than the "Stalking Horse Bid" (as that term is defined in the Motion)) are received, then the Trustee shall conduct the Competitive Sale at the law offices of Grier Furr & Crisp, PA, located at **101 North Tryon Street, Suite 1240, Charlotte, North Carolina**, or in such other location as the Trustee designates upon advance written notice to holders of Qualified Bids.

**DATE AND TIME OF COMPETITIVE SALE**:  The Competitive Sale will be on **August 20, 2018** at 9:30 A.M.

**SALE PROCEDURES**:  The following rules shall govern the Competitive Sale.

(1) Only Qualified Bidders submitting Qualified Bids and the Stalking Horse are eligible to participate in the Competitive Sale.  Other than Qualified Bidders and their representatives, the only parties permitted to attend the Competitive Sale are UBT and UBT's counsel, NASCAR and NASCAR's counsel, the IRS and the IRS's counsel, and the Trustee and the Trustee's counsel.

(2) Prior to the Competitive Sale, the Trustee shall select the Qualified Bid that, in the Trustee's complete discretion, reflects the highest or otherwise best value for the Race Team Assets as the Competitive Sale's opening bid.  The Trustee shall then commence the Competitive Sale by announcing the opening bid.

(3) Thereafter, Competitive Sale participants may submit bids that are higher and better than a prior bid in increments of at least $50,000.00 until the Trustee selects a successful bid; *provided, however*, that the Trustee shall retain complete discretion to adjust the overbid increments upward or downward during the Competitive Sale.

(4) The Trustee may adjourn the Competitive Sale and/or adopt supplemental Competitive Sale rules or procedures in order to facilitate a more effective Competitive Sale.

(5) After consultation with certain secured lenders, the Trustee shall select the Winning Bid and a Back-Up Bid during the Competitive Sale and conclude the Competitive Sale by announcing the Winning Bid and Back-Up Bid.

(6) The Court will conduct an approval hearing to consider whether to approve the sale pursuant to § 363 of the Code on August 21, 2018 at 9:30 A.M., unless the Competitive Sale has been adjourned to a later date and time.

**CONSUMMATION OF SALE**:  If the Court approves a sale based on the Winning Bid, then the holder of the Winning Bid shall close on the purchase as soon as possible after entry of an order approving the sale, but not later than three (3) business days after such order has become a final order~~within ten (10) days of entry of the order approving the sale~~.  If the holder of the Winning Bid fails to consummate the purchase, then the holder of the Back-Up Bid shall close on the purchase within twenty (20) days of entry of the order approving the sale becoming a final order.

**RESERVATION OF RIGHTS**:  The Trustee expressly reserves the right to determine whether any bid is a Qualified Bid and whether any Qualified Bid is the Winning Bid or a Back-Up Bid.  The Trustee expressly reserves the right to seek all available damages from the holder of the Winning

4

Bid or the holder of the Back-Up Bid if such bidder wrongfully fails to consummate the purchase pursuant to these Bidding and Sale Procedures.

Dated:  July   , 2018

By:    Michael L. Martinez
       Grier Furr & Crisp, PA
       101 N. Tryon St., Ste. 1240
       Charlotte, NC 28246
       Phone:  704/332.0209
       Email:  mmartinez@grierlaw.com

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### Charlotte Division

In re:

**BK Racing, LLC**,

                  Debtor.

Case Number:  18-30241

Chapter 11

### NOTICE OF HEARING

TAKE NOTICE that on **Tuesday, July 24, 2018, at 9:30 A.M. in Bankruptcy Courtroom 1-4 in the United States Courthouse, 401 West Trade Street, Charlotte, North Carolina**, this Court will conduct a hearing on the *Trustee's Amended Motion for Order (I) Approving Bidding and Sale Procedures in Connection with the Sale of Charter and Related Assets, (II) Approving Agreement with Stalking Horse Bidder, (III) Scheduling Competitive Sale and Sale Approval Hearing, and (IV) Approving Sale Free and Clear of Liens to Good Faith Purchaser* (the "Motion").

The Motion seeks Court approval of a process by which the Trustee may sell all of the Debtor's right, title, and interest in and to that certain *NASCAR Cup Series Charter Member Agreement*, which is assigned charter member agreement number 32, and related (collectively, the "Race Team Assets").

In summary, the Motion proposes that the Trustee will solicit "Qualified Bids" (as defined in the Motion) for approximately twenty-one (21) days following entry of an order approving the Motion (the "Bid Deadline") and then hold an competitive sale within ten (10) days thereafter in which anyone submitting a Qualified Bid might participate.

Your rights may be affected.  You should read this Notice carefully and discuss it with your attorney, if you have one in this bankruptcy case.  If you do not have an attorney, you may wish to consult one.

IF YOU DO NOT WANT THE COURT TO GRANT THE RELIEF REQUESTED IN THE MOTION OF IF YOU WANT THE COURT TO CONSIDER YOUR VIEWS ON THE MOTION, THEN YOU OR YOUR ATTORNEY SHOULD ATTEND THIS HEARING AT 9:30 A.M. ON TUESDAY, JULY 24, 2018, IN BANKRUPTCY COURTROOM 1-4 IN THE UNITED STATES COURTHOUSE, 401 WEST TRADE STREET, CHARLOTTE, NORTH CAROLINA.

If you or your attorney do not take these steps, the Court may decide that you do not oppose the relief requested in the Motion and may enter an order approving the Motion.

This, the ~~13th~~ 20th day of July, 2018.

/s/  Michael L. Martinez
Michael L. Martinez (N.C. State Bar No. 39885)
Grier Furr & Crisp PA
101 North Tryon Street, Suite 1240
Charlotte, North Carolina 28246
Telephone: 704/375.3720; Fax: 704/332.0215
mmartinez@grierlaw.com

*Attorneys for Matthew W. Smith, Trustee*

2

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Charlotte Division**

In re:

**BK Racing, LLC**,

Debtor.

Case Number:  18-30241

Chapter 11

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that copies of the foregoing  and *Notice of Hearing* were served as follows:

(i) on all parties requesting notice through the Court's electronic noticing system (including the Bankruptcy Administrator's office) by electronic service;

(ii) on the creditor mailing matrix in this Case via U.S. mail, postage prepaid; and

(iii) on any party interested in purchasing the Race Team Assets for whom the Trustee has a valid electronic mail address by electronic mail only.

This, the 13th 20th day of July, 2018.

*/s/  Michael L. Martinez*
Michael L. Martinez (N.C. State Bar No. 39885)
Grier Furr & Crisp PA
101 North Tryon Street, Suite 1240
Charlotte, North Carolina 28246
Telephone: 704/375.3720; Fax: 704/332.0215
mmartinez@grierlaw.com

*Attorneys for Matthew W. Smith, Trustee*