FILED & JUDGMENT ENTERED
Steven T. Salata

February 14 2019

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

J. Craig Whitley
United States Bankruptcy Judge

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# Charlotte Division

In re:

BK Racing, LLC,

Debtor.

Case Number: 18-30241

Chapter 11

## ORDER DENYING FRONT ROW MOTORSPORT'S MOTION TO COMPEL IMMEDIATE PAYMENT OF PRE-SALE CHARTER MEMBER FEES INVOICE

THIS MATTER came on for hearing before the Court on January 30, 2019 (the "Hearing") upon *Front Row Motorsport's Motion to Compel Immediate Payment of Pre-Sale Charter Member Fees Invoice* (D.E. 211) (the "Motion"[1]) filed by Front Row Motorsport, Inc. ("Front Row"), through counsel, in the above-captioned bankruptcy case (this "Case") on November 20, 2018. Responses to the Motion were filed, through counsel, by: Matthew W. Smith (the "Trustee"), the duly-appointed chapter 11 trustee in this Case, on December 7, 2018 (D.E. 224); and Union Bank & Trust ("UBT") on December 10, 2018 (D.E. 226). The Trustee also submitted an affidavit in response to the Motion (D.E. 225) (the "Trustee's Affidavit").

---

[1] Capitalized terms not otherwise defined herein shall have the meanings set forth in the Motion.

1

Parties appearing at the Hearing were: Daniel S. Trimmer on behalf of Front Row; Michael L. Martinez on behalf of the Trustee; David M. Schilli and Andrew J. Kilpinen on behalf of UBT; and Caitlin A. Counts on behalf of the National Association for Stock Car Auto Racing, Inc. and NASCAR Event Management, Inc. (together, "NASCAR"). During the Hearing, the Court heard testimony from Front Row's general manager, Jerry Freeze, and the Trustee and admitted certain exhibits into evidence. The Court—having (i) reviewed the record in this Case, (ii) reviewed the contents of the Motion and the responses thereto, (iii) heard the evidence presented at the Hearing, including the Trustee's Affidavit, and (iv) considered the presentations and arguments of counsel at the Hearing—makes the following findings of fact and conclusions of law:

1.  The Debtor in this Case was in the business of operating a NASCAR-chartered, Monster Energy cup series ("Cup Series") race team. During the Case, the Debtor's right and license to participate in NASCAR-chartered events was authorized and otherwise governed by that certain *NASCAR Cup Series Charter Member Agreement* entered into by and between NASCAR and the Debtor (the "Charter").

2.  The Trustee obtained this Court's approval of certain procedures for selling the Charter and certain related assets of the Debtor pursuant to the *Order (I) Approving Bidding and Sale Procedures in Connection with the Sale of Charter and Related Assets, (II) Approving Agreement with Stalking Horse Bidder, and (III) Scheduling Competitive Sale and Sale Approval Hearing* (D.E. 172), as amended by the Supplemental Order Amending Sale Procedures (D.E. 181), (collectively, the "Sale Procedures Order").

3.  On August 13, 2018, NASCAR filed *NASCAR's Response Regarding Assumption and Assignment of BK Racing, LLC's Charter Member Agreement No. 32, Cure Amounts Owing*

*Thereunder, and Reservation of Rights (a) under the Charter and (B) to Demand Adequate Assurance of Future Performance* (D.E. 178) (the "Cure Statement"), in which NASCAR stated the cure amount due for Charter Member Fees (as defined in the Charter) previously invoiced in accordance with the Charter was $68,046 if the Trustee's sale closed on or before September 1, 2018.

4. Pursuant to the Sale Procedures Order, Front Row submitted a bid for the Charter and certain related assets on or around August 13, 2018 and thereafter was designated the Winning Bidder (as defined in the Sale Procedures Order) for the Charter and related assets.

5. On August 24, 2018, the Court entered an Order authorizing the Trustee to sell the Charter and certain related assets to Front Row (D.E. 191) (the "Sale Order").

6. On August 27, 2018, the Trustee closed on the sale of the Charter and certain related assets to Front Row ("Closing") and paid NASCAR its cure amount of $68,046. At Closing, Front Row assumed racing operations under the Charter.

7. On August 28, 2018, NASCAR sent Front Row an invoice dated that same date, in the amount of $66,139, with a due date of September 1, 2018 (the "Invoice") for Charter Member Fees, a significant portion of which were incurred prior to Closing and while the Debtor, subject to the Trustee's control, was racing under the Charter. The Charter Member Fees set forth in the Invoice were in addition to the Charter Member Fees due NASCAR described in the Cure Statement.

8. Also, the Trustee received a reimbursement of $6,428 from a beneficiary of one of the credentials reflected on the Invoice (*i.e.*, a portion of the Charter Member Fees included in the Invoice), which funds were deposited into the Debtor's operating account.

9. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M), and (O). Venue properly lies in this judicial district pursuant to 28 U.S.C. § 1409(a).

10. In the Motion, Front Row argues that: (a) pursuant to applicable law and/or the APA between the Trustee and Front Row, the Trustee was required to pay the Invoice out of cash collateral in that it was due and owing to NASCAR under the Charter at Closing; and (b) the Trustee's failure to pay the Invoice or expressly disclose it to Front Row prior to Closing constituted a breach of the APA or the representations and warranties therein.

11. While the APA required the Trustee to satisfy any amounts that were both due and payable (or in some sections of the APA, "due and owing") to NASCAR under the Charter at Closing, the only amount that was due *and* owing or due *and* payable at the time of Closing was the cure amount of $68,046, and the Trustee paid that amount to NASCAR at Closing. At the time of Closing, not only was the Invoice neither due nor payable under the Charter, but also the Invoice had not even been issued. There is nothing ambiguous in the APA's language. Accordingly, the Trustee did not breach any of the representations or warranties in the APA.

12. Section 365 of the Bankruptcy Code requires the bankruptcy estate, when assuming and assigning an executory contract such as the Charter, to cure any defaults under the applicable contract. Here, the Debtor was not in default under the Charter at Closing with respect to the Invoice because the Invoice had not then been issued and would not become due and owing until on or after September 1, 2018. Rather, the only monetary default under the Charter immediately prior to Closing was the amount of $68,046 due NASCAR as set forth in the Cure Statement and in the Sale Order.

13. In buying the Debtor's rights under a contract that was already being performed, necessarily Front Row was stepping into the Debtor's position not only "as is, where is," but also subject to all the terms and conditions of the Charter. Under section 365 of the Bankruptcy Code, an executory contract like the Charter cannot be assumed and assigned free and clear of the obligations required by the contract, which, here, included the obligation to pay the Invoice that was issued by NASCAR after Closing and became due after Closing. Front Row had experience with NASCAR's charter member agreements having operated at least two race teams under them in the 2016, 2017, and 2018 Cup Series seasons, and the Invoice, which was one of the quarterly invoices issued by NASCAR under its charter agreements, could hardly have been a surprise.

14. At the same time, Front Row purchased all of the benefits arising out of the Charter after Closing.

15. The $6,428 refund received by the Trustee in connection with certain Charter Member Fees billed in the Invoice is not property of the estate, and the Trustee should remit $6,428 to Front Row.

16. Front Row's arguments that it acquired the Charter free and clear of claims, including the amount reflected in the Invoice misses the mark. Front Row took an assignment of the Charter pursuant to section 365, so its arguments directed at a sale free and clear under section 363 of the Bankruptcy Code are unavailing. Moreover, even if the Court were persuaded that the Invoice was due and payable as of Closing (which the Court is not), Front Row is seeking to impose a surcharge on cash collateral. The United States Supreme Court held in *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 7 (2000), that creditors, or putative creditors (such as Front Row here), lack standing to surcharge collateral.

5

**IT IS, THEREFORE, ORDERED** that:

(1) the Motion is DENIED;

(2) within three (3) business days of this Order becoming final and non-appealable, the Trustee shall remit $6,428 to Front Row; and

(3) nothing in this Order shall prejudice the rights and remedies of NASCAR under the Charter as against Front Row.

**This Order has been signed electronically. The judge's signature and court's seal appear at the top of the Order.**

**United States Bankruptcy Court**