FILED
U.S. Bankruptcy Court
Western District of NC

APR - 9 2019

Steven T. Salata, Clerk
Charlotte Division
EA

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
In Re:

| | | |
|---|---|---|
| BK RACING, LLC | ] | Case No. 18-30241 |
| Debtor | ] | Chapter 11 |

OBJECTION TO THE AMENDMENT TO INTERIM APPLICATION FOR COMPENSATION [DOC.71] AND

APPLICATION FOR FINAL FEES AND EXPENSES BY

THE HENDERSON LAW FIRM

The Henderson Law firm, PLLC ("Applicant") filed a final Amendment for legal fees.

A. SUMMARY

On January 21st, 2019 applicant filed his final Application for compensation. Ronald C. Devine and Brenda S. Devine (Clients), object to Applicants fees and expenses. Applicant was approved as counsel on March, 5th 2018 and filed a motion, WITHOUT NOTICE to Clients, to withdraw on March 13th, 2018. If approved Applicant's final bill will exceed $110,000.00 for his brief effort in this case.

In hindsight, it appears that Applicant was more focused on creating support for his outrageous billing and expensing, than on providing competent representation in this matter.

Applicant is charging his time in 6 minute blocks for "each" email and not for actual work that would total 6 min. He also produced over 300 emails in his short time on this case. The majority of those emails would take seconds to compile and are simple forwarding of requests, "FYI" emails, and redundant requests like, "did you get my email?" Clients object to the massive number of unnecessary emails and the billing of 6 minutes per email instead of 6 minutes of actual time spent.

Client has been in business for more than 35 Years. Applicant is the most disorganized attorney that Client has ever employed. Applicant spent ZERO time in preparing for the hearings. In fact, Applicant would not "MEET" Ronald C. Devine, the Client, ahead of time. Applicant would "MEET" the Client directly at the courthouse for hearings and even for the 941 creditors meeting with the United States Bankruptcy Administrator ("USBA"). Only one time, before the



hearing to appoint a Trustee, did Applicant and Client meet at Applicant's office, where the Client sat ALONE in Applicant's conference room for over an hour while Applicant composed his bills and expenses to submit to the Court that same day. Applicant and Client rode together to the courthouse and that was "Prep" time for the most important motion in this case. Client objects and submits there is no justification for the number of hours Applicant is claiming to have spent on this case, and certainly not for the expenses claimed for the "waterfall" of emails.

Applicant's interaction's with opposing counsel at the Courthouse, as well as, in the 941 hearing was also troubling. Opposing counsel asked Applicant on a number of occasions, "have you decided if you are you planning to object to the Trustee?" Applicant responded with, 1)"not sure yet", 2)"maybe not", and 3) "a little bit." None of these responses were consistent with the Client's position. The most concerning was number 3 that occurred in the Courtroom on the day of the Motion hearing to appoint the Trustee.

Clients have researched the reviews on Jim Henderson and find his handling of this matter consistent with what his "other" clients have experienced. See the three AVVO reviews attached. It seems suspicious to Client that Applicants 2 positive reviews are "anonymous," and Date back to 2015. The more recent reviews from 2016 and 2017 are all poor and one is not anonymous. These reviews demonstrate a pattern of bad behavior and shed light on the overbilling practice, the excessive emailing, the "selling out" to opposing counsel, and even withdrawing from another case without notice.

B. CASE BACKROUND
1. The case was filed on an emergency basis on February 15th, 2018 in order to stay a receivership action in State Court. It was not filed because of ANY operational issue. The Court has been misled on numerous occasions regarding BK Racings ability to operate.
2. On March 1, 2018 Applicant was retained and the retainer was forwarded from the Michael Martinez, Trustee's current council.
3. The agreement to employ Applicant states billing is to be in 12 minute increments, but this is being abused by Applicant. Even offering to adjust to 6 minute increments for emails that take mere seconds to produce, is not abusive. The Personal Guaranty on the retainer is misrepresented in the agreement and was ONLY supposed to address the Initial retainer and that the "Clients" would provide the $25k if there was an issue with the transfer from the other counsel.
4. On March 5th, 2018 Applicant was approved and the retainer was delivered.
5. On March 13th, 2018 Applicant filed a Motion to withdraw without notice to Clients.

C. INTERIM APPLICATION AND CONTEXT
6. It appears the USBA is reviewing the Applicants time. Clients would encourage the Bankruptcy Administrator to include the Clients in her research.
7. Applicant identifies 16 hours of work on February 22nd, 2018. Applicant is trying to claim 3.25 hours from midnight to 3:15am, and is seeking 11.3 hours for 113 emails. The



Applicant fails to disclose the "dinner" that the Applicant attended that night. The Client recalls a phone call with Applicant, from 11pm to 1 am, where the conversation was more about life than the actual case. Client also objects to the massive number of hours. This one day, coupled with the overall short period of time Applicant was involved, does not justify Applicant's outrageous billing. Client asks the Bankruptcy Administrator and the Court, to further examine the validity of Applicant's hours and accomplishments. Client objects to the billing of "hanging out with each other" time, and the massive emails that were produced.

8. Applicant claims extraordinary time for "first Day" objection, but Client objects and has researched Bankruptcy "typical" hearings and would ask the court to shed light on Applicants claim. Also, Applicant footnotes the forwarding of emails to the Trustee, but again, Client objects to the overstated effort to forward emails. Applicant even expresses in the footnote that "some" were less than 6 minutes while "some" were "significantly more" than 6 minutes. Client objects to "some" and submits that the overwhelming majority could NOT have taken anywhere near 6 minutes. Client asks the court to examine the lack of emails that could have taken anywhere near 6 minutes to complete.
The Shelby hearings are overstated by the Applicant, and with the luxury of 20/20 hindsight, it is clear that no one was interested in halting operations. Applicant's attempt to justify overbilling and importance is grossly overstated.

Applicant also falsely footnotes that the 1st day hearing was late. Somehow blaming the Debtor, when in reality, the delay was caused by a last minute Attorney change coupled by a failed resolution with Union Bank.

9. The eight Day hearings are represented as critical for survival, but Client objects and reminds the court that both teams and cars were already in route to the Atlanta Race. Client does agree that, at the time, the value of the team exceeded $5,000,000.00, but objects to the overstated effort Applicant places on his involvement in the hearing. Applicant was still in a learning curve about the NASCAR business and BK Racing. Client objects to funding Applicants learning curve.

10. Applicant blames the Debtors management team and claims lack of financial sophistication and meaningful assistance to justify additional effort and billing hours. Client objects and would remind the Court that Client's company operated for seven seasons with as many as four cars in the Daytona 500. BK Racing operated three cars for a number of seasons and a minimum of two cars for every season. The Applicant's lack of knowledge about this sport, coupled with his lack of interest in this case, is a more accurate explanation of the "Bare Bones" filings that Applicant makes a claim about.

Applicant claims to have provided Debtor and Client with a "comprehensive, detailed list" of ALL information needed to prepare schedules and included deadlines. What Applicant omits was the email request was sent at 2 am with a deadline of 1pm the same day. Client

objects to this shallow claim and would counter claim that the Applicant was more focused on time emailing for expense and spent no time reading the responses. Client also objects and claims that Applicants "waterfall" of emails was nothing more than a strategy to excessively expense. Client objects to this as justification for Applicant's overbilling.

11. Applicants "deadlines" were unrealistic and overwhelming to EVERY employee at BK Racing. Applicant's claims to have received no accurate list of creditors and addresses. Client objects to this claim and submits that the "FINAL" creditors list that the Court received and used for the schedules was the original list the Client submitted and the one Applicant had in his possession. The Applicant blamed the Debtor in court, and falsely writes in this amendment, that Client and Debtors were "NOT" capable. Falsely accuses the Client of focusing only on the Atlanta race. Implying a lack of interest by Debtor and Client is simply not true.
Applicant is the most disorganized attorney Client has ever employed. Client was clear to the court that this was all new to the Debtor, as well as, the Client and neither had ever experienced a Chapter 11. Applicant was fully aware of this and spent ZERO time assisting the Client and Debtor with the process. Applicant spent all of his time complaining and blaming the Debtor. Client objects and asks the court to recognize that the final schedules were simply the Debtors reports with the title "SCHEDULE" on them. Client also objects to the Applicant falsely utilizing these claims to justify a grossly overstated bill and ultimately utilizing reports that Applicant had been provided.
12. Applicant again claims repeated requests for information and documents with deadlines that he states the Client and Debtor "could not, or would not" provide. Client objects, and would like to point out again that the "waterfall" of emails included the multiple resending of the same requests. Applicant expensed in 6 minute blocks of time for each of these duplicate emails. Client objects to the Applicant's email expenses for duplicates. Applicant again paid little or no attention to Clients and Debtors responses and continued to request information in Applicant's possession. You can see from the email traffic that the Clients response was "YOU ALREADY HAVE THAT." Prompting a response for the Applicant that said "ARE YOU GETTING THESE EMAILS?"

The Applicant rants about "ISSUES" he faced on February 22nd as some sort of justification for this outrageous billing. Client will address each of these false claims and objects to them being anything other than proof of the Applicant's lack of interest and ability to handle this case.

   a. Insufficient information for 1st day motions. Applicant had the info, but did either did not realize it or didn't care.
   b. Insufficient information to prepare schedules. Applicant forwarded Clients reports to the Trustee and these reports were used as the final reports for the schedules submitted by the Trustee, simply writing Schedule on the Clients reports. Applicant's claim that information was not available is simply false.

c. Applicant claims to have received no budgets, but Applicant had no less than three budgets in different formats. He never looked at them until we sat in the Courtroom.
d. Applicant claims draft budget received from different employees were inconsistent, but they were actually the work papers that gave back up to the budgets. Applicant spent no time looking at the contents.
e. Applicants claim that Debtor had employees in Charlotte, NC and Springfield, VA which had no understanding of "which office or employee was responsible" is just additional proof that the Applicant had no idea what he was doing, or simply didn't care.
f. Applicant had little or no involvement with insurance. The court may recall we were changing insurance and provided the new policy in 1 day.
g. Applicant states Union Bank had not consented to use of cash collateral. Client objects to this having any justification for overbilling or excessive time required. Client also points out that Union's threat was simply their attempt to control Applicant.
h. Applicant's rant about Debtor not knowing the value of its assets is simply false. Not being able to get support from the Applicant for the value and the devaluing that occurred is more accurate.
i. Applicant again complains about financial information. The same financial group that has been through years of successful audits, operated over 20 companies for more than 28 years, and is now the innocent victim of this vicious attack from Union Bank is falsely supported by this Applicant. Client not only objects, but asks the court to look into these practices for future companies this Applicant represents before the Court.
j. Applicant represents REP demanding a cure of a payment as some sort of justification for his billing. BK Racing didn't owe REP the amount claimed. Applicant failed to state, or maybe never realized that REP was attempting a takeover of BK Racing for its own interest. It is clear now, that REP was masquerading as a harmed unsecured creditor, but was simply trying to capture the assets of BK Racing.
k. Applicant's claim the Debtor "did not know what employees were owed" is simply false. Debtor ran a payroll with over 750 employees for more than 25 years. Client objects to this as a burden or justification for time the Applicant had to spend and submits it is more proof of the Applicants lack of support and understanding of the Debtor.
l. Applicant's statement that Debtor had no knowledge of creditors or liens is yet more proof this Applicant had no idea about the NASCAR business or BK Racing. Client objects, and would remind the Court that the false UCC filing and attempted collateral capture was resolved by the Client and in conjunction with the Trustee. Applicant's short period of representation was over long before this issue required time.
m. Applicant again points to extensive documentation as some justification for Applicants time, but Applicant had no involvement in ANY of this issue. Moreover this provides overwhelming proof that Applicant is trying to justify ONE day of time that is incredulous.
n. Applicant combines REP and Champion Motions, but Champion required no time and was resolved by the Debtor and Client. REP, on the other hand, was trying to be as disruptive as they could, and were attempting to capture BK Racing. Client not only



objects, but reminds the Court that REP was the driving force behind the attempted replacement of the Trustee. REP's strategy was to first eliminate Ron Devine from being appointed, and then eliminate the Trustee. The APPLICANT could not have cared less, but certainly had no time invested in the REP scam.

    o. Applicant blames Debtor for "spending a portion" of funds without Court approval, but this merely demonstrates the Applicant was not providing any guidance for the process. Client objects to this as justification for overbilling and reminds the Court that this issue was addressed in open Court and determined that the ONLY funds spent were to operate and continue to be compliant.

    p. Applicant complains about the NASCAR confidentiality, but again this shows Applicant's lack of engagement with the Debtor. Client specifically addressed this issue with the Applicant, but Applicant ignored the information, and in fact disclosed confidential info that the Court had to remove. Applicant apologized to the Court, but now is using the issue as justification for billing hours.

    q. Applicant points to "other" issues on the exhibit to Interim Application requiring time. Client objects and submits that the Trustee requested, and was granted, extensions to EVERY deadline. The Trustee missed EVERY filing date, and in fact, was a mirror to the Debtor of every issue raised by the Applicant. The ONLY difference between the Client and the Trustee's operation was the attack from Union Bank. Debtor needed an engaged, capable attorney that could engage and defend the Banks attack against the Debtor and Client. This yields more support for the Clients objection to the Applicants request.

13. Applicant seems to attempt to connect sua sponte to some type of preparation which he "may" have been required to address. Client not only objects, but asks the Court to have the applicant explain exactly what issue he spent hours preparing to address.

14. Applicant recants his day, but Client objects and would remind the Applicant of the phone conversations and clients concern that Applicant was not in a proper frame of mind, after dinner, to clearly represent the Debtor the next day.

D. FINAL APPLICATION

15. Client objects to Applicants requests for compensation and prays the Court will examine this case, as well as, the AVVO responses from "other" Clients as demonstrating a pattern of abusive and outrageous billing. Client also objects to the Applicants claim that BK Racing and the Client consumed all of his time. One of the 300 emails clearly states that the Applicant had "other" clients that he had to support and that his time was an issue. Client has cited a summary of the emails and will produce the actual emails for the Court to see firsthand. A look into these emails shows the lack of ability for the Applicant to justify time spent that reaches anywhere near Six (6) minutes of discounted billing time per email.

16. Applicant has been required to adjust his billing by the US Bankruptcy Administrator, and Client supports these as a start to a correction. Client requests the Court to examine the justification to even account for time to expend the $25,000.00 retainer. The lack of



attention and effort by the Applicant is support to cap and control his fees, but Applicants email billing and hours are unjustified and Client requests the Court to deny.

17. Client agrees that there is no other agreement between Applicant, Debtor and Clients.
18. Client is researching cases to the best of its ability, to find case support for Clients objections.
19. Client requests support from the Court for its objections and looks forward to a hearing at the Courts availability.

WHEREFORE, the undersigned respectfully requests that this Court enter an order DENYING the Applicant's fees and expenses, and deny the Applicant's Chapter 11 administrative claim. Client respectfully requests the Court cap the Applicants fees at the $25,000.00 original estimate.

Dated April 8, 2019

CLIENTS

By: Ronald C. Devine
6403 Burke Woods Ct
Burke Va. 22015
Telephone 703 801-9650
Email rdevine@arfoods.com







Home > Find a Lawyer > James H. Henderson



## James Henderson's reviews

★★⯪☆☆ 5 total

Review James Henderson


Message







See more Charlotte Chapter 11 Bankruptcy lawyers

**Search**

nilar lawyers | Contact | **Reviews** | Cost

**Reviews** (5) ★★½☆☆

| | | |
|---|---|---|
| 5 Star | ▬▬▬ | 40% |
| 4 Star | | 0% |
| 3 Star | | 0% |
| 2 Star | | 0% |
| 1 Star | ▬▬▬▬▬ | 60% |

Review James Henderson

**Avoid this attorney**

★☆☆☆☆

Posted by anonymous October 7, 2017

His last review of May 2017 is very correct.

He is an excellent attorney to make sure he





✉ Message

attorney



Posted by Barry Boyd July 27, 2016

I hired James Henderson to represent my small business company and managers in a bankruptcy case. First; he demanded $5,000.00 to get started. He did not filed schedules on time, failed to communicate around issue(s), made disparaging remarks about us to opposing counsels and failed to file timely response to court deadline and orders and caused an adverse outcome. He even stopped representing us and filed to withdraw. He never gave any accounting of the funds he received. WORST EXPERIENCE EVER!

Less ∧

Hired attorney 

  





### Horrible Experience-Bad Outcome



Posted by anonymous May 4, 2017

I agree with the other client who previously stated that Mr. Henderson secretly converses with opposing counsel and talks negatively about his clients. He withholds all the information he obtains with his verbal agreements with opposing counsel. He then proceeds to bill $100 for every email response. I would not refer him to any friends, family or anyone. Maybe he's better in simple bankruptcies but he's definitely not an attorney for complicated cases.

Less ^

Hired attorney 

  



Review James Henderson

### Avoid this attorney

★☆☆☆☆

Posted by anonymous October 7, 2017

His last review of May 2017 is very correct. He is an excellent attorney to make sure he gets paid. "I have to get paid even if you die". Final outcome of my case was horrible and unfavorable. Our personal opinion after this experience, is that he is more concerned about himself and his colleagues. Avoid him by all means!!

Less ^

Hired attorney ⓘ

### Horrible Experience-Bad Outcome