**IN THE UNITED STATS BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**

| | |
|---|---|
| IN RE:<br><br>BK RACING, LLC<br><br>Debtor. | CASE NO. 18-30241<br><br>CHAPTER 11 |

**OBJECTION BY ATLANTIC UNION BANK
TO FIRST INTERIM APPLICATION FOR COMPENSATION
TO THE FINLEY GROUP, INC. AS ADVISORS TO THE TRUSTEE**

Atlantic Union Bank, formerly known as Union Bank & Trust ("AUB"), objects to the *First Interim Application for Compensation to The Finley Group, Inc. as Advisors to the Trustee* filed by Matthew W. Smith, as Chapter 11 Trustee (in such capacity, the "Trustee"), on behalf of The Finley Group ("TFG") [Docket No. 259] (the "Application") and requests that it be denied without prejudice or TFG be required to supplement or amend the Application so that it complies with this Court's *Guidelines for Compensation and Expense Reimbursement of Professionals* (the "Guidelines") to enable AUB, the Court and other interested parties to have sufficiently detailed information to properly evaluate the reasonableness and necessity of the fees requested under §§ 326, 328(b), and 330(a) of the Bankruptcy Code.

**Summary of Objection**

1.    In the Application, the Trustee requests compensation for TFG for nearly 1,700 hours of work during the five-month period beginning with the Trustee's appointment as Chapter 11 trustee for Debtor BK Racing, LLC (the "Debtor") on March 28, 2018, and ending on August 30, 2018, following the sale of substantially all of the Debtor's assets. The Trustee seeks compensation for financial advisory services for 1,238.6 hours of time for Mr. Smith (which equates to nearly 250 hours per month, on average, for each of the five months covered by the

11955777

Application)[1]; 441.1 hours of time for Blake Hauk; and 15.85 hours of time for Chris Lawing. All told, the Trustee seeks an award of $507,544.81 in compensation for TFG's claimed financial advisory services and $7,630.23 in expense reimbursement.

2. In its present form, the Application fails to provide parties in interest and this Court with adequate information to evaluate the necessity and reasonableness of the requested compensation. In the Application, the Trustee fails to differentiate between the work performed as a trustee — *i.e.*, the work fulfilling the duties required of any trustee under §§ 1106 and 1108 of the Bankruptcy Code — and the more complex work performed as a financial advisor to the Trustee. It appears that the Trustee is of the mistaken view that all of the time reflected in the Application should be billed as financial advisory work, when Mr. Smith in fact was wearing two different hats in this case: He was a court-appointed trustee whose compensation is evaluated for reasonableness under § 330 of the Bankruptcy Code, subject to the limitations set forth in § 326 of the Bankruptcy Code, and he also was acting as a financial advisor whose compensation is evaluated for reasonableness and necessity under §§ 327 and 330 of the Bankruptcy Code. More problematic, TFG "block billed" the vast majority of time included in the Application, a blatant violation of the Guidelines and applicable law, precluding the Application from being granted. The Trustee's timekeeping practice also renders it impossible to distinguish between trustee work and financial advisory work or to evaluate the necessity and reasonableness of the work performed and fees charged.

3. As this Court is aware, AUB is one of the Debtor's two primary secured creditors and also is the largest unsecured creditor in the case with a deficiency claim expected to be more than $7,000,000. AUB does not object to *reasonable* compensation being allowed as an

---

[1] Apparently, Mr. Smith treated this engagement as a full-time job, and AUB is at a loss for why Mr. Smith expended so many hours with seemingly very little to show for those efforts.

administrative expense for the *necessary* work performed by Mr. Smith acting in the capacity of a Chapter 11 trustee or for the *necessary* work Mr. Smith or the other TFG professionals performed as financial advisors to the Trustee, assuming the Trustee can meet his burden of showing the reasonableness and necessity of such compensation under §§ 326, 328(b), and 330(a) of the Bankruptcy Code, subject to the limitations on such compensation under those sections. During the same time period covered by the Application, AUB repeatedly requested the Trustee to provide estimates of his anticipated fees and visibility for the fees the Trustee intended to charge, only to have its repeated requests ignored. And, AUB was – and remains – both frustrated and disappointed with the Trustee's handling of the sale process, the sale results and other aspects of the sale.

4.  Although nothing in the Application suggests any surcharge of AUB's collateral pursuant to § 506(c) of the Bankruptcy Code, the Trustee previously has raised a possible § 506(c) surcharge claim. Thus, AUB feels compelled to object to the Application to protect its interests in case the Trustee seeks to use any proceedings, findings or conclusions in connection with the Application in any future surcharge proceedings. AUB expressly reserves all of its rights to defend any future surcharge request.

**Factual Background**

5.  On February 15, 2018 (the "Petition Date"), the Debtor filed for relief under chapter 11 of the Bankruptcy Code.

6.  By its *Order Appointing Creditors' Committee* entered March 9, 2018 [Docket No. 55], the Court appointed the Official Committee of Unsecured Creditors (the "Committee"). The Committee has not appeared through counsel. However, the Committee's chair, Robin Trivette, is

an agent of Race Engines Plus, LLC, which has been both represented by counsel since the Petition Date and active in the Debtor's case.

7. Pursuant to its *Order Appointing Matthew W. Smith as Chapter 11 Trustee* entered March 30, 2018 [Docket No. 87], the Court appointed the Trustee to serve as the Chapter 11 trustee of the Debtor effective as of March 28, 2018.

8. On April 3, 2018, the Court *ex parte* authorized the Trustee to employ TFG as financial advisors for the Trustee and the estate pursuant to the *Order on Trustee's Application for Employment of The Finley Group, Inc. as Financial Advisors* [Docket No. 94].

9. On July 15, 2018, the Trustee filed the *Trustee's Motion for Order (I) Approving Bidding and Sale Procedures in Connection with the Sale of Charter and Related Assets, (II) Approving Agreement with Stalking Horse Bidder, (III) Scheduling Competitive Sale and Sale Approval Hearing, and (IV) Approving Sale Free and Clear of Liens to Good Faith Purchaser* [Docket No. 153].

10. On July 16, 2018, the Trustee filed two other sale motions [Docket Nos. 157 and 158] in which he sought authority to sell certain discrete assets of the Debtor to two buyers for $300,000, collectively.

11. On July 20, 2018, the Trustee filed the *Trustee's Amended Motion for Order (I) Approving Bidding and Sale Procedures in Connection with the Sale of Charter and Related Assets, (II) Approving Agreement with Stalking Horse Bidder, (III) Scheduling Competitive Sale and Sale Approval Hearing, and (IV) Approving Sale Free and Clear of Liens to Good Faith Purchaser* [Docket No. 163] (the "<u>Amended Sale Motion</u>") in which he identified a "stalking horse" purchase bid for most of the Debtor's assets (other than those assets set forth in the motions described in Paragraph 10 above) for $1,800,000 (the "<u>Stalking Horse Bid</u>").

12. Pursuant to its *Order Approving Sale of Race Team Assets* entered August 24, 2018 [Docket No. 191], the Court authorized the sale of substantially all of the Debtor's assets to three different buyers for approximately $2,380,000.

13. On April 2, 2019, just over a year after his appointment, the Trustee filed the Application seeking compensation for TFG in the amount of $507,544.81[2] and reimbursement of TFG's expenses in the amount of $7,630.23 for the first five months following his appointment.

### Objection

14. Section 330(a)(1)(a) of the Bankruptcy Code authorizes the Court to award a trustee, or a professional person employed by the trustee, "reasonable compensation for actual, necessary services." 11 U.S.C. § 330(a)(1)(A). Section 330(a)(3) of the Bankruptcy Code compels a court to "consider the nature, the extent, and value of such services, taking into account all relevant factors" in determining the "amount of reasonable compensation to be awarded." *Id*. at § 330(a)(3).

15. The Bankruptcy Code places additional limits on compensation to the trustee acting as trustee and on compensation for services of a trustee acting in his role as a financial advisor. Section 330(a)(7) of the Bankruptcy Code provides that the "amount of reasonable compensation to be awarded to a trustee . . . [shall be treated] . . . as a commission, based on section 326." *Id*. at § 330(a)(7). In turn, § 326 of the Bankruptcy Code imposes a limit on the reasonable compensation a trustee may receive under § 330 of the Bankruptcy Code determined by a percentage of the funds disbursed by the trustee to parties in interest. *Id*. at § 326.

---

[2] The fees sought by the Trustee are more than twenty percent (20%) of the $2,380,000 in proceeds generated from the Trustee's sale of the Debtor's assets. Moreover, when combined with the fees sought by the Trustee for his counsel in the *First Interim Application for Compensation to Grier & Crisp, PA, Attorneys for the Trustee* [Docket No. 258], the Trustee asks for the Court to approve fees exceeding $665,000, which is more than twenty-eight percent (28%) of the sale proceeds.

11955777                                     - 5 -

16. Of principal importance here, if a court authorizes an individual appointed as a trustee to also serve as a professional for the estate, the trustee may receive reasonable compensation under § 330(a)(1) of the Bankruptcy Code only for those services rendered as a professional person and may not be compensated for performance of "any of the trustee's duties that are generally performed by a trustee." *Id*. at § 328(b).

17. In this context, the professional seeking a fee award bears the burden of proof as to the reasonableness of, and entitlement to, the requested fees. *Brake v. Tavormina (In re Beverly Mfg. Corp.)*, 841 F.2d 365, 371 (11th Cir. 1988); *Neville v. Eufaula Bank & Trust Co. (In re U.S. Golf Corp.)*, 639 F.2d 1197, 1207 (5th Cir. 1981); *In re Amertiex*, 378 B.R. 107, 114 (Bankr. M.D.N.C. 2007). That burden includes establishing that services for which compensation is sought constitute services outside the scope of the trustee's ordinary duties. *In re Lexington Hearth Lamp and Leisure, LLC*, 402 B.R. 135, 141 (Bankr. M.D.N.C. 2009) (holding that "the need for a [financial advisor's] services must be apparent from the description of the services.") (citing *inter alia*, *United States v. Freeland (In re Spungen)*, 168 B.R. 373, 377 (N.D. Ind. 1993). If a financial advisor maintains that he should be compensated for a particular service, the financial advisor must describe the service and complexity of the matter in sufficient detail so that the court can determine on the face of the fee application that that task required the use of a financial advisor. *Id*. (citing *In re Virissimo*, 354 B.R. 284, 291 (Bankr. D. Nev. 2006)).

***The Application Fails to Demonstrate TFG Is Entitled to the Requested Fees***

18. This Court should not approve the Application to the extent that TFG seeks compensation on an hourly basis for work performed as a trustee. *See* 11 U.S.C. § 328(b). It is conceivable—and permissible under § 327 of the Bankruptcy Code—for a trustee to delegate certain tasks requiring specialized expertise to a financial advisor. In fact, the trustee may act in a

dual role, serving both as the trustee and also as a financial advisor if it is in the best interest of the estate. *See id.* at § 327(d). However, it is inconceivable—and impermissible under § 328(b) of the Bankruptcy Code—that all work performed by a trustee be compensated hourly as a professional person employed pursuant to § 328 of the Bankruptcy Code. Permitting a trustee to also serve as financial advisor may reduce costs, but it also creates potential for circumventing limitations on trustee compensation. *See In re Howard Love Pipeline Supply Co.*, 253 B.R. 781, 787 (Bankr. E.D. Tex. 2000). Here, the Application seeks to compensate TFG on an hourly basis for 100% of the time of TFG's professionals, without explicitly identifying, or distinguishing between, the work performed as the Chapter 11 trustee in contrast to the work performed as a financial advisor. The Trustee should not be seeking a fee award to TFG on an hourly basis for *all* of TFG's time.

19.     From the Application itself, it is impossible to determine the tasks performed as a Chapter 11 trustee as opposed to the tasks performed as a financial advisor or the tasks performed generally, for that matter, because the Application does not list or describe with any particularity the tasks actually performed. Section 1106 of the Bankruptcy Code details the duties of a trustee and includes filing the schedules and statements, investigating the assets, liabilities, and financial condition of the debtor, filing taxes, and filing a plan of reorganization. *See* 11 U.S.C. § 1106. Furthermore, § 1108 of the Bankruptcy Code empowers the trustee to operate the debtor's business. *See id.* at §1108. Here, the Application assumes that the Trustee was unable to perform *any* of these tasks without the assistance of financial advisors. This simply cannot be the case.

20.     A cursory review of the Application, which is all that is possible at this stage, demonstrates its shortcomings. The following time entries are included in Exhibit C to the Application (*i.e.*, the exhibit setting forth TFG's "non-track" related time) and illustrate TFG's time-keeping practices:

| Date | Description | Hours | Amount | Prof. |
|---|---|---|---|---|
| Apr-09-18 | Full Day at Race Shop: Meeting with Team; Operational issues | 9.50 | 3,752.50 | MWS |
| Apr-10-18 | Full day at Race Shop: Meeting with Driver and Dad; Meeting with Payroll; Meeting with Team; Discussions with Sponsor | 9.00 | 3,555.00 | MWS |
| May-07-18 | Preparation of Schedules; Preparation of Cash Budget; Prepare for Hearing | 11.00 | 4,345.00 | MWS |
| Jun-19-18 | Full Day at Race Shop: Team Meetings; Cash and Critical Cash Disbursements | 11.00 | 4,345.00 | MWS |
| Jul-31-18 | Full day at Race Shop: Team Meetings; Discussions with potential buyer; Cash flow issues & critical disbursements; Due Diligence requests; Sponsorship Issues | 11.00 | 4,345.00 | MWS |

*See* Application, Exhibit C. These entries provide no detailed explanation of the tasks completed. They provide no description of the complexity of those tasks that reasonably required the employment of a specially-trained financial advisor. These entries are neither isolated nor unique instances, but are representative daily time entries for TFG's professionals.[3] Indeed, the period covered by the Application covers 156 calendar days, 127 of which contain "non-track" time entries for a single day and 79 of those "non-track" time entries exceed 8 hours and are no more descriptive than the entries copied above. All of those entries, and the Application generally, thus assume that each hour spent by TFG was an hour entitling TFG to compensation as a financial advisor. That assumption is simply inconsistent with the Bankruptcy Code.

---

[3] TFG's "track time" entries, set forth in Exhibit B to the Application, are no better or more descriptive than the "non-track" time entries. *See* Application, Exhibit B. TFG purportedly has discounted by 50% the hourly rates of its professionals for the "track time" entries included in Exhibit B, which – tellingly—is an acknowledgement by both the Trustee and TFG that time attending NASCAR races and related travel time was not financial advisory time. Under § 328(b) of the Bankruptcy Code, however, TFG should not be billing any of the "track time" at an hourly rate—even if at a discounted rate—because "managing the competitive racing activities of the [Debtor] at the track each weekend" is a trustee duty, assuming it even was necessary for the Trustee to undertake or perform those tasks. Application, at ¶ 3; see 11 U.S.C. § 328(b).

21.     TFG's failure to adequately describe in the Application the particular complexity of each task, and the time spent on each particular task, ignores the evidentiary burden placed on the Trustee and TFG. That failure has consequences, as made clear by the Middle District of North Carolina Bankruptcy Court's decision in *In re Lexington Hearth Lamp and Leisure, LLC*. In that case, a chapter 7 trustee served in a dual capacity: as both the trustee and counsel to the trustee. As is the case here, the trustee's fee application in *Lexington Hearth*, on its face, failed to differentiate between the work performed as trustee and the work performed as counsel for the trustee. The *Lexington Hearth* court highlighted that it is "not easy" to draw the line between trustee duties and professional services when reviewing deficient fee applications and noted that the professional has only "himself to blame if the line is not drawn as precisely as he might wish." *In re Lexington*, 402 B.R. at 145-46. Ultimately, the court in *Lexington Hearth* disallowed 43% of the requested professional fees because of the timekeeping practices of the trustee and his failure to distinguish between his trustee work and his work as counsel for the trustee. *Id*. at 146-47. Here, the Trustee and TFG's failure to carry their burden of demonstrating the reasonableness and necessity of their requested fees warrants a similar outcome—an outcome for which the Trustee and TFG have only themselves to blame due to their timekeeping practices that are inconsistent with Bankruptcy Code standards.

*The Application Fails to Demonstrate TFG's Fees Are Reasonable*

22.     The Application also is deficient because virtually all time entries are block-billed and generally provide vague and insufficient descriptions of the work performed. Block billing is a "time-keeping method by which a [time-keeper] lumps together the total daily time spent working on a case, rather than itemizing the time expended on specific tasks. *Harris v. Allstate Ins. Co.*, No. 07-8789, 2009 WL 86673, at *3 (E.D. La. Jan. 12, 2009). Block billing "impedes a

court's ability to determine the reasonableness of the hours spent on individual tasks." *In re Community Home Financial Services, Inc.*, Case No. 12-01703-NPO, 2017 WL 1753224, *22 (Bankr. S.D. Miss. May 3, 2017).

23. Block billing also is inconsistent with the Guidelines, which are intended to "assist parties in providing information necessary for the Court to make the determination of reasonable compensation outlined by Congress." The Guidelines expressly recognize that block-billing makes it impossible for the Court to determine reasonableness of compensation under § 330 of the Bankruptcy Code.

24. The time entries set forth in the Application make it impossible for any party in interest, including AUB, to have sufficient information to evaluate the reasonableness of the fees requested and fashion a reasonably-informed objection to specific time entries. In addition to not being able to determine the time expended for various tasks, AUB is unable—as argued above—to determine which tasks are ordinary trustee duties and which tasks warrant the assistance of a financial advisor.

25. Consistent with applicable law, the Guidelines make clear that the burden of proof is on the applicant to show that the requested compensation is reasonable. Neither AUB nor this Court has the burden to comb through the Application and determine whether, and to what extent, vaguely-described and block-billed work was reasonable or was the work of a trustee or work sufficiently complex to require a financial advisor.

***AUB Reserves its Rights with respect to any Subsequent § 506(c) Surcharge Claim***

26. The Application's deficiencies impact AUB's rights beyond the allowance of the fees as an administrative claim. The Trustee may seek to surcharge AUB's collateral for some or all of the amounts included in the Application under § 506(c) of the Bankruptcy Code. Therefore,

AUB is compelled to object now and highlight the deficiencies of the Application for the Court, lest the Trustee later pursue a surcharge claim against AUB's collateral on the same deficient time entries and seek to prevent AUB from then challenging TFG's timekeeping practices or the reasonableness of the fees set forth in the Application.

27.     The Application is the "first look" for every party, other than the Trustee, into the purported cost of operating the Debtor's race team for the five-month period from April through August 2018. This is true in spite of AUB's repeated requests to the Trustee both before and after his appointment for a budget of expected fees and repeated requests to the Trustee for his fees incurred while operating the Debtor. AUB made those requests first with an eye toward negotiating a carve-out for the Trustee's fees, but then with an eye toward monitoring those costs. The Trustee ignored AUB's repeated requests.

28.     Even if the Application did not contain vaguely-described and block-billed time entries and did not seek hourly compensation for all of the work of TFG's professionals, AUB still would object to the Application based on the Trustee's conduct in this case and the results obtained, particularly with the risk that any finding of the reasonableness of the fees now awarded to TFG might impact a possible § 506(c) surcharge claim by the Trustee.

29.     As this Court knows from prior hearings, AUB was disappointed and frustrated with the Trustee's handling of the sale process and the sale results. AUB believes the Trustee operated the Debtor's race team longer than reasonably necessary before determining that the Debtor's assets needed to be sold, even though AUB informed the Trustee at the outset that the race team could not be operated profitably and should be sold as quickly as possible. Once the Trustee finally decided to sell the Debtor's assets, the Trustee received a term sheet on or about June 15, 2018, from a buyer who offered to pay $1,000,000 more for substantially fewer of the

Debtor's hard assets than the bid that ultimately became the Stalking Horse Bid. Upon information and belief, the Trustee "shopped" that offer for more than 30 days, only to lose that proposal and end up with the Stalking Horse Bid. When the Trustee filed the Amended Sale Motion identifying the Stalking Horse Bid, the Trustee had not disclosed to AUB the Stalking Horse Bid or any of its material economic terms – *e.g.*, neither the purchase price of $1,800,000 nor the Trustee's desire, much less his independent agreement, to carve out up to $350,000 from the purchase price to pay priority wage claims. And, immediately following the closing of the sale in late August 2018, and again without communicating with AUB, the Trustee initially told the buyer of the Debtor's charter member agreement with NASCAR that NASCAR's post-closing invoice of $66,139 should be an obligation of the estate and paid from AUB's cash collateral. The Trustee's unilateral conduct compelled AUB to intervene in those discussions and, not without cost, successfully defend that buyer's motion seeking payment of that invoice from AUB's cash collateral.

WHEREFORE, AUB requests that the Court (A) deny the Application without prejudice or defer any substantive ruling on the Application until the Trustee and TFG supplement or amend the Application so that it complies with the Guidelines and the standards set forth in applicable law to enable AUB to potentially lodge better-informed and more detailed objections to the compensation requested, (B) expressly permit AUB's reservation of rights described above, and (C) grant AUB such other and further relief as is just and proper.

This 24th day of May, 2019.

*/s/ David M. Schilli*

David M. Schilli
N.C. State Bar No. 17989
dschilli@robinsonbradshaw.com

ROBINSON, BRADSHAW & HINSON, P.A.

101 North Tryon Street, Suite 1900
Charlotte, North Carolina 28246-1900
704.377.2536
704.378.4000 (fax)

*Attorneys for Atlantic Union Bank*

**CERTIFICATE OF SERVICE**

    I hereby certify that the foregoing has been served via the Court's Electronic Filing System upon those parties that have registered to receive electronic service in this case as of the date hereof.

    This 24th day of May, 2019.

                                         */s/ David M. Schilli*
                                         David M. Schilli

11955777