UNITED STATES BANKRUPTCY COURT
THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| In re: <br><br> BK RACING, LLC, <br><br> Debtor. | ) <br> ) Case No.:    18-30241 <br> ) <br> ) Chapter 11 <br> ) |

**JOINDER TO OBJECTION BY ATLANTIC UNION BANK TO
FIRST INTERIM APPLICATION FOR COMPENSATION TO
THE FINLEY GROUP, INC. AS ADVISORS TO THE
TRUSTEE AND BRIEF IN SUPPORT THEREOF**

The Office of the Bankruptcy Administrator for the Western District of North Carolina (the "Bankruptcy Administrator") hereby files this joinder (the "Joinder") to the Objection by Atlantic Union Bank to First Interim Application for Compensation to the Finley Group, Inc. as Advisors to the Trustee (the "Objection") filed on May 24, 2019 [D.I. 302] and requests that the Court deny the First Interim Application for Compensation to the Finley Group, Inc. as Advisors to the Trustee (the "Application") filed on April 2, 2019 [D.I. 259]. In support of the Joinder, the Bankruptcy Administrator says as follows:

**BACKGROUND**

I. **General Background**

On February 15, 2018, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

On March 30, 2018, this Court entered the Order Appointing Matthew W. Smith as Chapter 11 Trustee [D.I. 87] (the "Appointment Order" and Mr. Smith, the "Trustee").

On April 3, 2018, this Court entered the Order on Trustee's Application for Employment of the Finley Group, Inc. as Financial Advisors [D.I. 94] (the "Application Order" and Finley Group, Inc., "Finley"). According to the Trustee's Application for Order

1

Authorizing the Employment of the Finley Group, Inc. as Financial Advisors [D.I. 91] (the "Application to Employ"), Finley was employed to:

> assist Applicant not only in managing the Debtor's business operations and financial affairs, but also in the preparing and filing of all schedules, statements of financial affairs, reports, disclosure statements, proposed plans, and other documents required by this Case and to otherwise perform such other services as may be requested by Applicant's legal counsel in this Case.

Application at ¶5.

## II.     The Fee Application

The Application requests interim approval and payment of $507,544.81 in fees for 1,238.6 hours and $7,630.23 in expenses incurred from March 28, 2018, through August 30, 2018 (the "Interim Period").

On May 24, 2019, Atlantic Union Bank filed its Objection by Atlantic Union Bank to First Interim Application for Compensation to the Finley Group, Inc. as Advisors to the Trustee [D.I. 301].

The Bankruptcy Administrator communicated with Finley through counsel to the Trustee with regard to this Objection in advance of its filing. The Bankruptcy Administrator, Finley, Atlantic Union Bank, and the Internal Revenue Service participated in a mediation on August 14, 2019, in an effort to resolve the Objection and related issues, which was ultimately unsuccessful.

## LEGAL AUTHORITY

Section 328(b) provides that:

> If the court has authorized a trustee to serve as an attorney or accountant for the estate under section 327(d) of this title, the court may allow compensation for the trustee's services as such attorney or accountant only to the extent that the trustee performed services as attorney or accountant for the estate and not for performance of any of the trustee's duties that are generally performed by a trustee without the assistance of an attorney or accountant for the estate.

11 U.S.C. § 328.

Section 330(a)(1) of the Bankruptcy Code provides that a court may award to a professional person "reasonable compensation for actual, necessary service rendered" by such professional person. 11 U.S.C. § 330(a)(1).

Section 330(a)(3) provides that:

> In determining the amount of reasonable compensation to be awarded to an examiner, trustee under chapter 11, or professional person, the court shall consider the nature, the extent, and the value of services, taking into account all relevant factors including –
> (A) the time spent on site services;
> (B) the rates charged for such services;
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, the case under this title;
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

Section 330(a)(4)(A) provides that a court shall not allow compensation for:

> (i)    unnecessary duplication of services; or
> (ii)   services that were not –
>        (I)  reasonably likely to benefit the debtor's estate; or
>        (II) necessary to the administration of the case.

11 U.S.C. § 330(a)(4)(A).

Professional fees may not be awarded in a bankruptcy case unless and until the applicant shows that such fees were necessary and benefited the estate. 11 U.S.C. § 330(a)(4)(A)(ii). These criteria – estate benefit and necessity – are critical threshold issues a

3

professional must satisfy before a court makes a fee award. Rubner & Kutner, P.C. v. U.S. Trustee (In re Lederman Enter., Inc.), 997 F.2d 1321, 1322-23 (10th Cir. 1993) (observing that disallowance of fees not necessary or beneficial to the estate is not a penalty but rather a statutory imperative).

The fee applicant bears the burden of proof on its claim for compensation. Zeisler & Zeisler, P.C. v. Prudential Ins. Co. of Am. (In re JLM, Inc.), 210 B.R. 19, 24 (B.A.P. 2d Cir. 1997). In Barber v. Kimbrell's, Inc., 577 F.2d 216 (4th Cir. 1978, cert. denied, 439 U.S. 934 (1978)), the United States Court of Appeals for the Fourth Circuit held the courts should consider twelve factor when determining the reasonableness of the fees requested, specifically:

  a. the time and labor expended;
  b. the novelty and difficult of the questions raised;
  c. the skill required to properly perform the legal services ended;
  d. the attorney's opportunity costs in pressing the instant litigation;
  e. the customary fee for like work;
  f. the attorney's expectations at the outset of the litigation;
  g. the time limitations imposed by the client or circumstances;
  h. the amount in controversy and the results obtained;
  i. the experience, reputation and ability of the attorney;
  j. the undesirability of the case within the legal community in which the suit arose;
  k. the nature and length of the professional relationship between attorney and client; and
  l. the attorneys' fees awards in similar cases.

Barber, 577 F.2d at 226 n.28. Applying these factors, a court must evaluate professionals' fees according to the lodestar method. "The product of reasonable hours and a reasonable rate constitutes the lodestar [method]." In re Harris, 1998 Bankr. LEXI 869m *6-7 (Bankr. E.D. Va. Apr. 14, 1998); see also Equal Employment Opportunity Comm'n v. Serv. News Co., 898 F.2d 958, 965 (4th Cir. 1990) (stating that "these [Barber] factors should be

4

considered in determining the reasonable rate and the reasonable hours, which are then multiplied to determine the lodestar figure which will normally reflect a reasonable fee").

A fee application should stand on its own merit, without supplemental support at a hearing on an objection thereto. See In re Busy Beaver Bldg. Ctrs., 133 B.R. at 758 ("In the future, this court will not permit each fee applicant an evidentiary hearing to explain the nature of the services included in the petition for compensation so as to justify such compensation. That is the purpose of the fee application . . . ."); In re Chas. A. Stevens & Co., 105 B.R. 866, 879 (Bankr. N.D. Ill. 1989) ("fee applications must stand or fall on their own merits").

## ARGUMENT

The Bankruptcy Administrator objects to the Application on the following grounds:

a) the Application lacks adequate descriptions of the work performed;

b) the Application including improperly lumped time entries, making it impossible to assess the reasonableness of the fees incurred by project;

c) the Application seeks compensation for services that are more properly considered:

   i. trustee duties; or,

   j. in the alternative, administrative duties that should have been allocated to an employee or other service provider at a significantly lower billable rate; and

d) the Application seeks reimbursement for travel time and travel expenses that lacked benefit to the estate.

**Inadequate Descriptions.** In large measure, Finley's time entries lack sufficient detail to be compensable. A professional's fee application must include clear billing records in order for a court to assess the compensability of its services under section 330. The Guidelines for Compensation and Expense Reimbursement for Professionals for the Western District of North Carolina (the "Guidelines") provide: "Generally, time entries

5

should be sufficiently descriptive to enable the Court and third parties to determine the nature and extent of the service rendered." "A lack of detail justifies reduction of denial of compensation." In re Castorena, 270 B.R. 504, 515 (Bankr. D. Idaho 2001).

A typical entry contains the following description: "Full Day at Race Shop: Operational & Financial Issues." It is impossible to determine, based on the description provided, the nature of the specific tasks performed or whether the time devoted to each such task is reasonable under the circumstances. As such, all such entries containing inadequate descriptions should be disallowed.

**Lumping Time Entries**. Finley's time entries are improperly lumped and fail to break out individual tasks. Many time entries reflect a single entry that amounts to an entire day of work, admitting the block nature of such entries with descriptions including "Full Day at Race Shop" and "Full Day at TFG Office," before providing generic bullet-point subcategories of work. The issue is not intermittent but rather rampant throughout the Application.

Lumping is a "practice universally disapproved by bankruptcy courts for two reasons. One, it permits an applicant to claim compensation for rather minor tasks which, if reported individually, would not be compensable. Two, it prevents the Court from determining whether individual tasks were expeditiously performed within a reasonable period of time because it is impossible to separate into components the services which have been lumped together." In re Gillett Holdings, Inc., 137 B.R. 462 n.15 (Bankr. D. Colo. 1992) (citing In re Wildman, 72 B.R. 700, 709 (Bankr. N.D. Ill. 1987) and In re Leonard Jed Co., 103 B.R. 706, 713 (Bankr. D. Md. 1989)). In addition, the Guidelines regarding time increments state the following:

> Even when tasks are performed on the same day or time block, separate tasks should be set forth in separate time entries. When different tasks are included in the same time entry, the Court

6

> cannot make a proper determination under 11 U.S.C. § 330. Any significant amount of time spent on adversary proceedings should be set out separately from the base application. The applicant should segregate time entries in adversary proceeding litigation such that the Court can evaluate the results obtained and benefit to the estate of the services as related to the costs incurred. Time entries which are not adequately descriptive or are "lumped" are subject to disallowance.

Finley's lumped time entries contribute to the difficulty in ascertaining the professional services versions trustee duties, discussed in greater detail below, as there is no way to determine when Mr. Smith was addressing administrative matters as Trustee versus providing professional services for the benefit of the Trustee that warranted his hourly billable rate as a financial advisor.

**Professional Services Versus Trustee Duties and Administrative Tasks**. The Application fails to make distinctions between Mr. Smith's role as Trustee and as financial advisor to the Trustee. A professional cannot be compensated to do work statutorily required of the trustee. In re J.W. Knapp Co., 930 F.2d 368, 388 (4th Cir. 1991); In re Robbins, No. 10-32460-JCW (Bankr. W.D.N.C. July 8, 2016, D.I. 134); In re Computer Learning Centers, Inc., 285 B.R. 191, 208 (Bankr. E.D. Va. 2002).

The Application appears to include all time devoted by the Trustee to the case. The Trustee's personal billing records reflect an average of over 240 hours per month devoted to the case, making it nearly impossible for him to have devoted any additional time to trustee duties. On its face, the Application does not suggest that there was any portion of the Trustee's time that remains unbilled due to being "trustee time."

In addition, in order to justify the use of a professional for work done on behalf of the estate, the Application must demonstrate that the task required the skill of a financial advisor billing at $325 or $400 per hour. See In re Lock Shoppe, Inc., 67 B.R. 74, 75 (Bankr. E.D. Penn. 1986) (noting that "For some items, it is unclear why the tasks were

7

performed by counsel rather than the trustee" and citing Ursic v. Bethlehem Mines, 719 F.2d 670, 377 (3d Cir. 1983), for its observation: "[a] Michelangelo should not charge Sistine Chapel rates for painting a farmer's barn.").

In some of those time entries where there *is* sufficient detail, the detail demonstrates that the work is administrative in nature. For example, "emails regarding potential travel issues caused by weather" [1] and "calls about photos and social media"[2] do not require the professional expertise of a financial advisor and thus cannot be compensated accordingly.

**Travel Charges**. The Application states that, for time "traveling to and from the Debtor's weekend competitions during the Fee Period, such time is charged at "50% of Applicant's customary hourly rates." Application at ¶ 4. It further seeks reimbursement of expenses for such travel, or roughly $5,438.14[3] for mileage, airfare, hotels, and meals relating to the Trustee's and Mr. Hauk's attendance at various NASCAR races. See Application, Exhibit C.

The Application fails to establish that it was reasonable and necessary for Finley professionals to attend the NASCAR races in their capacity as a financial advisor to the Trustee. The Application lacks any information about what professional services were – or even could be – rendered during the races. If the Trustee thought it necessary to attend the NASCAR races, such attendance should be considered an administrative function at best, rather than the rendering of professional services.

---

[1] See Mr. Hauk's time entry for June 10, 2018.
[2] See Mr. Hauk's time entry for July 18, 2018.
[3] The Bankruptcy Administrator does not object to the payment of expenses relating to insurance, email service, Time Warner internet, quickbooks, trade publications, transcriptions, or shipping.

Finley offers that it has "discounted" travel time by 50% and later describes this billing rate as having "reduced" its invoice. Application ¶¶ 4, 9. The maximum amount recoverable for travel time, if compensable at all under these circumstances, should be half the professionals' rate. It is common in this district and almost universally true in other districts that non-working travel time is charged at half the customary rate, particularly in chapter 11 cases. See In re Garlock, No. 10-31607-JCW (Bankr. W.D.N.C. June 1, 2015, D.I. 4634); see also Caplin & Drysdale Chartered v. Babcock & Wilcox Co. (In re Babcock & Wilcox Co.), 526 F.3d 824, 828 (5th Cir. 2008) (collecting cases and affirming bankruptcy court's reduction of travel time to half customary rates); In re Rohrbaugh, 2014 Bankr. LEXIS 4206, *5-6 (Bankr. M.D. Pa. 2014) ("The Court's policy regarding travel time is to allow counsel fees at half the full hourly rate absent special circumstances explained in the fee application."). As such, this should not be considered a discount but rather the maximum amount recoverable for non-working travel time – and only if the Court finds such travel to be reasonable and necessary under section 330.

The Bankruptcy Administrator recognizes the unusual circumstances of Mr. Smith's service as a chapter 11 trustee for a debtor that was operating as a going concern. Prior to the Trustee's appointment, the Debtor's cash flow was precarious, and the Debtor generally was unable to perform its duties as a debtor-in-possession. The Trustee's efforts allowed the Debtor to be sold as a going concern sale, increasing creditors' recoveries. The Trustee is well deserving of a commission pursuant to 11 U.S.C. § 326(a).[4] In addition, Finley is likely deserving of compensation for professional services rendered to the Trustee – but only for such services that (1) were reasonable, necessary, and beneficial to the estate and (2) required the skills of a financial advisor. The Application provides parties in interest and

---

[4]    The Bankruptcy Administrator calculates the commission to be $168,047.09.

9

this Court with insufficient information to assess the compensability of services rendered under the standards of 11 U.S.C. § 330 and for this reason cannot be approved.

WHEREFORE, the Bankruptcy Administrator requests the Court deny the Application and grant such other and further relief the Court deems just and proper.

Dated: August 16, 2019.

/s/ Shelley K. Abel
Shelley K. Abel
United States Bankruptcy Administrator
402 W. Trade Street, Suite 200
Charlotte, NC 28202-1669
N.C. Bar #34370
Tel: (704) 350-7587  Fax: (704) 344-6666
shelley_abel@ncwba.uscourts.gov