**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**Charlotte Division**

In re:

**BK Racing, LLC**,

                          Debtor.

Case Number:  18-30241

Chapter 11

**TRUSTEE'S FIRST AMENDED PLAN OF LIQUIDATION FOR BK RACING, LLC**

Dated:    Charlotte, North Carolina
              December 1316, 2019

GRIER WRIGHT MARTINEZ, PA
Michael L. Martinez (N.C. State Bar No. 39885)
521 E. Morehead St., Suite 440
Charlotte, NC 28202
Telephone:  (704) 375-3720

*Counsel for Matthew W. Smith, Trustee for BK Racing, LLC*

## PREAMBLE

Matthew W. Smith (the "Trustee"), the duly-appointed chapter 11 trustee for BK Racing, LLC (the "Debtor"), hereby proposes the following *Trustee's Plan of Liquidation for BK Racing, LLC* dated December 13, 2019 (the "Plan") pursuant to § 1121(c) of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code").

**PURSUANT TO § 1125 OF THE BANKRUPTCY CODE, NOTHING CONTAINED IN THIS PLAN SHOULD BE CONSTRUED AS CONSTITUTING A SOLICITATION OF ACCEPTANCES OF THIS PLAN UNTIL SUCH TIME AS THE TRUSTEE'S DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT AND DISTRIBUTED WITH APPROPRIATE BALLOTS TO ALL HOLDERS OF IMPAIRED CLAIMS AGAINST, AND EQUITY INTERESTS IN, THE DEBTOR'S ESTATE WHO ARE ENTITLED TO VOTE ON THE PLAN.   THE TRUSTEE RESERVES THE RIGHT TO FILE AMENDMENTS AND/OR MODIFICATIONS TO THE PLAN AND DISCLOSURE STATEMENT FROM TIME TO TIME UNTIL A DISCLOSURE STATEMENT AND PLAN PROPOSED BY THE TRUSTEE ARE APPROVED BY THE BANKRUPTCY COURT.   REFERENCE IS MADE TO SUCH DISCLOSURE STATEMENT FOR A DISCUSSION OF VOTING INSTRUCTIONS, RECOVERY INFORMATION, CLASSIFICATION, THE DEBTOR'S HISTORY, BUSINESS, AND PROPERTY, AND A SUMMARY OF THIS PLAN.  ALL HOLDERS OF CLAIMS AND INTERESTS ARE HEREBY ADVISED AND ENCOURAGED TO READ THE DISCLOSURE STATEMENT AND THIS PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN.**

**THIS PLAN AND THE DISCLOSURE STATEMENT HAVE NOT BEEN REQUIRED TO BE PREPARED IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE NON-BANKRUPTCY LAW. PERSONS OR ENTITIES TRADING IN OR OTHERWISE PURCHASING, SELLING, OR TRANSFERRING SECURITIES, WHETHER DEBT OR EQUITY, OF THE DEBTOR SHOULD EVALUATE THIS PLAN IN LIGHT OF THE PURPOSES FOR WHICH THE PLAN WAS PREPARED.**

**AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS, AND OTHER ACTUAL, THREATENED, OR POTENTIAL ACTIONS, THIS PLAN AND THE DISCLOSURE STATEMENT SHALL NOT BE DEEMED OR CONSTRUED AS AN ADMISSION, STIPULATION, OR WAIVER OF ANY RIGHTS OR CLAIMS OF THE DEBTOR OR THE DEBTOR'S BANKRUPTCY ESTATE.**

**NO REPRESENTATIONS ARE MADE OR INTENDED REGARDING THE PARTICULAR TAX CONSEQUENCES OF THE PLAN TO ANY HOLDER OF A CLAIM OR INTEREST.  HOLDERS OF CLAIMS OR INTERESTS ARE URGED TO CONSULT WITH THEIR OWN TAX ADVISORS WITH RESPECT TO ANY TAX CONSEQUENCES OF THE PLAN AND THE TREATMENT OF DISTRIBUTIONS UNDER                                THE                                PLAN.**

# ARTICLE I
## DEFINITIONS

 **1.1** <u>SCOPE OF DEFINITIONS</u>.  For purposes of the Plan, all capitalized terms not otherwise defined shall have the meaning ascribed to them in this Article I of the Plan, except as expressly provided or unless the context clearly requires otherwise.

 **1.2** <u>DEFINITIONS</u>.  As used in this Plan, the following terms shall have the respective meanings specified below:

  **1.2.1** <u>Administrative Claim</u>.  Any cost or expense of administration of the Bankruptcy Case.  Administrative Claims must be asserted by filing an application with the Court on or before the Administrative Claims Bar Date and will be allowed or not allowed pursuant to § 503(b) of the Bankruptcy Code, except to the extent the holder of such Claim agrees to be treated differently.  Administrative Claims include, but are not limited to, (a) any actual and necessary expenses of preserving the Estate incurred during the Bankruptcy Case; (b) any actual and necessary expenses of operating the Debtor's business incurred during the Bankruptcy Case; (c) any indebtedness or obligations incurred or assumed by the Debtor or the Trustee in connection with the conduct of the Debtor's business as a debtor-in-possession, in connection with the administration of the Estate, or for the acquisition or lease of property by, or for the rendition of services to, the Debtor prior to the Confirmation Date, excluding obligations under assumed executory contracts and unexpired leases that are not cure payments; (d) obligations pursuant to executory contracts assumed by the Debtor pursuant to an order of the Court; (e) all Claims as provided by § 507(b) of the Bankruptcy Code; (f) all allowances of compensation or reimbursement of expenses to the extent allowed by the Court; (g) any Allowed Claims that are granted administrative priority status by Final Order of the Court; (h) all fees payable and unpaid under § 1930 of Title 28, United States Code; and (i) any fees or charges assessed against the Estate pursuant to any provision of the United States Code, including chapter 123 of Title 28.

  **1.2.2** <u>Administrative Claims Bar Date</u>.  The date forty-five (45) days after the Effective Date or such other date(s), if any, as determined by order of the Court, by which all requests for allowance of Administrative Claims must be filed with the Court.  The Administrative Claims Bar Date shall <u>not</u> apply to fees and expenses of Professionals incurred any time <u>after</u> the Confirmation Date.

  **1.2.3** <u>Allowed Administrative Claim</u>.  All or that portion of any Administrative Claim that is or has become an Allowed Claim.

  **1.2.4** <u>Allowed Claim</u>.  Any Claim against the Debtor or the Estate:  (a) proof of which was filed on or before the date designated by the Court as the last date for filing proofs of claims against the Debtor or, if no proof of claim is filed, which has been or hereafter is listed in the Schedules, as liquidated in amount and not disputed or contingent and, in either case, a Claim as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Court; (b) that has been deemed allowed by Final Order of the Court; or (c) in favor of any Person arising from a

judgment against such Person in any Avoidance Action if the effect of such judgment gives such Person an Allowed Claim. A Disputed Claim shall be an Allowed Claim if, and only to the extent that, a Final Order has been entered allowing such Disputed Claim. The term "Allowed," when used to modify a reference in this Plan to any Claim or Class of Claims, shall mean a Claim (or any Claim in any such Class) that is allowed (*e.g.*, an Allowed Secured Claim is a Claim that has been Allowed to the extent of the value of any interest in property of the Estate securing such Claim, as determined by the Court pursuant to § 506(a) of the Bankruptcy Code). Unless otherwise specified in this Plan or in the Final Order of the Court allowing such Claim, "Allowed Claim" shall not include interest on the amount of such Claim from and after the Petition Date.

**1.2.5** **Assumed Agreement**. Each of the Debtor's unexpired leases or executory contracts that: (a) is listed on Schedule 5.1 attached hereto; or (b) has been assumed by the Debtor pursuant to § 365 of the Bankruptcy Code. Schedule 5.1 to the Plan may be amended by the Trustee for any reason at any time before entry of the Confirmation Order.

**1.2.6** **AUB**. Atlantic Union Bank, f/k/a/ Union Bank and Trust.

**1.2.7** **Avoidance Action(s)**. Except to the extent set forth in Article 10.1 of this Plan, any and all actions which a trustee, debtor-in-possession, or any other appropriate party-in-interest, may assert on behalf of the Estate under the Bankruptcy Code, including actions pursuant to §§ 542, 543, 544, 545, 546, 547, 548, 549, 550, and/or 551 of the Bankruptcy Code, plus any other litigation claims held by the Estate that were not sold, assigned, or otherwise transferred by the Estate prior to the Effective Date.

**1.2.8** **Ballot**. The document used in voting on the Plan that must be executed and delivered by holders of Claims entitled to vote on the Plan.

**1.2.9** **Bankruptcy Administrator**. The Office of the United States Bankruptcy Administrator for the Western District of North Carolina, including any duly authorized agents acting on behalf of said office.

**1.2.10** **Bankruptcy Case**. The Debtor's bankruptcy case under chapter 11 of the Bankruptcy Code that is currently pending before the Court as case number 18-30241.

**1.2.11** **Bankruptcy Code**. The United States Bankruptcy Code as reflected in Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*.

**1.2.12** **Bankruptcy Rules**. The Federal Rules of Bankruptcy Procedure and the Rules of Practice and Procedure of the United States Bankruptcy Court for the Western District of North Carolina, as applicable to the Bankruptcy Case.

**1.2.13** **Business Day**. Any day other than a Saturday, Sunday, or other day on which commercial banks in the State of North Carolina are authorized or required by law to close.

**1.2.14** **Cash**. Cash and readily marketable securities or instruments including, without limitation, readily marketable direct obligations of the United States of America or agencies or instrumentalities thereof, time certificates of deposit issued by any bank, commercial paper, checks drawn on a domestic bank, and wire transfers from a domestic bank.

**1.2.15** **Cause of Action**.  Means any actions, claims, cross claims, third-party claims, interests, damages, controversies, remedies, causes of action, debts, judgments, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable directly or derivatively, matured or unmatured, suspected or unsuspected, disputed or undisputed, whether arising before, on, or after the Petition Date, in contract or in tort, at law or in equity, or pursuant to any other theory of law of otherwise.

**1.2.16** **Charter**.    The Debtor's right and license to participate in NASCAR-chartered events, as authorized and otherwise governed by that certain *NASCAR Cup Series Charter Member Agreement* entered into by and between NASCAR Event Management, Inc. and related entities (collectively, "NASCAR"), Ronald C. Devine, as the "Control Person," and the Debtor, as the "Team Owner," which document was assigned charter member agreement number 32 by NASCAR.

**1.2.17** **Claim**.  Any right to payment from the Estate, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, and arising at any time before the Effective Date or relating to any event that occurred before the Effective Date; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Estate, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, and arising at any time before the Effective Date or relating to any event that occurred before the Effective Date.

**1.2.18** **Class**.  Means a classification of Allowed Claims for the purposes of treatment and distributions under this Plan.

**1.2.19** **Confirmation**.    A judicial determination that the Plan meets the requirements for confirmation set forth in § 1129 of the Bankruptcy Code.

**1.2.20** **Confirmation Date**.    The date upon which the Court enters the Confirmation Order.

**1.2.21** **Confirmation Hearing**.  The hearing(s) conducted by the Court to consider Confirmation.

**1.2.22** **Confirmation Order**.  An order of Confirmation by the Court, in form and substance satisfactory to the Trustee, in accordance with the provisions of chapter 11 of the Bankruptcy Code.

**1.2.23** **Contingent Claim**.  Any Claim that was listed by the Debtor in the Schedules as either contingent or unliquidated or that otherwise is either contingent or unliquidated on or immediately before the Confirmation Date.

**1.2.24** **Court**.  The United States Bankruptcy Court for the Western District of North Carolina, having jurisdiction over the Bankruptcy Case.

    **1.2.25**  **Creditor**.  Any Person that holds a Claim against the Estate or Equity Interest in the Debtor.

    **1.2.26**  **Debtor**.  BK Racing, LLC, a North Carolina limited liability company.

    **1.2.27**  **Disclosure Statement**.  The disclosure statement filed with the Court with respect to this Plan, pursuant to § 1125 of the Bankruptcy Code, either in its present form or as may be altered, amended, or modified from time to time.

    **1.2.28**  **Disputed Claim**.  A Claim which is the subject of a timely objection interposed by the Trustee or other party-in-interest, or is scheduled as disputed by the Trustee, if at such time such objection remains unresolved; *provided, however*, that the Court may determine the amount of a Disputed Claim for purposes of allowance pursuant to § 502(c) of the Bankruptcy Code; *provided, further*, that the Trustee, in the Trustee's sole discretion, may elect to treat the portion of a Disputed Claim, if any, that is not in dispute as an Allowed Claim, with the disputed portion remaining a Disputed Claim.  For the avoidance of doubt, the IRS's Allowed Secured Claim and AUB's Allowed Secured Claim, as each are set forth in Article 4.3.3 of this Plan, shall not be a Disputed Claim.

    **1.2.29**  **Effective Date**.  The day the Plan becomes effective, as set forth in Article 11.2.

    **1.2.30**  **Effective Date Funds**.  All funds available to disburse pursuant to the Plan on the Effective Date.

    **1.2.31**  **Effective Date Priority Wage Payment**.  A payment made on the Effective Date to holders of Allowed Priority Wage Claims based on their Pro Rata Shares in the aggregate amount of $178,085.50, or such lesser amount as the Trustee determines is necessary in order to ensure the confirmation of this Plan; *provided, however*, that, even if the Trustee determines it necessary to reduce the Effective Date Priority Wage Payment to ensure the confirmation of this Plan, then the distributions as set forth in Article 4.3.3 of this Plan to each the IRS and AUB shall not be reduced; and the distributions as set forth in Article 2.5.1.3 of this Plan to each Finley, the Trustee, and Grier shall not be increased.

    **1.2.32**  **Equity Interest**.  Any interest in the Debtor represented by any class or series of capital stock or membership interests of the Debtor prior to the Petition Date, and any and all warrants, options, convertible, or exchangeable securities, subscriptions, rights (including any preemptive rights), appreciation rights, calls, or commitments of any character whatsoever relating to any such interest in the Debtor.  Equity Interests also include, without limitation, all Claims arising from rescission of a purchase or sale of an Equity Interest, for damages arising from the purchase or sale of such an Equity Interest, or for reimbursement or contribution allowed under § 502 of the Bankruptcy Code on account of such a Claim.

    **1.2.33**  **Estate**.  The Debtor's bankruptcy estate, including all interests in property that the Debtor holds as of the Effective Date.  Upon the occurrence of the Effective Date, property of the Estate will vest in the Reorganized Debtor; *except* that any rights, remedies, or claims that the Debtor, the Trustee, and/or the Estate may have arising from, related to, or in any way connected with the CMA 33 Collateral (as defined in Article 4.3.3.2.1 of this Plan)—other

than as set forth in Article 10.1—shall not vest in the Reorganized Debtor.  The term "Estate" shall include the Reorganized Debtor where the context so requires.

    **1.2.34**   **Final Decree**.  An order entered by the Court, upon application by the Reorganized Debtor, for the closing of the Bankruptcy Case pursuant to § 350 of the Bankruptcy Code and Bankruptcy Rule 3022.

    **1.2.35**   **Final Judgment**.  A judgment that is no longer subject to appeal, certiorari proceeding, or other proceeding for review or rehearing, and as to which no appeal, certiorari proceeding, or other proceeding for review or rehearing shall then be pending.

    **1.2.36**   **Final Order**.  An order that is no longer subject to appeal, certiorari proceeding, or other proceeding for review or rehearing, and as to which no appeal, certiorari proceeding, or other proceeding for review or rehearing shall then be pending.

    **1.2.37**   **Finley Fee App**.  The Trustee's *Amended First Interim Application for Compensation to The Finley Group, Inc. as Advisors to the Trustee* filed in the Bankruptcy Case on August 30, 2019 (D.E. 333).

    **1.2.38**   **General Unsecured Claim**.  Any Unsecured Claim—including, without limitation, any unsecured deficiency claim—other than a Priority Wage Claim or Priority Tax Claim.

    **1.2.39**   **Impaired**.  Classes of Creditors whose Claims or Equity Interests are altered by the Plan, or who will not receive under the Plan the allowed amount of their Claims in Cash as of the Effective Date.

    **1.2.40**   **IRS**.  The Internal Revenue Service, acting on behalf of the United States Department of the Treasury.

    **1.2.41**   **Litigation Recoveries**.  All cash proceeds generated by the Reorganized Debtor net of post-confirmation administrative expenses.

    **1.2.42**   **Litigation Reserve**.  $75,000.00 to be reserved by the Reorganized Debtor to fund post-confirmation litigation costs to be incurred in pursuing the Avoidance Actions in accordance with Article 9.1.

    **1.2.43**   **New Equity Interest**.  An equity interest in the Reorganized Debtor entitled to receive distributions from the assets liquidated by the Reorganized Debtor after the satisfaction of (a) all reasonably necessary and appropriate fees and expenses incurred by the Reorganized Debtor in liquidating its assets, (b) the New IRS Lien, (c) all Deferred Administrative Claims; (d) all Allowed Priority Wage Claims; and (e) all Allowed Priority Tax Claims.

    **1.2.44**   **New IRS Lien**.  A first-priority lien to the extent of $86,000.00, without interest thereon, against the Reorganized Debtor's assets payable as set forth in Article 4.3.3.2.1.

**1.2.45**    **Person**.  An individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, or a government, governmental unit, or any subdivision thereof, or any other entity.

**1.2.46**    **Petition Date**.  February 15, 2018, the date of commencement of the Bankruptcy Case.

**1.2.47**    **Plan**.  This *Trustee's Plan of Liquidation for BK Racing, LLC* dated December 13, 2019, either in its present form or as it may be amended or modified from time to time in any manner permitted by the Bankruptcy Code or Bankruptcy Rules.

**1.2.48**    **Priority Tax Claim**.  Any Unsecured Claim to the extent entitled to priority in treatment pursuant to § 507(a)(8) of the Bankruptcy Code.

**1.2.49**    **Priority Wage Claim**.  Any Unsecured Claim to the extent entitled to priority in treatment pursuant to §§ 507(a)(4) or 507(a)(5) of the Bankruptcy Code.

**1.2.50**    **Pro Rata Share**.  With respect to any Allowed Claim, the proportionate share that such Allowed Claim bears to the aggregate amount of all Allowed Claims in the same classification.  With respect to Voting Interests, the proportionate share that such holder's Allowed Claim bears to the aggregate amount of all Allowed Claims receiving Voting Interests.

**1.2.51**    **Professional**.  Any attorney, accountant, appraiser, turnaround professional, auctioneer, broker or realtor, or other professional person retained and employed by the Estate in accordance with §§ 327 and/or 328 of the Bankruptcy Code.

**1.2.52**    **Rejected Agreement**.  Each of the Debtor's unexpired leases or executory contracts that:  (a) is listed on Schedule 5.2 attached hereto; (b) has been explicitly rejected by the Debtor or the Trustee prior to the Confirmation Date; (c) has not been expressly assumed by order of the Court prior to the Confirmation Date; or (d) is not an Assumed Agreement.  Schedule 5.2 to the Plan may be amended by the Trustee for any reason at any time before entry of the Confirmation Order.

**1.2.53**    **Reorganized Debtor**.  The Debtor, as reorganized, discharged, and re-vested with all of the assets of the Estate pursuant to this Plan.  In the event a court of competent jurisdiction enters a final, non-appealable order determining that any other entity is an alter ego of the Debtor or Reorganized Debtor, then such alter ego shall be included in the definition of "Reorganized Debtor" for purposes of the Plan.

**1.2.54**    **Sale Proceeds**.  The net Cash currently available to the Estate generated by three distinct sales of Estate property in the total aggregate amount of approximately $2,228,007, as evidenced by reports of sale filed in this Bankruptcy Case on November 28, 2018 (D.E. 212–14).

**1.2.55**    **Schedules**.  The Schedules of Assets and Liabilities and Statement of Financial Affairs, and any amendments thereto, filed by the Trustee with the Court in accordance with § 521(a)(1) of the Bankruptcy Code.

**1.2.56**    **Secured Claim**.  A Claim to the extent of the value, as determined pursuant to §§ 506(a) or 1111(b) of the Bankruptcy Code, of any interest in property of the Estate securing such Claim.  To the extent that the value of such interest is less than the amount of the Claim which has the benefit of such security, such Claim is an unsecured deficiency claim unless, in any such case, the class of which such Claim is a part makes a valid and timely election under § 1111(b) of the Bankruptcy Code to have such Claim treated as a Secured Claim to the extent allowed.

**1.2.57**    **Surcharge Motion**.  The Trustee's *Motion for Recovery of Costs Incurred in Preserving and Disposing of Collateral* filed in the Bankruptcy Case on September 5, 2019 (D.E. 336).

**1.2.58**    **Unimpaired**.  Classes of Creditors whose Claims or Equity Interests are unaltered by the Plan, or who will receive under the Plan the allowed amount of their Claims in Cash as of the Effective Date.

**1.2.59**    **Unsecured Claim**.  A Claim not secured by a charge against or interest in property in which the Estate has an interest, including any Claim arising at any time under Bankruptcy Rule 3002(c)(3).

**1.2.60**    **Titled Vehicles**.  Vehicles titled to the Debtor on the Petition Date.

**1.2.61**    **Voting Deadline**.  The date set in an order of the Court as the deadline for the return of Ballots accepting or rejecting the Plan.

**1.2.62**    **Voting Interests**.  All New Equity Interests.

**1.3**    **OTHER DEFINITIONS**.  Unless the context otherwise requires, any capitalized term used and not defined herein or elsewhere in this Plan but that is defined in the Bankruptcy Code or Bankruptcy Rules shall have the meaning set forth therein.  Likewise, unless the context otherwise requires, any capitalized term used and not defined herein or elsewhere in this Plan but that is defined in the Disclosure Statement shall have the meaning set forth therein.  Wherever it appears appropriate from the context, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, the feminine, and the neuter.  The words "herein," "hereof," "hereto," "hereunder," and others of similar inference refer to this Plan as a whole and not to any particular article, section, subsection, or clause contained in this Plan.  The word "including" shall mean "including without limitation."

## ARTICLE II
## BACKGROUND AND CONCEPT OF THE PLAN

**2.1**    **BACKGROUND**.

**2.1.1**    **History of the Debtor and Impetus for Bankruptcy Filing**.  A detailed history of the Debtor—including an overview of the circumstances under which the Debtor sought chapter 11 protection—appears in the Disclosure Statement, the provisions of which are incorporated herein by reference.

**2.1.2** **Appointment of the Trustee**. On March 30, 2018, the Court entered an Order appointing the Trustee (D.E. 87). On April 3, 2018, the Court entered an Order authorizing the Trustee to retain The Finley Group, Inc. ("Finley") as financial advisors to the Trustee in this Bankruptcy Case (D.E. 94). On April 27, 2018, the Court entered an Order authorizing the Trustee to retain Grier Wright Martinez, PA, f/k/a Grier Furr & Crisp, PA and Grier & Crisp, PA ("Grier") as attorneys to the Trustee in this Bankruptcy Case (D.E. 119).

**2.1.3** **Post-Petition Operations**. A more detailed overview of the Debtor's post-petition operations appears in the Disclosure Statement. In summary, the Trustee spent the vast majority of the Trustee's time in this Bankruptcy Case preserving the secured creditors' collateral (primarily the Charter) until the Trustee was able to adequately market and sell the Debtor's assets on a going-concern basis. The sale of the Debtor's race team closed on August 27, 2018.

**2.2** **LIQUIDATION OF ASSETS**.

**2.2.1** **Funds Currently Available from Operating Efforts**. As of the date of this Plan, the Trustee has approximately $124,925 in cash available other than Sale Proceeds.

**2.2.2** **Funds Currently Available from Liquidation Efforts**. The Sale Proceeds total $2,228,007; *provided, however,* that, pursuant to the *Consent Order Authorizing Trustee to Use Cash Collateral as Advance on Professional Fees and Expenses* entered in the Bankruptcy Case on October 1, 2019 (D.E. 340), $100,000 of the Sale Proceeds was paid to Grier in partial satisfaction of fees previously allowed by the Court and $100,000 was paid to Finley as an advance toward any portion of the Finley Fee App that may ultimately be allowed by the Court (together, the "Professional Fee Advance").

**2.2.3** **Total Effective Date Funds**. In sum, there is approximately **$2,352,932** currently available to disburse pursuant to this Plan (without adjusting for the $200,000.00 Professional Fee Advance).

**2.3** **COMPETING LIEN POSITIONS**. Several Creditors—notably the IRS and AUB—assert competing lien positions against all Estate assets liquidated by the Trustee. The strengths, weaknesses, and other relevant circumstances concerning these competing interests are discussed in more detail in the Disclosure Statement.

**2.4** **SURCHARGE**. The Trustee contends that all, or substantially all, of the Trustee's activities, through Finley, Grier, or otherwise, between the period beginning with the Trustee's appointment and ending at the closing of the sale of the Charter, were devoted to protecting the value of the IRS's and AUB's collateral. As described in greater detail in the Surcharge Motion, the Trustee believes the total surcharge amount equals at least $582,000.

**2.5** **CONCEPT OF THE PLAN**.

**2.5.1** **Generally**. This Plan is a liquidating plan. As set forth more fully below, the Trustee proposes the following general division of Effective Date Funds in accordance with a tentative settlement of various disputes between the Trustee, the IRS, and AUB, including without

limitation, the competing lien positions between the IRS and AUB, the Surcharge Motion, and the Finley Fee App:

2.5.1.1  $450,000.00 will be paid to the IRS on the Effective Date (in addition to the IRS receiving the New IRS Lien);

2.5.1.2  $1,175,000.00 will be paid to AUB on the Effective Date; and

2.5.1.3  the Trustee will retain the approximately $728,000 of Effective Date Funds remaining to be distributed as follows:

(a)  no more than $275,000.00 in the aggregate to Finley and the Trustee in partial satisfaction of whatever portion of the Finley Fee App and an application for an interim trustee commission to be filed in advance of the Confirmation Hearing that the Court may allow (less the amount previously paid to Finley as part of the Professional Fee Advance);

(b)  no more than $125,000.00 to Grier in partial satisfaction of fees and expenses previously approved by the Court (less the amount previously paid to Grier as part of the Professional Fee Advance);

(c)  $75,000.00 escrowed for the Litigation Reserve;

(d)  no more than $178,085.50 for the Effective Date Priority Wage Payment; and

(e)  the remaining funds (approximately $75,000) will be used to satisfy administrative expenses incurred by the Estate other than (i) fees and expenses incurred by Grier or Finley prior to the closing of the sale of the Charter and (ii) any interim commission approved for the Trustee contemporaneously with confirmation of the Plan.

2.5.2    **Distribution of Litigation Recoveries**.  The Reorganized Debtor will pursue Avoidance Actions and distribute recoveries:  (a) first, to satisfy administrative expenses incurred by the Reorganized Debtor in pursuing the Avoidance Actions; (b) second, 50% of recoveries thereafter will be used to satisfy the New IRS Lien up to $86,000.00 and 50% of recoveries will be used to satisfy Deferred Administrative Claims (defined below); (c) third, once the New IRS Lien has been satisfied in full, to satisfy remaining Deferred Administrative Claims (defined below); (d) fourth, to satisfy Allowed Priority Wage Claims; (e) fifth, to satisfy Allowed Priority Tax Claims, and (f) sixth, to satisfy Allowed General Unsecured Claims.  Holders of Equity Interests in the Debtor will not receive or retain any property through the Plan.

2.5.3    **Withdrawal of the Surcharge Motion**.  In exchange for the above-described carve-out from the collateral of the IRS and/or AUB:  (a) the Trustee shall withdraw the Surcharge Motion with prejudice on or before the Effective Date; and (b) as of the Effective Date, the Estate, the Trustee, Finley, and Grier shall be deemed to have waived any and all rights and claims for a further carve-out or surcharge under § 506(c) of the Bankruptcy Code from the collateral of the IRS and/or AUB.

**2.5.4**   **Compensation to the Trustee and Finley**.   In exchange for the treatment afforded through this Plan, neither AUB nor the IRS shall oppose the Trustee receiving an interim statutory trustee commission as may be allowed by the Court pursuant to § 326(a) of the Bankruptcy Code in the amount of approximately $168,000, which amount is calculated upon all amounts disbursed following his appointment through the Effective Date.   In addition, neither AUB nor the IRS shall oppose the Court's allowance of the Finley Fee App; *provided, however,* that Finley—having already received a $100,000.00 Professional Fee Advance—may be paid on the Effective Date only the difference between $175,000 and whatever amount is allowed to the Trustee on account of an interim statutory commission.   Furthermore, Finley may file with the Court a written application seeking approval of compensation for the actual time spent on this case for the time period beginning September 1, 2018 and ending on the Confirmation Date at Finley's customary hourly rates without any obligation to categorize entries as "trustee time" or "financial advisor time"; *provided* that all of the rights of the Bankruptcy Administrator, AUB, and all other parties in interest to object to or otherwise contest the reasonableness or necessity of any such fees and expenses (including, without limitation, any objection on the basis that such fees and expenses were incurred in connection with the defense of the fees, expenses, and commissions sought by the Trustee, Finley, and/or Grier in the Bankruptcy Case) are expressly reserved and not otherwise, limited, impaired, or prejudiced.

## ARTICLE III
## ALLOWED ADMINISTRATIVE CLAIMS

**3.1**   **ADMINISTRATIVE CLAIMS ARE NOT CLASSIFIED IN THIS PLAN**.   Administrative Claims are not classified in this Plan, are Unimpaired by the Plan, and are not entitled to vote to accept or reject the Plan.   The treatment of and consideration to be received by holders of Allowed Administrative Claims shall be in full and complete satisfaction, settlement, release, and discharge of such Claims, except as may be otherwise agreed by such holders.   The Estate's obligations with respect to such Allowed Administrative Claims shall be satisfied in accordance with the terms of this Plan.

**3.2**   **ADMINISTRATIVE CLAIMS BAR DATE**.   Unless otherwise ordered by the Court, requests for payment of Administrative Claims, including all applications for final allowance of compensation and reimbursement of expenses of Professionals incurred before the Confirmation Date, must be filed and served on counsel for the Debtor and the Bankruptcy Administrator no later than forty-five (45) days after the Effective Date.   Any Person required to file and serve a request for payment of an Administrative Claim who fails to timely file and serve such request by the Administrative Claims Bar Date, shall be forever barred, estopped, and enjoined from asserting such Claim or participating in distributions under the Plan on account thereof.   The Administrative Claims Bar Date shall not apply to fees and expenses of Professionals incurred after the Confirmation Date.

**3.3**   **TREATMENT OF ADMINISTRATIVE CLAIMS**.   Except to the extent the holder of an Allowed Administrative Claim agrees otherwise, each such holder shall be paid, with respect to such Allowed Claim, the full amount thereof in Cash as soon as practicable after the later of (a) the Effective Date and (b) the date on which such Claim becomes an Allowed Claim, except that Allowed Administrative Claims arising in the ordinary course of business shall, if due at a later date pursuant to their terms, be paid when otherwise due.

**3.4** **ADMINISTRATIVE CLAIM DEFERMENT OPTION**. Notwithstanding any of the foregoing to the contrary, any holder of an Allowed Administrative Claim may elect to defer distribution on such Allowed Administrative Claim and shall have, subject to Article 10.3.4, a security interest against Litigation Recoveries to the extent of any such deferred distribution ("Deferred Administrative Claims"). This security interest against Litigation Recoveries shall be: (a) junior only to the New IRS Lien; and (b) deemed fully-perfected by entry of the Confirmation Order.

## ARTICLE IV
## CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

**4.1** **EXTENT OF CLASSIFICATION**. A Claim or Equity Interest is included in a particular Class or designation only to the extent that such Claim or Equity Interest qualifies within the description of that Class or designation, and is in a different Class or designation to the extent that the remainder of such Claim or Equity Interest qualifies within the description of such different Class or designation.

**4.2** **ALTERNATIVE TREATMENT**. Any provision of the Plan notwithstanding, the holder of an Allowed Claim may otherwise agree with the Trustee to receive other, less favorable treatment than provided in the Plan.

**4.3** **PLAN CLASSIFICATION AND TREATMENT**. The Claims against and Equity Interests in the Debtor are designated, and shall be treated, as set forth in this Article 4.3.

### 4.3.1 **Class 1: Priority Wage Claims**.

4.3.1.1 Classification. Class 1 consists of all Allowed Priority Wage Claims.

4.3.1.2 Treatment. Allowed Priority Wage Claims shall be paid the Effective Date Priority Wage Payment on the Effective Date. In addition, after the satisfaction of all Deferred Administrative Claims, each holder of an Allowed Priority Wage Claim shall receive distributions from Litigation Recoveries based upon its Pro Rata Share of all Allowed Priority Wage Claims remaining after the Effective Date Priority Wage Payment, but only until the Reorganized Debtor has made aggregate distributions to holders of Allowed Priority Wage Claims (including the Effective Date Priority Wage Payment) in a dollar amount equal to the total amount of Allowed Priority Wage Claims. To ensure the treatment afforded by this Plan, holders of Allowed Priority Wage Claims shall be deemed to have a security interest against Litigation Recoveries that, subject to Article 10.3.4, shall be: (a) junior to the lien securing the Deferred Administrative Claims; and (b) deemed fully-perfected by entry of the Confirmation Order.

4.3.1.3 Impairment and Voting. Class 1 is Impaired under the Plan, and the holders of Priority Wage Claims shall be permitted to vote on the Plan.

### 4.3.2 **Class 2: Priority Tax Claims**.

4.3.2.1 Classification. Class 2 consists of all Allowed Priority Tax Claims.

4.3.2.2   <u>Treatment</u>.  After the satisfaction of all Allowed Priority Wage Claims, each holder of an Allowed Priority Tax Claim shall receive distributions from Litigation Recoveries based upon its Pro Rata Share of all Allowed Priority Tax Claims, but only until the Reorganized Debtor has made aggregate distributions to holders of Allowed Priority Tax Claims in a dollar amount equal to the total amount of Allowed Priority Tax Claims.  To ensure the treatment afforded by this Plan, holders of Allowed Priority Tax Claims shall be deemed to have a security interest against Litigation Recoveries that, subject to Article 10.3.4, shall be:  (a) junior to the lien securing the Allowed Priority Wage Claims; and (b) deemed fully-perfected by entry of the Confirmation Order.

4.3.2.3   <u>Impairment and Voting</u>.  Class 2 is Impaired under the Plan, and the holders of Priority Tax Claims shall be permitted to vote on the Plan.

### 4.3.3   Class 3:  Secured Claims.

4.3.3.1   <u>Classification</u>.  Class 3 consists of all Allowed Secured Claims.

4.3.3.2   <u>Treatment</u>.  On the Effective Date, holders of Allowed Secured Claims shall receive the following treatment in full satisfaction of the Allowed Secured Claims.

4.3.3.2.1   <u>Treatment of the IRS</u>.   The IRS shall be paid $450,000.00 on the Effective Date in full satisfaction of the IRS's Secured Claim; *provided, however*, that, to the extent the Trustee has not demonstrated to the reasonable satisfaction of the IRS that the sum of $25,000 was incurred for actual and necessary expenses in preserving or disposing of the Titled Vehicles during the period beginning on the Petition Date and ending with the closing of the sale of all of the Titled Vehicles, the Trustee shall pay such amount to the IRS on the Effective Date in addition to the $450,000.00.  In addition, on the Effective Date, the IRS shall receive the New IRS Lien, which, subject to Article 10.3.4, shall be deemed fully-perfected by entry of the Confirmation Order, payable as follows:  all cash proceeds generated by the Reorganized Debtor net of post-confirmation administrative expenses, if any, shall be disbursed 50% to the IRS (without credit to or application against any Allowed Priority Tax Claim or General Unsecured Claim the IRS may have) and 50% to the Reorganized Debtor to be paid pursuant to the Plan.  Furthermore, in addition to the above-described Effective Date payment to the IRS and in addition to the New IRS Lien, to the extent the Reorganized Debtor fails to exhaust the entirety of the Litigation Reserve, such funds shall be remitted to the IRS.  The treatment provided in this Article 4.3.3.2.1 shall be in full, final, and complete satisfaction, settlement, release, and discharge of any and all secured claims, tax liens, and tax levies against, relating to, or in connection with the Debtor, the Estate, and any previously-owned assets and the proceeds and product thereof, including, without limitation, that certain NASCAR Cup Series Charter Member Agreement entered into by and between NASCAR, Ronald C. Devine, as the "Control Person," and the Debtor, as the "Team Owner," which document was assigned charter member agreement number 33 by NASCAR and was previously owned by the Debtor ("CMA 33") and the proceeds (within the meaning of 9-102(64) of the Uniform Commercial Code) thereof (the "CMA 33 Proceeds" and, collectively with CMA 33, the "CMA 33 Collateral"); *provided, however*, that the foregoing provision:  (a) shall not affect the New IRS Lien; and (b) shall not apply to, impair, or otherwise affect any rights and remedies the IRS may have against any responsible persons who may be liable for trust fund penalties arising in connection with the Debtor's federal tax

obligations.  The Reorganized Debtor and other parties claiming an interest in any of the Debtor's previously-owned assets and the proceeds and product thereof (a) shall be entitled to rely on the IRS's full, final, and complete satisfaction, settlement, release, and discharge of its secured claims, tax liens, and tax levies as set forth above, and (b) if deemed necessary or appropriate to evidence or effect such satisfaction, settlement, release and discharge, may file in any public record, public office, or with any court a copy of any Court order approving such payment being made to the IRS in full, final and complete satisfaction, settlement, release and discharge of such secured claims, tax liens, and tax levies.

        4.3.3.2.2   Treatment of AUB.  AUB shall be paid $1,175,000.00 on the Effective Date in full satisfaction of AUB's Secured Claim; *provided, however*, that the foregoing satisfaction, settlement, release and discharge shall not apply to—and shall be ineffective against—AUB's lien encumbering the CMA 33 Collateral or any other collateral that may have been pledged to secure the indebtedness owed AUB, against any party other than the Debtor, the Estate, or the Reorganized Debtor that may be obligated on such indebtedness or with respect to any other rights and remedies AUB may have.  AUB agrees to file, within twenty (20) days of receiving the above-described payment, in the public records in which it has filed any written notice with respect to any AUB Secured Claim, except any lien encumbering the CMA 33 Collateral, a release of such lien, security interest, or claim and further agrees that the Reorganized Debtor and other parties claiming an interest in any of the Debtor's previously-owned assets and the proceeds and product thereof (a) shall be entitled to rely on AUB's full, final, and complete satisfaction, settlement, release, and discharge of AUB's liens, security interests, or claims as set forth above, and (b) if deemed necessary or appropriate to evidence or effect such satisfaction, settlement, release, and discharge, may file in any public record, public office, or with any court a copy of any Court order approving such payment being made to AUB in full, final, and complete satisfaction, settlement, release and discharge of such liens, security interest, or claims as set forth above.

        4.3.3.3   Impairment and Voting.  Class 3 is Impaired under the Plan, and the holders of Secured Claims shall be permitted to vote on the Plan.

### 4.3.4   Class 4:  General Unsecured Claims.

        4.3.4.1   Classification.  Class 4 consists of all Allowed General Unsecured Claims.

        4.3.4.2   Treatment.  Each holder of an Allowed General Unsecured Claim shall receive New Equity Interests in the Reorganized Debtor on the Effective Date based upon its Pro Rata Share of all Allowed General Unsecured Claims.  New Equity Interests in the Reorganized Debtor shall be entitled to receive distributions from Litigation Recoveries but only after the Reorganized Debtor has satisfied all Allowed Priority Tax Claims.

        4.3.4.3   Impairment and Voting.  Class 4 is Impaired under the Plan, and the holders of General Unsecured Claims shall be permitted to vote on the Plan.

### 4.3.5   Class 5:  Equity Interests.

        4.3.5.1   Classification.  Class 5 consists of all Equity Interests.

4.3.5.2   <u>Treatment</u>.  The holders of Equity Interests shall not receive or retain any property, rights, or interests of any nature whatsoever under the Plan on account of such Equity Interests.

4.3.5.3   <u>Impairment and Voting</u>.  Class 5 is Impaired under the Plan, and the holders of Equity Interests are deemed to have rejected the Plan pursuant to § 1126(g) of the Bankruptcy Code.

## ARTICLE V
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**5.1**    <u>ASSUMPTION OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES</u>.

**5.1.1**    The Plan contemplates an assumption of certain Assumed Agreements that are listed on Schedule 5.1 to this Plan.  The Confirmation Order shall constitute an order under § 365 of the Bankruptcy Code authorizing the approval of the assumption of the Assumed Agreements as of the Effective Date.

**5.1.2**    The amount of any cure payment that may be required in order for the Estate to assume any Assumed Agreement identified on Schedule 5.1 to this Plan shall be determined after the Confirmation Date, by a separate motion.

**5.1.3**    The Reorganized Debtor may reach agreements with parties to certain Assumed Agreements providing for the deferral of cure payments that would otherwise be due by reason of such assumption and for the payment of interest on such deferred amounts.

**5.2**    <u>REJECTION OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES</u>.

**5.2.1**    As of the Effective Date, all unexpired leases of non-residential real property and other executory contracts that have not previously been assumed or rejected, or are not the subject of a motion to assume pending on the Confirmation Date, shall be deemed rejected by the Estate, and the Confirmation Order shall constitute an order under § 365 of the Bankruptcy Code authorizing the rejection of such agreements as of the Effective Date.  The Plan contemplates the rejection of certain Rejected Agreements that are listed on Schedule 5.2 to this Plan.  However, Schedule 5.2 shall not be deemed an exclusive list of rejected agreements.

**5.2.2**    Except to the extent a prior order of the Court provides for an earlier date, in which case such earlier date shall control, all proofs of claim with respect to Claims arising from the rejection of executory contracts or unexpired leases shall be filed with the Court within thirty (30) days after the date of service of notice of entry of any order of the Court approving such rejection and requiring the filing of a proof of claim in connection therewith.  Any Claims not filed within such times shall be released, discharged, and forever barred from assertion against the Debtor, the Estate, the Reorganized Debtor, and any property of the Debtor, the Estate, or the Reorganized Debtor.  The inclusion of an executory contract or unexpired lease in Schedule 5.2 shall not be deemed an admission by the Debtor that the Estate would otherwise be obligated or contractually bound by the listed agreement and the Debtor reserves the right to fully object to, and challenge, any Claims based on the rejection of any executory contract or unexpired lease via the provisions of this Plan or otherwise.

## ARTICLE VI
## ACCEPTANCE OR REJECTION OF THIS PLAN

**6.1      IMPAIRED CLASSES TO VOTE**.  Except as otherwise required by the Bankruptcy Code or the Court, any holder of a Claim that is Impaired under this Plan is entitled to vote to accept or reject this Plan if, at any time prior to the Voting Deadline:  (a) the holder's Claim has been Allowed; (b) the holder's Claim has been temporarily allowed for voting purposes only by order of the Court pursuant to Bankruptcy Rule 3018 (in which case such Claim may be voted in such temporarily allowed amount); (c) the holder's Claim has been scheduled by the Debtor (but only if such Claim is not scheduled as disputed, contingent, or unliquidated) and no objection to such Claim has been filed; or (d) the holder has filed a proof of claim on or before the Confirmation Date (or such later date as the Court may have established with respect to any particular Claim), and such Claim is not a Disputed Claim.  Notwithstanding the foregoing, a holder of a Disputed Claim which has not been temporarily allowed as provided above may nevertheless vote such Disputed Claim in an amount equal to the portion, if any, of such Claim shown as fixed, liquidated, and undisputed in the Schedules.  Any entity holding two or more duplicate Claims shall be entitled to vote only one Claim.

**6.2      ACCEPTANCE BY IMPAIRED CLASSES**.   Consistent with § 1126(c) of the Bankruptcy Code, and except as provided in § 1126(e) of the Bankruptcy Code, a Class of Impaired Claims shall have accepted the Plan if the Plan is accepted by holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of that Class that have timely and properly voted to accept or reject the Plan.

**6.3      CONFIRMATION HEARING**.  The Court will set a hearing on the Confirmation of the Plan to determine whether the Plan has been accepted by the requisite number of Claim holders and whether the other requirements for Confirmation of the Plan have been satisfied.  In the event that one or more Classes of Impaired Claims does not accept, or is deemed not to have accepted, this Plan, then the Trustee requests that the Court confirm this Plan at the Confirmation Hearing in accordance with § 1129(b) of the Bankruptcy Code, and the filing of this Plan shall constitute a motion for such relief.

**6.4      MODIFICATION, AMENDMENT, OR WITHDRAWAL**.  The Trustee reserves the right to seek Confirmation of a different plan of liquidation or reorganization if this Plan is not confirmed.  The Trustee further reserves the right to alter, modify, amend, revoke, or withdraw the Plan as set forth herein for any purpose, including satisfying the requirements of cramdown under § 1129(b) of the Bankruptcy Code, at any time prior to the Confirmation Date, to the fullest extent permitted by § 1127 of the Bankruptcy Code.  If the Trustee revokes or withdraws this Plan, then this Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any claims by or Claims against the Estate, or any other person, or to prejudice in any manner the rights of the Debtor or the Trustee, or any other person, in any further proceedings involving the Debtor or the Trustee.

## ARTICLE VII
## DISPUTED CLAIMS, AVOIDANCE ACTIONS, AND OTHER LITIGATION

**7.1      FILING OF OBJECTIONS TO CLAIMS**.     Following the Effective Date, the

Reorganized Debtor shall be authorized to object to Claims so as to have the Court determine the amounts to be allowed, if any, of such Claims and thus paid pursuant to the Plan. Objections to Claims shall be filed with the Court and served upon the holders of such Claims no later than one hundred twenty (120) days after the Effective Date; *provided, however*, that this deadline may be extended by Court order. An objection to the allowance of a Claim by the Reorganized Debtor must also be served upon all parties who have requested notice in the Bankruptcy Case pursuant to Article 9.7.

7.2    **PROSECUTIONS OF OBJECTIONS TO CLAIMS**. Following the Effective Date, the Reorganized Debtor shall litigate to judgment, propose settlements of, or withdraw objections to all Disputed Claims. All proposed settlements of Disputed Claims shall be subject to the approval of the Court after notice and opportunity for a hearing (as that term is used in § 102(1) of the Bankruptcy Code) provided to all parties who have requested post-confirmation notice in the Bankruptcy Case pursuant to Article 9.7. Objections to Claims shall not be subject to any defense based on Confirmation of the Plan, including res judicata, estoppel, or any other defense, and the Debtor's, the Trustee's, and Reorganized Debtor's objection rights are expressly preserved and reserved by the Plan. For the avoidance of doubt, neither the IRS's Allowed Secured Claim nor AUB's Allowed Secured Claim, each set forth in Article 4.3.3 of this Plan, shall be (a) objected to or (b) a Disputed Claim.

7.3    **PAYMENT OR DISTRIBUTION UPON RESOLUTION OF DISPUTED CLAIMS**. Except as the Reorganized Debtor may otherwise agree with respect to any Disputed Claim, no payments or distributions shall be made with respect to any portion of a Disputed Claim <u>unless</u> and <u>until</u> (a) all objections to such Disputed Claim have been resolved or determined by a Final Order of the Court, or (b) the Court shall have entered an order treating any portion of a Disputed Claim as an Allowed Claim. Payments and distributions to each holder of a Disputed Claim—to the extent that the Claim ultimately becomes an Allowed Claim—shall be made in accordance with the provisions of this Plan with respect to the Class of Claims to which such Allowed Claim belongs. A Disputed Claim that is estimated for purposes of allowance and distribution pursuant to § 502(c) of the Bankruptcy Code and which is estimated and Allowed at a fixed amount by Final Order of the Court shall thereupon be an Allowed Claim for all purposes in the amount so estimated and Allowed.

7.4    **AVOIDANCE ACTIONS AND OTHER LITIGATION**. Except to the extent set forth in Article 10.1 of this Plan, the Reorganized Debtor shall have the sole right, in the name of the Debtor, the Trustee, and/or the Estate, as successor to the Debtor, the Trustee, and/or the Estate, to commence, continue, or settle any and all Avoidance Actions and other litigation, including, without limitation, any Avoidance Action brought by the Trustee prior to the Effective Date and which remains unresolved as of the Effective Date, as determined in the Reorganized Debtor's business judgment. All proposed settlements of Avoidance Actions shall be subject to the approval of the Court after notice and opportunity for a hearing (as that term is used in § 102(1) of the Bankruptcy Code) provided to all parties who have requested notice in the Bankruptcy Case pursuant to Article 9.7.

**ARTICLE VIII
DISTRIBUTIONS UNDER THE PLAN**

**8.1**   MAINTENANCE OF DEPOSIT ACCOUNT.  After the Effective Date, the Reorganized Debtor may continue to use the deposit account used by the Trustee in connection with the Bankruptcy Case.  In addition or in the alternative, the Reorganized Debtor may elect to establish one or more additional or replacement deposit account(s) to serve as the Reorganized Debtor's deposit account with any depository institution insured by the Federal Deposit Insurance Corporation.

**8.2**   TIMING OF DISTRIBUTIONS.  The Reorganized Debtor shall make all the payments and distributions expressly required to be made by this Plan with respect to Allowed Administrative Claims, Allowed Priority Wage Claims, Allowed Priority Tax Claims, Allowed Secured Claims, and Allowed General Unsecured Claims prior to the filing of Articles of Dissolution with the North Carolina Department of the Secretary of State.  The Reorganized Debtor must distribute at least annually to holders of Allowed Claims in Classes 1, 2, 3, 4, and/or 5 in accordance with the Plan funds available for distribution after the satisfaction of all reasonably necessary and appropriate fees and expenses incurred in the administration of the Reorganized Debtor, except that the Reorganized Debtor may reserve an amount reasonably necessary to maintain the value of the Reorganized Debtor's remaining assets or to meet claims and contingent liabilities (including Disputed Claims).

**8.3**   DELIVERY OF DISTRIBUTIONS.  Payments of Cash required pursuant to this Plan shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank at the election of the Person making such payment.  Distributions to a holder of an Allowed Claim shall be made at the address of such holder as indicated on the corresponding proof of claim or, if no proof of claim was filed, as appearing in the Schedules.  In the event that any such distribution is returned as undeliverable, the Reorganized Debtor shall use reasonable efforts to determine the then-current address of the applicable holder, and no distribution to such holder shall be made unless and until the Reorganized Debtor has determined such then-current address.  Notwithstanding the foregoing, if any distribution remains unclaimed for one year following the distribution, then:  (a) such distribution, and all subsequent distributions to that holder payable in the following year, shall (i) be deemed unclaimed property pursuant to § 347(b) of the Bankruptcy Code and (ii) become vested in the Reorganized Debtor; and (b) the Claim of the holder for such distribution shall no longer be deemed to be Allowed, and such holder shall (i) be deemed to have waived the holder's rights to such distribution under this Plan pursuant to § 1143 of the Bankruptcy Code, (ii) have no further claim or right thereto, and (iii) not participate in any further distributions under this Plan with respect to such Claim.  Checks issued by the Reorganized Debtor with respect to any Allowed Claims shall be null and void if not negotiated within one hundred twenty (120) days after the date of issuance thereof.  Whenever any distribution to be made under this Plan shall be due on a day other than a Business Day, such distribution shall instead be made, without the accrual of any interest, on the immediately succeeding Business Day, but shall be deemed to have been made on the date due.  The Reorganized Debtor shall serve as the "disbursing agent" and shall make all distributions provided for under the Plan and shall file such reports with the Court as required.

**8.4**   MISCELLANEOUS DISTRIBUTION PROVISIONS.  Whenever any payment of a fraction of a cent would otherwise be called for by the Plan, the actual payment shall reflect a rounding of such fraction to the nearest whole cent, with one-half cent being rounded up to the nearest whole cent.  If a Cash payment otherwise provided for by this Plan with respect to an

Allowed Claim in Classes 1, 2, 3, 4, and 5 would be less than twenty-five dollars ($25.00), notwithstanding any contrary provision of this Plan, the Reorganized Debtor shall not be required to make such payment.

## ARTICLE IX
## MEANS FOR IMPLEMENTING THE PLAN

**9.1**   **LITIGATION RESERVE**.   On the Effective Date, $75,000 of the Effective Date Funds vesting with the Reorganized Debtor will be earmarked as part of the Litigation Reserve. The Reorganized Debtor shall use the Litigation Reserve only to satisfy fees and expenses incurred after the Effective Date that are necessary to pursue the Avoidance Actions.

**9.2**   **REVOCATION OF PRIOR CORPORATE GOVERNANCE DOCUMENTS**.   Except for the Debtor's Articles of Organization, any and all operating agreements, resolutions, by-laws, and other contracts, instruments, or documents controlling or affecting the Debtor's corporate governance are hereby revoked and replaced with the governance rules established in the Plan.

**9.3**   **APPOINTMENT OF THE TRUSTEE AS THE INITIAL MANAGER OF THE REORGANIZED DEBTOR**.   Notwithstanding any rule or other provision in any document to which the Debtor entered in prior to the Confirmation Date, upon the Effective Date, the Trustee shall serve as the sole manager of the Reorganized Debtor, with the exclusive right, power, and authority to manage the litigation activities, financial affairs, and other conduct of the Reorganized Debtor.   Any and all subsequently-appointed managers will have the same powers and be bound to the terms of this Plan.   All previously serving managers, officers, directors, employees, and agents of the Debtor are hereby expressly removed and discharged.

**9.4**   **CONTROL OF THE REORGANIZED DEBTOR**.   Any manager of the Reorganized Debtor may be removed upon the vote of at least seventy-five percent (75%) of the Voting Interests based upon each equity interest holder's Pro Rata Share of the Voting Interests, after notice to all parties in interest, including the manager then-serving and holders of Voting Interests, and a hearing before the Court.   Upon the removal, resignation, incompetency, or other vacancy of the Reorganized Debtor's manager, a replacement manager shall be selected by a plurality vote of the Voting Interests based upon each equity interest holder's Pro Rata Share of the Voting Interests (*i.e.*, the candidate receiving the votes from the largest percentage of Voting Interests shall be elected manager).   Any disputes regarding the removal of a manager, appointment of a manager, or any other corporate governance issue shall be resolved by the Court upon an application by a party-in-interest properly noticed pursuant to the provisions of this Plan.   Notwithstanding anything herein to the contrary, any subsequently-appointed manager of the Reorganized Debtor must be "disinterested" (as that term is defined in § 101 of the Bankruptcy Code).   Except as to the removal and appointment of managers expressed in this paragraph, holders of Voting Interests shall have no power or direction over the affairs of the Reorganized Debtor, which shall be exclusively reserved for a duly-appointed manager.

**9.5**   **AUTHORITY TO CONSUMMATE THE PLAN FOLLOWING CONFIRMATION**.   Upon the occurrence of the Confirmation Date, the Trustee or Reorganized Debtor shall, without additional confirmation by the Court, be authorized to take all necessary steps, and to perform all necessary acts, to consummate the terms and conditions of this Plan, including the execution

and/or filing of all documents required or contemplated by this Plan or the Disclosure Statement. Upon the occurrence of the Effective Date, the Reorganized Debtor, without additional confirmation by the Court, is authorized to execute, deliver, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate or further evidence the terms and conditions of this Plan.

9.6    **AUTHORITY TO ACT FOLLOWING THE EFFECTIVE DATE**.  Except as otherwise provided in this Plan or the Confirmation Order and notwithstanding any provision in the Bankruptcy Code or Bankruptcy Rules to the contrary, upon the occurrence of the Effective Date, the Reorganized Debtor may (a) own, use, acquire, or dispose of assets, and (b) otherwise deal with its financial affairs free from the supervision of the Bankruptcy Administrator or requirement to obtain authority from the Court, subject to the following exceptions, which shall continue to apply to the Reorganized Debtor so long as the Bankruptcy Case remains open.

9.6.1    **Quarterly Fee Statements**.  The Reorganized Debtor shall continue to file quarterly fee statements as provided in Bankruptcy Rule 2015(a)(5).

9.6.2    **Quarterly Fees**.  The Reorganized Debtor shall continue to pay quarterly fees as required by 28 U.S.C. § 1930(a)(6).

9.6.3    **Claims Objections**.  The Reorganized Debtor must seek Court resolution of any and all objections to the allowance of Claims or Equity Interests.

9.6.4    **Motions to Approve Settlements**.  The Reorganized Debtor must seek Court approval of any proposed compromise or settlement of any claims held by the Estate prior to the Confirmation Date.

9.6.5    **Motions to Modify the Plan**.  The Reorganized Debtor must seek Court approval of any proposed modification to the Plan or the Confirmation Order.

9.7    **NOTICE TO PARTIES-IN-INTEREST FOLLOWING THE EFFECTIVE DATE**.  For any of the Court filings or other notices the Reorganized Debtor is required to make after the Effective Date, the Reorganized Debtor shall provide notice thereof via email only to:  (a) the Bankruptcy Administrator; and (b) any party-in-interest that specifically requests such notice in writing from the Trustee's attorneys via email directed to mmartinez@grierlaw.com.  To the extent the matter being noticed seeks an order from the Court, the notice required by this Article 9.7 shall be sent at least fourteen (14) days in advance of any objection deadline or hearing with respect to such matter.

9.8    **COMFORT ORDERS**.  Notwithstanding any of the foregoing, the Reorganized Debtor may, but shall be under no obligation to, seek Court approval of certain conduct after the Effective Date if the Reorganized Debtor determines that the circumstances justify doing so, for so long as the Bankruptcy Case remains open.

9.9    **FINAL DECREE**.  The Reorganized Debtor shall apply to the Court for entry of a Final Decree once Final Orders have been entered on all matters then-pending before the Court in the Bankruptcy Case, including any related adversary proceedings.

**9.10   COMPENSATION TO MANAGER OF REORGANIZED DEBTOR**.  The Reorganized Debtor's manager may file with the Court a written application seeking approval of compensation for the actual time spent administering the Reorganized Debtor at an hourly rate of $395.00 (the "Hourly Compensation").  In addition, the Reorganized Debtor's manager may seek additional compensation to the extent that the amount equal to three percent (3%) of all aggregate disbursements made by the Reorganized Debtor Liquidating Vehicle exceeds the total Hourly Compensation; *provided*, that all of the rights of the Bankruptcy Administrator, AUB, and all other parties in interest to object to or otherwise contest the reasonableness or necessity of any such fees or expenses are expressly reserved and not otherwise, limited, impaired or prejudiced.

**9.11   DISSOLUTION OF COMMITTEE**.  On the Effective Date, any and all committees appointed in this Bankruptcy Case (collectively, the "Committee") will be dissolved, and the members of the Committee and any professional retained by or otherwise working on behalf of the Committee will cease to have any role arising from or relating to the Bankruptcy Case.

**9.12   PRIVILEGES**.  Any and all attorney-client privileges, work product protections, and/or other immunities and protections from disclosure held by the Debtor, the Estate, the Trustee, or the Committee (collectively, "Privileges") relating to any Cause of Action or Avoidance Action vesting in the Reorganized Debtor pursuant to this Plan shall be transferred, assigned, and delivered to the Reorganized Debtor, without waiver or release, and shall vest with the Reorganized Debtor.  The Reorganized Debtor shall hold and be the beneficiary of all such Privileges and entitled to assert any and all such Privileges.

## ARTICLE X
## CONFIRMATION EFFECTS

**10.1   VESTING OF ASSETS**.  On the Effective Date, all assets of the Debtor and all property of the Estate—including, without limitation, all rights of the Trustee to recover property under §§ 542, 543, 550, and 553 of the Bankruptcy Code, all avoiding powers under s§§ 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, all proceeds thereof, and all claims and causes of action, cross-claims, and counterclaims of any kind or nature whatsoever against third parties arising before the Confirmation Date that have not been disposed of prior to the Confirmation Date—shall vest in the Reorganized Debtor free and clear of any and all claims, liens, interests, charges, or encumbrances, except as otherwise expressly provided herein, in the Confirmation Order, or in any other order of the Court providing for the abandonment of property. As a result, except as otherwise provided, this Plan releases, cancels, and otherwise terminates all liens against assets vesting in the Reorganized Debtor existing prior to Confirmation, which shall be deemed canceled of record upon entry of the Confirmation Order.  Any and all holders of Claims or Equity Interests shall promptly cooperate with reasonable requests from the Trustee or the Reorganized Debtor to document any and all lien releases provided by this Plan. Notwithstanding any of the foregoing to the contrary, nothing in this Article 10.1 shall impair or otherwise affect the New IRS Lien or the junior security interest granted in favor of Deferred Administrative Claims.  To the extent the Debtor, the Trustee, and/or the Estate holds any rights, remedies, or claims concerning the CMA 33 Collateral, such rights, remedies, or claims shall NOT vest in the Reorganized Debtor and, as of the Effective Date, the Trustee, on behalf of the Debtor, the Estate, and the Reorganized Debtor, agrees and covenants to not pursue any claims or causes of action under the Bankruptcy Code or state law arising from, related to, or in any way connected

with the CMA 33 Collateral.  Notwithstanding any of the foregoing to the contrary, any claim that the Estate may have against a third party relating to the Debtor's transfer of funds to such party (or to an intermediary of such party) shall vest in the Reorganized Debtor even if such funds are traceable to funds received by the Debtor from its transfer of CMA 33.

**10.2  BINDING EFFECT**.  On the Effective Date, the provisions of this Plan shall bind any holder of a Claim against, or an Equity Interest in, the Debtor and such holder's successors and assigns, whether or not such holder's Claim or Interest is impaired under the Plan, whether or not such holder has accepted the Plan, and whether or not such holder is entitled to a distribution under the Plan.

**10.3  DISCHARGE**.

**10.3.1**  Except as otherwise specifically provided in this Plan or in the Confirmation Order, the rights afforded in this Plan and the treatment of the Claims and Equity Interests herein shall be in exchange for, and in complete satisfaction, discharge, and release of, all Claims against, and Equity Interests in, the Debtor, the Estate, the Reorganized Debtor, or the assets, properties, or interests of the Debtor, the Estate, or the Reorganized Debtor of any nature whatsoever, including any interest accrued on any Claim from and after the Petition Date.

**10.3.2**  Except as expressly otherwise provided herein or in the Confirmation Order, upon the Effective Date, all Claims arising before the Effective Date (including those arising under §§ 502(g), 502(h), or 502(i) of the Bankruptcy Code) against the Debtor or the Estate (including any based on acts or omissions that constituted or may have constituted ordinary or gross negligence or reckless, willful, or wanton misconduct by the Debtor or the Estate, or any conduct for which the Debtor or the Estate may be deemed to have strict liability under any applicable law), and all Equity Interests shall be irrevocably satisfied, discharged, cancelled, and released in full.

**10.3.3**  The Reorganized Debtor shall be responsible only for (a) those payments and distributions expressly provided for or due under this Plan and (b) Claims and Equity Interests that are not canceled and discharged, or that are otherwise preserved, pursuant to specific and express provisions of this Plan, and then only to the extent and in the manner specifically and expressly provided in this Plan.

**10.3.4**  All Persons are precluded, enjoined, and forever barred from collecting, prosecuting, enforcing, levying, attaching, perfecting or otherwise asserting against the Debtor, the Estate, the Reorganized Debtor, or the assets, properties, or interests of the he Debtor, the Estate, or the Reorganized Debtor, any claims or interest based upon any act or omission, transaction, or other activity, event, or occurrence of any kind or nature that occurred prior to the Effective Date, whether or not the facts of or legal bases thereof were known or existed prior to the Effective Date, except for (a) those payments and distributions expressly due under this Plan and (b) Claims and Equity Interests, if any, that are not canceled and discharged under the Plan.  Without limiting the foregoing, any lien or security interest created, granted, conveyed, and/or perfected pursuant to this Plan secures the distributions set forth in Articles III and IV of this Plan and shall NOT entitle any holder thereof to exercise any rights or remedies against the Reorganized Debtor or the Litigation Recoveries unless and until:  (a) the Reorganized Debtor materially breaches any term

23

or provision of this Plan; and (b) leave is granted by the Court, after notice and a hearing, to pursue such rights or remedies.

**10.4**   <u>Cancellation of Certain Agreements</u>.  On the Effective Date, except as otherwise provided in this Plan, any and all notes, guarantees, documents, agreements, or other evidence of indebtedness underlying any and all Claims shall be cancelled and null and void as to the Reorganized Debtor, and all of the Reorganized Debtor's obligations thereunder shall be discharged.  The holder of any such documents cancelled pursuant to this provision shall have no rights arising from or relating to such documents, including any subordination or subrogation rights, except the right to receive distributions provided for in the Plan.

**10.5**   **EXCULPATION**.  To the fullest extent permitted by applicable law, the Trustee and the Trustee's present and former employees, representatives, counsel, professionals, or other agents shall be deemed released by each of them against the other and by the holders of Claims and Equity Interests, and from any and all claims, obligations, rights, causes of action, and liabilities for any act or omission in connection with, or arising out of, the Bankruptcy Case or the Debtor's operations in connection with the Bankruptcy Case, including the pursuit and approval of the Disclosure Statement, the pursuit of Confirmation, the consummation or administration of the Plan, or the property to be distributed under the Plan, except for willful misconduct or gross negligence, and all such persons, in all respects, shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan and under the Bankruptcy Code, whether arising before, on, or after the Petition Date.

**10.6**   **NO INJUNCTIVE RELIEF**.  No Claim shall, under any circumstances, be entitled to specific performance or other injunctive, equitable, or other prospective relief.

**10.7**   **RELIEF FROM STAY**.  The Confirmation Order shall provide AUB relief from the automatic stay of Bankruptcy Code § 362 (to the extent the automatic stay applies) to permit AUB to pursue in a forum other than the Court AUB's rights and remedies in connection with CMA 33, including in connection with any litigation relating thereto.

**10.8**   **SECURED CREDITOR RELEASE**.  On the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, each of AUB and the IRS, and each of their respective current and former directors, managers, officers, principals, equity holders, predecessors, participants, successors, assigns, subsidiaries, affiliates, and each of their respective current and former employees, agents, financial advisors, partners, attorneys, accountants, consultants, representatives, and professionals are deemed released by each of the Debtor, the Reorganized Debtor, the Trustee, and the Estate, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all entities who purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing entities, from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of any of the Debtor, the Reorganized Debtor, the Trustee or the Estate, as applicable, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtor, the Reorganized Debtor, the Trustee, or the Estate would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, the Debtor, based on or relating to, or in any manner arising from, in

whole or in part, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between the Debtor and AUB, the Debtor's in-court sale, the Bankruptcy Case, the formulation, preparation, dissemination, negotiation, filings, or consummation of the Disclosure Statement, this Plan, the pursuit of Confirmation, the administration or implementation of this Plan, or the distribution of property under this Plan, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; *provided that* any right to enforce this Plan and the Confirmation Order is not released.

**10.9** **QUARTERLY FEES IN CONNECTION WITH PLAN DISBURSEMENTS**. The quarterly fees due for the calendar quarter during which the Effective Date occurs shall be $9,750.00; *provided* that no other disbursements made during the same calendar quarter as the Effective Date push total disbursements into a higher quarterly fee bracket.

**ARTICLE XI**
**EFFECTIVENESS AND CONSUMMATION OF THE PLAN**

**11.1** **CONDITIONS PRECEDENT TO CONFIRMATION**. The Plan shall not be confirmed unless and until the Court has entered the Confirmation Order in a form and substance satisfactory to the Trustee and until the specific conditions set out in this Article XI are satisfied.

**11.2** **EFFECTIVENESS OF THIS PLAN**. The Plan shall not become effective and operative unless and until (a) the Court enters the Confirmation Order; and (b) the Effective Date occurs. The Effective Date shall occur on the first Business Day following the earlier of the day:

**11.2.1** sixty (60) days after the day upon which the Confirmation Order becomes a Final Order; or

**11.2.2** upon which all of the following conditions have been satisfied: (a) the Confirmation Order has become a Final Order; (b) all agreements, instruments, and other documents necessary to implement the provisions of the Plan have been fully executed to the satisfaction of the Trustee; and (c) all payments due by the Effective Date pursuant to this Plan have been made.

**11.3** **NOTICE OF THE EFFECTIVE DATE**. On or before ten (10) Business Days after the Effective Date, the Reorganized Debtor shall file with the Court, and serve on all parties in interest in the Bankruptcy Case, a notice of the occurrence of the Effective Date that informs all interested parties of (a) the entry of the Confirmation Order; (b) the occurrence of the Effective Date; (c) the assumption of the Assumed Agreement(s) pursuant to the Plan; (d) the rejection of the Rejected Agreements pursuant to the Plan, as well as the deadline for the filing of Claims arising from such rejection; (e) the procedures for changing an address of record pursuant to this Plan; and (f) such other matters as the Debtor deems to be appropriate.

**11.4** **CONSUMMATION**. Consummation of this Plan shall be deemed to have occurred on the thirtieth (30th) day following the occurrence of the Effective Date.

**ARTICLE XII**
**RETENTION OF JURISDICTION**

**12.1**   **E**XCLUSIVE **J**URISDICTION **R**ESERVED TO THE **C**OURT. From and after the Effective Date, the Court shall retain and have exclusive jurisdiction over the Bankruptcy Case for the following purposes:

12.1.1   to determine the validity and amount of any and all Claims and objections to the allowance of Claims and/or Equity Interests;

12.1.2   to determine any and all applications for allowances of compensation and reimbursement of expenses and any other fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code or this Plan;

12.1.3   to determine any and all applications for the rejection, assumption, or assumption and assignment, as the case may be, of executory contracts or unexpired leases to which the Debtor is a party or with respect to which the Debtor may be liable, and to hear and determine, and, if need be, to liquidate, any and all Claims arising therefrom;

12.1.4   to determine any and all applications for the determination of any priority or classification of any Claim including Claims arising from any event that occurred prior to the Effective Date and for payment of any alleged administrative, priority, secured, or unsecured Claim;

12.1.5   to determine all controversies, suits, and disputes that may arise in connection with the interpretation, enforcement, or consummation of this Plan or in connection with the obligations of the Debtor or Reorganized Debtor under this Plan, and to enter such orders as may be necessary or appropriate to implement any distributions to holders of Allowed Claims;

12.1.6   to determine any and all applications, motions, adversary proceedings, and contested or litigated matters that may be pending on the Confirmation Date or filed thereafter by or against the Debtor, the Estate, the Trustee, or the Reorganized Debtor;

12.1.7   to consider any modification, remedy any defect or omission, or reconcile any inconsistency in this Plan or any order of the Court, including the Confirmation Order, all to the extent authorized by the Bankruptcy Code;

12.1.8   to issue such orders in aid of execution of this Plan to the extent authorized by § 1142 of the Bankruptcy Code;

12.1.9   to determine such other matters as may be set forth in the Confirmation Order or as may arise in connection with this Plan or the Confirmation Order;

12.1.10   to hear and determine any claim or controversy of any nature arising from or in connection with any agreement made a part of this Plan and to enter such orders as may be appropriate to enforce, modify, interpret, or effectuate such agreements;

12.1.11   to determine all disputes regarding property of the Debtor, the Estate, or the Reorganized Debtor;

12.1.12   to determine any suit or proceeding brought by the Debtor, the Estate, the

Trustee, or the Reorganized Debtor to (a) recover property under §§ 542, 543, or 553 of the Bankruptcy Code or to avoid any transfer or obligation under §§ 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, or (b) otherwise collect or recover on account of any claim or cause of action that the Debtor may have, which are based on pre-Effective Date events (provided that the Court's jurisdiction with respect to such matters shall be nonexclusive);

12.1.13   to consider and act on the compromise and settlement of any Claim against or cause of action by or against the Debtor, the Estate, the Trustee, or the Reorganized Debtor;

12.1.14   to estimate Claims pursuant to § 502(c) of the Bankruptcy Code;

12.1.15   to hear and determine any dispute or controversy relating to any Allowed Claim or any Claim alleged or asserted by any Person to be an Allowed Claim;

12.1.16   to hear and determine all matters related to the activities of the Reorganized Debtor pursuant to the Plan, including challenges to or approvals of the Reorganized Debtor's activities thereunder;

12.1.17   to administer and enforce the injunctions contained in this Plan, and any related injunction or decree contained in the Confirmation Order; and

12.1.18   to hear and determine any other matter related hereto and not inconsistent with the Bankruptcy Code, including the issuance of any order necessary to carry out the Plan, establishing or adjusting procedures for the orderly administration of the Estate by the Reorganized Debtor.

**12.2**     If the Court is determined not to have jurisdiction with respect to any of the matters set forth in Article 12.1, or if the Reorganized Debtor chooses to pursue any claim or cause of action in another court of competent jurisdiction, the Reorganized Debtor will have the authority to bring such action in any other court of competent jurisdiction.

## ARTICLE XIII
## MISCELLANEOUS PROVISIONS

**13.1**     **MODIFICATION OF PAYMENT TERMS**.  The Reorganized Debtor reserves the right to modify the treatment of any Allowed Claim in any manner adverse only to the holder of such Claim at any time after the Effective Date upon the written consent of the Creditor whose Allowed Claim treatment is being adversely affected.

**13.2**     **FILING OF ADDITIONAL DOCUMENTS**.   On or before the Effective Date, the Trustee or the Reorganized Debtor shall file with the Court such agreements and other documents, if any, as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan and the other agreements referred to herein.

**13.3**     **COMPLIANCE WITH TAX REQUIREMENTS**.  In connection with this Plan, the Reorganized Debtor shall comply with all withholding and reporting requirements imposed by federal, state, local, and foreign taxing authorities, and all distributions hereunder shall be subject

to such withholding and reporting requirements.

**13.4   SETOFFS**.  The Reorganized Debtor may, but shall not be required to, setoff or recoup against any Claim claims of any nature whatsoever that the Reorganized Debtor may have against the holder of such Claim, to the extent such claim may be setoff or recouped under applicable law, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor, the Estate, the Trustee, or the Reorganized Debtor of any such claim against such holder.

**13.5   COMPUTATION OF TIME**.  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

**13.6   SECTION HEADINGS**.  The section headings contained in Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of this Plan.

**13.7   WAIVER**.  The Reorganized Debtor reserves the right to waive any provision of this Plan to the extent such provision is for the sole benefit of the Debtor, the Estate, the Trustee, or the Reorganized Debtor.  No failure by the Reorganized Debtor to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any further exercise thereof, or of any other right, power, or privilege.

**13.8   NOTICES**.  Except as otherwise provided in the Bankruptcy Code or this Plan, any notice required or permitted to be provided under the Plan shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) reputable overnight courier service, freight prepaid, to be addressed as follows if to the Reorganized Debtor: BK Racing, LLC, c/o Matthew W. Smith, 212 S. Tryon Street, Suite 1050, Charlotte, North Carolina 28202.

**13.9   SEVERABILITY**.  If prior to or at the time of Confirmation, the Court holds that any term or provision of the Plan is invalid, void, or unenforceable, the Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as so altered or interpreted.  In the event of any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan may, at the option of the Trustee remain in full force and effect and not be deemed affected.  However, the Trustee reserves the right not to proceed to Confirmation or consummation of the Plan if any such ruling occurs.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**13.10   PLAN CONTROLS**.  To the extent the Plan is inconsistent with the Disclosure Statement or any other document, agreement, pleading, or understanding concerning this Plan, the provisions of this Plan shall control; *provided, however*, that the Confirmation Order shall control to the extent there is any inconsistency between the Plan and the Confirmation Order.

**13.11   RESERVATION OF RIGHTS**.  If the Plan is not confirmed by the Court or any other

court of competent jurisdiction for any reason, the rights of all parties-in-interest in the Bankruptcy Case are and shall be reserved in full. Any concession reflected or provision contained herein, is made for the purposes of the Plan only, and if the Plan does not become effective, no party-in-interest in the Bankruptcy Case shall be bound or deemed prejudiced by any such concession.

**13.12   CONTROLLING LAW**.   This Plan shall be read and construed and take effect in all respects in accordance with the law as set forth in the Bankruptcy Code and the Bankruptcy Rules. To the extent reference to state law is necessary to construe this Plan, this Plan shall be governed and construed in accordance with the laws of the State of the North Carolina.

**13.13   EXEMPTION FROM TRANSFER TAXES**.   Pursuant to § 1146 of the Bankruptcy Code, the issuance, transfer, or exchange of notes or securities under the Plan, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, shall not be subject to any stamp tax or other similar tax.

**13.14   SURVIVAL OF TERMS**.   The covenants, representations, and agreements made in this Plan shall survive the Confirmation Date and the transactions contemplated herein.

**13.15   SUCCESSORS BOUND**.   Upon consummation, this Plan shall be binding upon and inure to the benefit of the respective heirs, successors, and assigns of the Debtor, the Estate, and the Trustee, including the Reorganized Debtor, any and all subsequently-appointed managers of the Reorganized Debtor, and the holders of Claims and Equity Interests.

**13.16   FURTHER ASSURANCES**.   If, at any time, the Trustee or the Reorganized Debtor shall consider, or be advised, that any further releases, assurances, or documents are reasonably necessary or desirable to carry out the provisions hereof, and the transactions contemplated herein, the holders of Claims and/or the holders of Equity Interests shall, upon reasonable request, execute and deliver any and all documents and assurances, and do all things necessary or appropriate to carry out fully the provisions hereof.

## <u>ARTICLE XIV</u>
## CONFIRMATION REQUEST

The Trustee hereby requests Confirmation of the Plan pursuant to § 1129 of the Bankruptcy Code.

Respectfully submitted this ~~13~~16th day of December, 2019.

By:    */s/ Matthew W. Smith*  
\_\_\_\_\_  
       Matthew W. Smith, Trustee for BK Racing, LLC

## <u>SCHEDULE 5.1</u>
### ASSUMED AGREEMENTS

| Name and Address of Other Parties to the Unexpired Lease or Executory Contract | Description of Contracts |
|---|---|
| none | none |

## <u>SCHEDULE 5.2</u>
## REJECTED AGREEMENTS

| Name and Address of Other Parties to the Unexpired Lease or Executory Contract | Description of Contracts |
|---|---|
| Champion Tire & Wheel, Inc.<br>11106 Treynorth Drive<br>Cornelius, NC 28031 | Race wheel services agreement |
| GForce<br>1020 Sun Valley Dr<br>Roswell, GA 30076 | Rear end and gear rental for race cars |
| Isaac Grossman<br>Berta Grossman<br>4213 Pima Cotton Road<br>Charlotte, NC 28226 | Lease of 6780 Hudspeth Road, Concord |
| Race Engines Plus LLC<br>7100 Weddington Road<br>Concord, NC 28027 | Engine lease agreement |
| United Race Parts, LLC<br>150 Ostwalt Amity Road<br>Building D-101<br>Troutman, NC 28166 | Pit gun lease agreement |

Document comparison by Workshare Compare on Monday, December 16, 2019
5:17:19 PM

| Input: | |
|---|---|
| Document 1 ID | netdocuments://4843-2810-8962/6 |
| Description | BK Racing Chapter 11 Plan of Liquidation |
| Document 2 ID | netdocuments://4823-6640-2479/1 |
| Description | First Amended Chapter 11 Plan of Liquidation - BKR |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| ~~Deletion~~ | |
| ~~Moved from~~ | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 9 |
| Deletions | 2 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 11 |